BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

CANDACE KELLY (CABN 191473)
JEFFREY SHIH (CABN 296945)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7014
    Fax: (415) 436-7234
    E-Mail: candace.kelly@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ADAM SHAFI, <br><br> Defendant. | No.: CR 15-0582 WHO <br><br> UNITED STATES'S OPPOSITION TO DEFENDANT'S APPLICATION FOR RELEASE ON BAIL <br><br> Date: December 22, 2015 <br> Time: 1:30 p.m. <br> Courtroom: The Hon. Sallie Kim |

**INTRODUCTION**

The United States of America, by and through Brian J. Stretch, Acting United States Attorney, Candace Kelly and Jeffrey Shih, Assistant United States Attorneys, hereby submits this opposition to Adam Shafi's Application for Release on Bail ("Application"). The grand jury has returned an Indictment against Shafi charging him with a violation of Title 18, United States Code, Section 2339B(a)(1) -- attempting to provide material support and resources, specifically personnel, to al-Nusrah Front ("ANF"), a designated foreign terrorist organization, knowing that it was a designated foreign terrorist organization or that the organization had engaged or was engaging in terrorist activity or

terrorism. A charge of this nature carries a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(C). Shafi's Application fails to overcome this presumption with respect to both Shafi's risk of flight and his danger to the community as he has demonstrated through his words and actions that he is committed to escaping the watchful eyes of his family in order to flee from the United States to join a group that shares his view that America is the enemy.

## APPLICABLE LAW

Under the Bail Reform Act, the Court shall order a defendant detained if, after a hearing, it finds that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e). In a case involving a charge of terrorism, there is a presumption that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(C). The defendant may attempt to rebut that presumption by producing credible evidence to the contrary, but the Court's inquiry begins with "an evidentiary finding militating against release." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). The government, in seeking pretrial detention, must establish that the defendant poses either a flight risk or a danger to the safety of the community. 18 U.S.C. § 3142(f). A finding of either danger to the community or risk of flight will be sufficient to detain the defendant pending trial. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir.1981); *United States v. Kouyoumdjian*, 601 F.Supp. 1506, 1510 (C.D. Cal. 1985). The government must establish that the defendant is a flight risk only by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1406-07 (9th Cir. 1985). A finding that a person presents a danger to the community must be supported by clear and convincing evidence. *Id*.

## DISCUSSION

### I. There are No Conditions That Would Reasonably Assure Shafi's Appearance

#### A. Shafi Is A Significant Risk of Flight

Shafi has demonstrated with his words and his actions that he is committed to fleeing the United States in order to join a group that shares his view that America is the enemy. The facts set forth in the

Affidavit of Federal Bureau of Investigation (FBI) Special Agent Christopher Monika ("Affidavit") lay out evidence of Shafi's two attempts to carry out this plan. His first trip to Turkey was in August 2014, when he slipped away from his family while they were vacationing in Cairo, Egypt, to fly to Turkey. (Affidavit, ¶¶ 15-21). This was a carefully planned escape from his parents. Before he left for Egypt, Shafi left money for his friend, S.K., who purchased his one-way ticket from Cairo to Istanbul for him. Shafi also had planned the trip with his friend A.N., who met him in Turkey. Although Shafi and his friend decided not go with the "guy" they met in Turkey who was going to take them to ANF (Affidavit, ¶ 32),[1] this trip demonstrated Shafi's determination to travel and his ability to do so without his parents' knowledge. Evading his parents was not an insignificant feat as Shafi's father described himself and his wife as being very protective of their four children, who all still lived at home. Additionally, not only was Shafi traveling with his family at the time he flew to Turkey, according to Adam's father, each member of the family had an application on his/her phone that shared their location at all times.[2]

Although Shafi returned to his family in Egypt on his own accord in 2014, who together then returned to the U.S., his commitment to leaving the United States continued. Indeed, the conversations he had with his friends in the weeks leading up to his June 30th attempt to return to Turkey reveal a young man with ever-growing resolve to join ANF; even if he were to die in the process. (Affidavit, ¶¶ 28-38). During his June 5, 2015 conversation with S.K. he repeatedly shared his love for the amir of ANF and his dedication to dying with ANF if necessary. (Affidavit, ¶¶ 28-33). In that and other conversations described in the Affidavit, he discussed his progress in saving sufficient funds to make the trip. He also proded his friends S.K. and A.N. to gather funds, so they could go quickly. Ultimately, as Shafi explained to A.N. after he left San Francisco Airport ("SFO") on June 30, 2015, he decided to go

---

[1] Based on conversations between Shafi and S.K., the United States believes that in advance of Shafi's first trip to Turkey, he and A.N. wanted to join the Islamic State of Iraq and the Levant ("ISIL") as opposed to ANF. Accordingly, at the time of that trip, when Shafi and A.N. met "a guy" who was going to take them to ANF, Shafi did not want to go. As he described during his 79-minute conversation with S.K. on June 5, 2015, he subsequently came to the realization that he is more in line with the ANF's more selective approach to killing as opposed to that of ISIL. The government has provided recordings of each of the conversations mentioned in the Affidavit to the defense. At this time, the government is proceeding by proffer, as is the custom in this District for detention hearings. However, the government can and will make copies available for the Court's review upon request.

[2] FBI Interview of Salama Shafi, September 4, 2014 documented in an FBI 302.

1  without waiting for his friends.  He explained that he had sought guidance from Allah and determined
2  that if he were to find his passport, he would take that as a sign that it was time for him to go.[3]  He also
3  expressed his opinion that S.K. and A.N. didn't want to go.

4  Unlike the majority of criminal defendants who appear before this Court, Shafi's alleged criminal
5  behavior is not motivated by money or greed or a mere lack of respect for the law.  Shafi is motivated by
6  his belief that America is the enemy and that groups like ANF are working towards the ultimate goal of
7  living under the law of Allah.  Accordingly, when he was unable to take his flight on June 30th to
8  Turkey, he lamented to his brother that he'd rather be in jail if he couldn't go anywhere to fight.
9  (Affidavit, ¶ 47).  Based on his own words, jail is a better place for him as he believes that living "like
10 everyone else" is a "betrayal." Id.  Shafi's demonstrated commitment to fleeing the United States can
11 not be countered by any condition or combination of conditions that the Court could set.

12 **B.  Shafi's Family Has Demonstrated Their Inability To Stop Shafi's Flight**

13 Adam Shafi's family is not equipped to eliminate the strong risk of flight that Shafi presents.  Since
14 at least August 2014, his family has been well aware of his commitment to escaping their control and
15 fleeing from the United States to join a terrorist organization.  Despite this dangerous and terrifying risk,
16 and the family's ability to monitor his location through his phone, they have failed to anticipate Shafi's
17 travel with specificity or to stop him from traveling on two separate occasions.  The family's high level
18 of interest and concern about their son's risk of flight is demonstrated by Shafi's father's reaction to
19 Shafi's disappearance from their hotel in Egypt in August 2014 when the family was on vacation.
20 Shafi's father reacted swiftly.  He went to the U.S. Embassy to report his son's disappearance,
21 explaining that he was afraid that Adam had been recruited and that it was important to find him quickly
22 to prevent him from doing harm to himself or others at the direction of those who recruited him.
23 (Affidavit, ¶ 16).  By a stroke of luck (or an intervention by Allah as Shafi and his friend S.K. seem to
24 believe[4]) for his family, Shafi decided to return to Cairo on his own.

---

[3] Although this part of the conversation was not included in the Affidavit, the government has provided a copy of this recording to the defense and will provide the same to the Court upon request.

[4] During a conversation with S.K. on June 5, 2015, S.K. suggested, and Shafi agreed that the reason Shafi and A.N. came back from Turkey in 2014 might be that Allah was protecting them from going with ISIL, as opposed to ANF.  (Affidavit, ¶ 32).

U.S.'s OPPOSITION TO DEFENDANT'S APPLICATION FOR RELEASE ON BAIL
CR 15-0582 WHO                                              4

Despite this close call that put them on heightened alert, his parents once again failed to thwart his attempt to flee in June 2015.  Again, somehow the family immediately knew that Shafi was attempting to travel to Turkey and quickly attempted to stop him.  This time, despite having had significant contact with the FBI after the August 2014 trip, the family apparently attempted to meet this threat on their own.  According to Shafi's relative, Shafi's parents contacted relatives in Egypt to ask them to fly to Istanbul to intercept Shafi.  (Affidavit ¶ 46).  Their actions demonstrate that a) they were keeping close tabs on Shafi as they knew that he had gone to SFO even though he had told them that he was going to an interview at San Francisco State University; and b) they had a significant concern about Shafi's intentions as they took the extreme, if not desperate, step of asking someone in Egypt to try to purchase a plane ticket quickly enough to beat Shafi to the airport in Istanbul.  If their concern were simply that he was running away with no nefarious or dangerous purpose, the more logical step would have been to seek assistance from law enforcement, who could have intercepted him *before* he got on the flight.

In short, this is not a situation where the family has never before recognized the gravity of the situation.[5]  They have demonstrated their vigilance; they simply do not have the ability to counter the strong commitment that Shafi harbors to evade them and flee from the United States.  Again, in a stroke of luck for the family, who must have feared for the safety of their son, the FBI learned of Shafi's imminent departure and quickly responded to SFO.

### C. The Changes In Circumstances Post-Indictment Increase Shafi's Incentive and/or Ability To Flee

There are five significant changes in circumstances since Shafi's first two attempts to travel, none of which decrease Shafi's risk of flight:

1) Shafi has been arrested and charged with a felony carrying a 20 year maximum penalty.  As with any defendant facing a significant prison sentence, this new circumstance increases Shafi's

---

[5] Another example of the lengths to which Shafi's family has already gone in their unsuccessful attempts to stop Shafi from fleeing to join a terrorist group, Shafi's father told the FBI during an April 23, 2015 interview, that he had encouraged Shafi to visit Armin Harcevic in prison. As discussed infra, Harcevic was charged with material support to terrorism.  Shafi's father apparently believed that if Shafi were to see Harcevic in prison, it would help Shafi see error in his ways or at least the grave consequences of being imprisoned for his actions. Shafi's father told the FBI that Shafi had visited Harcevic in prison a couple of times, but he was not sure if it did any good for Shafi.

U.S.'s OPPOSITION TO DEFENDANT'S APPLICATION FOR RELEASE ON BAIL
CR 15-0582 WHO                        5

incentive to flee. This is particularly true for Shafi whose goal is to leave the United States to join a group that believes that America is the enemy. However, unlike other cases in which family members are often shaken into action by a criminal indictment, Shafi's family was already motivated by the fear that Shafi would join a terrorist group where the risk of death is very high. Accordingly, while the family undoubtedly does not want to see Shafi receive a long prison term, this threat pales in comparison to the threat that was mitigated by the FBI's quick action to respond to SFO before Shafi boarded his flight to Turkey en route to join ANF. They were already doing their best to protect their son; the new 20-year sentence will only heighten their challenge, but not their ability, to keep him safely in the United States.

2) Shafi's commitment to and love for ANF has become public. Once the Affidavit was unsealed, any and all supporters of ANF could read about Shafi's extraordinary efforts to support the cause. There is no way to predict whether and how any of those individuals might seek to assist Shafi in his ultimate goal of travelling to join ANF.

3) As a charged defendant, the tools at the FBI's disposal to conduct surveillance of Shafi are more limited. Even with the expenditure of significant resources, the FBI only learned of Shafi's trip hours before his flight was about to depart. Post-indictment, the efforts to counter Shafi's risk of flight would lie primarily on the shoulders of his family, who were unable to stop him on two prior occasions and on Pretrial Services, whose resources and tools are significantly more limited than those of the FBI.

4) Shafi has surrendered his passport. Being the planner that Shafi has demonstrated he is, he has already anticipated the challenge of traveling to Turkey or Syria if he were unable to fly from the United States. In a conversation with S.K. on June 2, 2015, Shafi raised his suspicion that he might be on the "No Fly" list. The two then talked about going through Mexico and possibly having to take a cruise to Greece to avoid the obstacle of being on the No Fly list. Shafi's level of dedication and motivation is so strong that the absence of a passport would not significantly lower his risk of flight.[6]

---

[6] A recording of this call has not yet been produced to the defense in discovery, but will be as soon as is practicable.

5) Efforts to keep Shafi from fleeing will have the force of the Court behind them.  This change in circumstances will likely have little to no effect on Shafi's respect for any conditions imposed by this Court.  Shafi has shown a complete disregard and lack of respect for law enforcement and the American legal system.  Not only has he schemed and planned to break the law, his particular choice of criminal activity – support of terrorism – is motivated by a rejection of America and all it stands for.  He also joked with his relative and his friend A.N. after being interviewed by the FBI at SFO on June 30th about his views on the FBI's competence. (Affidavit, ¶¶ 47-48).  During his conversation with A.N. on June 30th, A.N. repeatedly suggested that he and Shafi meet in person to discuss what had happened to Shafi.  At one point, A.N. asked whether it was okay for Shafi to tell him where he was going over the phone, which was a clear indication of A.N.'s concern that the FBI might be listening to their phone conversation.  In response to those questions, Shafi said, "No, those fools [referring to the FBI] are a lot more stupid than you think," and then went on to explain that the FBI had asked him whether he was going to join a terrorist group.  Shafi's response was, "what do you think I'm going to say, yes?" in response to which A.N. and Shafi laughed.  Shafi had a similar exchange with his relative regarding the FBI's direct questioning about Shafi's intent to join a terrorist group.  Shafi and his relative also laughed and joked about the FBI and Shafi's lack of candor with them.  Through these exchanges as well as his choice of crime, Shafi's lack of respect for the law is unquestionable.  There is no indication that he would have any heightened respect for any conditions imposed by this Court.

Given Shafi's history of evading his parents' diligent efforts to keep tabs on him, his increased incentive to flee, and the limitations his current status as a charged defendant place on law enforcement, there are no conditions or combination of conditions the Court could impose that would assure his appearance.

### D. Shafi's Comparison to Armin Harcevic is Misplaced

The Court's decision concerning bail should be an individualized one taking into consideration all of the factors set forth in the Bail Reform Act as they relate to Shafi.  Therefore, any comparison to one or

U.S.'s OPPOSITION TO DEFENDANT'S APPLICATION FOR RELEASE ON BAIL
CR 15-0582 WHO                                              7

two specific factors presented in another individual's situation is not particularly informative. In his Application, Shafi attempts to compare his circumstances to Armin Harcevic, the individual Shafi visited in prison at his father's suggestion as discussed in footnote 5. Shafi inaccurately states that Harcevic (15 CR 49, E.D. Missouri) was charged with "material support to terrorism as well as conspiracy to murder and maim overseas" and argues that the conduct with which Harcevic was charged was "considerably more serious" than the charges against Shafi. (Application, p. 15-16.) In fact, according to the indictment in his case, Harcevic was not charged in the count alleging a conspiracy to murder and maim overseas. (Criminal Docket #2, Redacted Indictment, Count 2, 15 CR 49, E.D. Missouri). He was charged with conspiracy to provide material support in the form of currency and property, knowing that the currency and property would be used in carrying out a conspiracy to maim and murder. Id. at ¶¶ 1-48. Moreover, the overt acts alleged against Harcevic in his indictment appear limited to the collection and contribution of money to a co-defendant, namely Harcevic is alleged to have transferred $1,500 (Id. at ¶ 23) and communications related to the purpose of that money.

Trying to compare the provision of financial support, as opposed to an attempt to travel to join an organization and provide support in the form of himself, is not helpful in the context of evaluating a defendant's risk of flight. Provision of funds to an FTO is a particularly stark contrast here, in light of Shafi's repeated statements about his willingness to die with ANF. A more apt comparison with respect to conduct might be that of Nihad Rosic, one of Harcevic's co-defendants. Much like Shafi, Rosic is alleged to have attempted to board an airplane in New York with the intent to travel to Syria to join his co-defendants who were fighting in support of an FTO. Id. at ¶ 45. Rosic was ordered detained pending trial by the same Magistrate Judge who granted bail to Harcevic (Criminal Docket #142, Detention Order, 15 CR 49, E.D. Missouri). To the extent the Court finds any comparison to be helpful in evaluating the factors of the Bail Reform Act, the government urges the Court to find defendants, like Rosic, who are charged with like conduct to Shafi's.

**II. If Shafi's Attempts to Flee are Thwarted, He Poses a Danger to the Community**

Shafi has submitted over 20 letters from friends and family members testifying to his calm, peaceful, nature and his position in his community as a leader among his peers. Read with the backdrop (which

U.S.'s OPPOSITION TO DEFENDANT'S APPLICATION FOR RELEASE ON BAIL
CR 15-0582 WHO                                                    8

these individuals were not privy to at the time they wrote their letters), of Shafi's views that he expressed to his closest confidants in private phone conversations, these letters paint a terrifying picture of an individual who is leading a double life.  One, is his public persona, which his friends and family describe in their letters.  The other is a "miserable" young man who is concerned about dying before he has "blood in [his] books" or meeting Allah before he has "a couple gallons of blood that [he's] spilled for [Allah]," and "scars" on his face (Affidavit, ¶ 34);  a young man who felt jealousy when he learned of others who died on the battlefield fighting in Syria and became martryrs  (Affidavit, ¶ 35);  a young man who expressed reluctance to go to Burma, where Muslims are being mistreated, because he "really wanted to kill some frickin' people that were supporting America or American soldiers or something" (Affidavit, ¶ 37); a young man who spends time understanding the teachings of the amir of ANF and shares those teachings with his friends; a young man who loves ANF's amir -- an amir who stated in a publicly available interview that America is the enemy; a young man who takes action based on signs he believes he receives from Allah; and a young man who grew impatient with his closest friends, who were unable or unwilling to "go" with him when he was ready to go.  Id.

The Court must address the danger posed by Shafi's secret persona and by the fact that Shafi has successfully hid his views from the network of people surrounding him.  Despite his deeply held beliefs that motivated him to attempt to travel to join ANF and join his beloved amir, he is sophisticated enough to know that his beliefs are not widely held within his family and community.  Indeed, while holding himself out as a kind and compassionate member of the community, he revealed to his relative during his June 30th phone call that if he can't travel and fight, he'd rather be in jail.  For him, living like the rest of his community is living a life of betrayal.  Based on this outlook, even assuming arguendo that there were conditions that could be imposed to prevent Shafi's flight, Shafi has demonstrated that his commitment is strong and that he is motivated by signs he believes he receives from Allah.  Those signs could very well include guiding Shafi to some other method of supporting ANF in their efforts to counter their enemy: America.  There is no condition that could be imposed to address such an unpredictable threat.

//

**CONCLUSION**

The government has shown by a preponderance of the evidence that Shafi poses a risk of flight and by clear and convincing evidence that he is a danger to the community. Shafi must remain in custody, because there is no condition or combination of conditions that can appropriately address either his flight risk or his danger to the community.

DATED: December 21, 2015 	Respectfully submitted,

	BRIAN J. STRETCH
	Acting United States Attorney

	      /s/
	CANDACE KELLY
	JEFFREY SHIH
	Assistant United States Attorneys