DONNA R. ZIEGLER [SBN 142415]
County Counsel in and for the
County of Alameda
L. DAVID NEFOUSE [SBN 243417]
Deputy County Counsel
1221 Oak Street, Suite 450
Oakland, CA 94612
Tel: (510) 272-6700
Fax: (510) 272-5020
E-mail: david.nefouse@acgov.org

Attorneys for Nonparty Alameda County Sheriff's Office

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 15-cr-00582-WHO-1 |
| Plaintiff, | **APPLICATION OF NONPARTY ALAMEDA COUNTY SHERIFF'S OFFICE REGARDING QUESTIONS CONCERNING THE GLENN E. DYER JAIL AND THE CONFINEMENT OF DEFENDANT ADAM SHAFI** |
| v. | |
| ADAM SHAFI, | |
| Defendant. | |

At the request of the Court and counsel, Nonparty Alameda County Sheriff's Office ("ACSO"), as the sole and exclusive authority to keep the county jail and the inmates in it (*see* California Government Section 26605), respectfully submits the instant application and declarations of Alameda County Sheriff's Office ("ACSO") Lieutenant Dan Brodie ("Brodie Decl.") and Alameda County Criminal Justice Mental Health ("CJMH") Manager Joan D. Cairns, LMFT ("Cairns Decl."), in response to the unsupported allegations set forth in inmate Adam Shafi's "Application For Release on Bail" (Dkt. No. 34) and "Motion for Review of Detention Order" (Dkt. No. 35). This application is supported by the arguments set forth below, the above mentioned declarations, and any arguments that may be heard before the Court on this matter.

# INTRODUCTION

Based on a contractual agreement between the United States Marshal's Service and the Alameda County Sheriff's Office, ACSO houses federal inmates at its jails who are subject to the jurisdiction of the United States District Court for the Northern District of California. The ACSO recognizes, adheres to, and fully respects the constitutional, due process rights of all inmates – including defendant Mr. Adam Shafi ("Defendant") – under the Fourth and Eighth Amendments of the United States Constitution, and other applicable federal and state laws. *See* Brodie Decl. ¶¶ 33-34. The allegations concerning the ACSO and the conditions of confinement at the Glenn E. Dyer Jail (the "Jail") submitted by Defendant and his counsel, however, are nothing more than gross mischaracterizations and unsubstantiated exaggerations in an attempt to have Defendant released on bail and/or challenge his classification at the Jail. To date, all of his complaints have been unfounded and are no way related to his inalienable rights as an inmate, but instead concern Defendant and his counsel's desire to have greater rights, access, and privileges than other inmates at the Jail, or simply to have Defendant be released on bail. In addition, ACSO's policies, rules, and procedures meet federal and state standards (*see* Brodie Decl., ¶¶ 33-34), including its policies and guidelines for administrative isolation; and, despite the brazen assertions by defense counsel in their papers, as noted by Magistrate Judge Sallie Kim, "administrative isolation"[1] is not "solitary confinement". *See* Brodie Decl., ¶¶ 4, 11-12, 33-34; Federal Performance Based Detention Standards, C.9.25 ("Inmates in special management units receive a minimum of one hour of exercise per day outside their cells, *five times per week*, unless security or safety considerations dictate otherwise. 4-ALDF-2A-64") (emphasis added); Dkt. No. 27 at 23, 32.

Furthermore, although Defendant was put on notice concerning the proper grievance process at the Jail, Defendant has failed to utilize the Jail's grievance measures to date. *See* Brodie Decl., ¶ 26. Instead, unlike all of the other inmates at the Jail, Defendant, through his counsel, has aired his grievances in open court, without the knowledge of or notice to ACSO, thus avoiding the grievance policies and procedures in place and failing to exhaust his administrative remedies in direct contradiction of the Prison Litigation Reform Act ("PLRA").[2] *See Woodford v. Ngo*, 548 U.S. 81, 83

---

[1] ACSO submits the term "administrative isolation" is the same as "administrative segregation".

[2] It should be noted for the Court that ACSO was only made aware of these allegations as to Mr. Shafi *after* the Court issued

APPLICATION OF ACSO RE THE GLENN DYER JAIL
CR 15-CR-00582-WHO  2

(2006). Indeed, had ACSO been made aware of these purported issues through the grievance process, these manifest misunderstandings and embellishments could have already been resolved.

ACSO appreciates the willingness and openness of the Court to provide the ACSO with an opportunity to respond to these allegations, and requests that the Court and the parties continue to provide notice and an opportunity to be heard prior to requesting, arguing, and/or issuing any orders related to the Jail or – more appropriately – that Defendant utilize the grievance process at the Jail to resolve any alleged complaints. As set out in further detail below and in the declarations of Lt. Brodie and Ms. Cairns, ACSO responds to the allegations put forward by Defendant and his counsel.[3]

## FACTUAL BACKGROUND

Following his arrest on July 2, 2015, Defendant has been in the custody of ACSO since July 6, 2015. *See* Brodie Decl. ¶ 6; Dkt. No. 35 at 15. Initially, Defendant was confined at the Jail in mainline, protective custody; however, on December 17, 2015 – contrary to the suggestion in the papers submitted by the Defendant – the federal criminal charges against Defendant became public and were picked up by the local and national media. *Id.* On that same day, ACSO staff met with Defendant and advised him of their concern for his safety because of the media release of information concerning his case, including his identity. *See* Brodie Decl., ¶ 7. Defendant told ACSO staff he did not want to be moved, and Defendant was advised to speak to a deputy if he felt threatened or the situation changed. *Id.* On December 18, 2015, based on further review and the high profile media coverage of his case (and other factors, including items found within his cell during a routine search), the classification unit at the Jail determined it would be in the best interest of Defendant's safety to be reclassified to "Administrative Isolation" due to the risk of Defendant being assaulted due to the nature of his case as it became public information among other inmates in mainline custody. *Id.* at ¶¶ 11-13, 20-21, 36. Following numerous weekly reviews regarding the classification status of the Defendant, Defendant continues to be held in Administrative Isolation for his safety, with his last review being held on January 25, 2016. *Id.* at ¶¶ 13-

---

its minute order of January 14, 2016. Defense counsel did not serve these papers on ACSO. As discussed in more detail below, ACSO requests notice, and an opportunity to be heard, regarding any motion and/or papers submitted before the Court that in any way concerns the rights and responsibilities of ACSO.

[3] The counsel for the parties in this matter and counsel for ACSO had a telephonic meet and confer to discuss these issues on January 19, 2016. *See* Dkt. No. 45.

APPLICATION OF ACSO RE THE GLENN DYER JAIL
CR 15-CR-00582-WHO   3

19, 36. On December 31, 2015, Defendant was visited by members of the County's CJMH medical staff to be assessed due to the nature of his case. *See* Cairns Decl. ¶ 5. No specific questions regarding privileged or confidential information and/or defense strategy were asked to Defendant. *Id.* at ¶¶ 6-7.

## ARGUMENT

### I. ADMINISTRATIVE ISOLATION IS NOT SOLITARY CONFINEMENT

Defendant contends – without any legal or factual support – that he has been placed in solitary confinement by ACSO. *See* Dkt. No. 35 at 16-17. Although Magistrate Judge Kim explained and noted the distinction between solitary confinement (which Defendant is not in) and Administrative Isolation (which is the current housing status for Defendant at the Jail) (*see* Dkt. No. 27 at 23, 32), Defendant's counsel nonetheless claims Defendant is housed in solitary confinement.[4] This is simply not true.

The major distinction between solitary confinement and Administrative Isolation is that the former is a housing assignment based on punishment, while the latter is a housing assignment based on classification. *See* Brodie Decl., ¶¶ 11-12, 20-21, 36. In the case of Defendant, he was re-classified to the Administrative Isolation housing unit after both his criminal complaint and name became public. *Id.* This was done to protect the Defendant – not as punishment, nor discrimination. *Id.* Indeed, quite often the ACSO utilizes Administrative Isolation to protect inmates while awaiting trial in jail. This can occur in gang-related matters or cases where the safety and/or security may be at risk, as was the case here. In further support of re-classifying Defendant to Administrative Isolation, contraband was found in Defendant's cell during a routine search, the nature of which further justified the need to move Defendant into Administrative Isolation. *See id.* ¶ 9.

In contrast to solitary confinement, to the extent feasible under ACSO rules and regulations, ACSO can at times make reasonable accommodations for inmates housed in Administrative Isolation, like the case of Defendant when ACSO allowed the Defendant to move to a different cell so he could

---

[4] At the December 22, 2015 hearing, Magistrate Judge Kim stated on the record: "[T]here's no such thing as solitary confinement at Glenn Dyer; it's just administrative segregation. I've been there. I've actually physically toured the facility and I understand what the different levels of security are. So I think the term 'solitary confinement' is incorrect. . . . I want to assure you that he is not in solitary confinement. Administrative segregation is very different from solitary confinement. I'm familiar with the issues regarding solitary confinement and I agree that long term solitary confinement is not good for people's mental health, although it may be necessary in some circumstances. But that's not what Mr. Shafi is placed in right now. So I just want to make sure that you have a clear understanding of that because I understand you're not from this area and you don't know the Glenn Dyer facility."

APPLICATION OF ACSO RE THE GLENN DYER JAIL
CR 15-CR-00582-WHO   4

look at the clock in order to know when to pray in accordance with his religion. *Id.* ¶ 18. Moreover, the size of the cells in Administrative Isolation are the exact same as those in mainline custody (the previous housing classification of Defendant). *Id.* ¶ 21. Although Defendant contends in his papers that he is only let out of his cell one-hour per-day every other day, in fact, Defendant (like all other inmates in Administrative Isolation) is allowed out of his cell five (5) times per week for one (1) hour each instance, in line with federal guidelines. *See supra* at 2, 17:20; Brodie Decl. ¶ 22. For the Court's convenience, the rights and privileges, as well as the complexities, of Administrative Isolation are set out in great detail in the Brodie Declaration, including program access for these inmates and their ability to review legal documents and prepare for trial. *See* Brodie Decl., ¶¶ 4, 20-25, 27-31.

Moreover, ACSO and Alameda County recognize the potential mental health implications that such a housing classification may possibly have on inmates, which is why Alameda County's CJMH staff visits with inmates, as was the case with Defendant in late-December 2015. *See* Cairns Decl., ¶ 5. As discussed further below, despite the uncorroborated assertions in his papers (*see* Dkt. No. 35 at 17), the mental wellbeing of Defendant is being addressed by Alameda County while Defendant remains in ACSO custody. *See infra* at 6; Cairns Decl., ¶¶ 4-6.[5]

## II. DEFENDANT HAS NEVER BEEN SUBJECT TO AN UNREASONABLE SEARCH OR SEIZURE OF POSSESSIONS WHILE IN THE CUSTODY OF ACSO

Defendant claims that "privileged" documents were seized from his cell by ACSO and that ACSO then "shar[ed]" these documents with the FBI. *See* Dkt. No. 35 at 17, 12:14. Defendant and his counsel are mistaken. As stated in the declaration of Lt. Brodie, no privileged materials were seized from Defendant's cell, and there was no agreement or understanding with the federal government to gain access to Defendant's legal materials. *See* Brodie Decl., ¶ 10; Dkt. No. 38; Dkt. No. 38-1, ¶ 5.[6] Thus, it is apparent counsel for Defendant has not only exaggerated the conditions of confinement at the Jail in order to have Defendant released on bail, but has also made misrepresentations to the Court about the intent of ACSO staff at the Jail. Furthermore, any searches of Defendant's cell were done as a matter of

---

[5] To the extent Defendant or his counsel have concerns about the mental wellness of Defendant, Defendant may request (at no charge to Defendant) an appointment with a CJMH professional at the Jail.

[6] ACSO understands that these materials are with the federal government at this time. To the extent feasible, ACSO supports the position of the government in its papers. *See* Dkt. No. 38.

APPLICATION OF ACSO RE THE GLENN DYER JAIL
CR 15-CR-00582-WHO  5

policy, and were in no way targeted at Defendant. *See* Brodie Decl., ¶¶ 8, 10.

### III. NO ATTORNEY-CLIENT INQUIRIES WERE MADE REGARDING DEFENDANT'S CASE BY JAIL OR COUNTY STAFF TO DEFENDANT

On December 31, 2015, two (2) CJMH medical professionals visited Defendant to do a mental health assessment on Defendant. *See* Cairns Decl., ¶ 5. Defendant was assessed due to the high profile of his case, and the fact that he has no prior criminal record. *Id.* As noted by Ms. Cairns, there is nothing in the CJMH notes that discuss the criminal charges related to Defendant's case. *See* Cairns Decl., ¶ 7. CJMH medical professionals only asked if Defendant understands the charges against him so that they may assess the mental state of the Defendant – nothing more. *Id.* ¶ 8. An exemplar of the form used by CJMH to assess inmates is attached as a declaration to the Cairns Declaration. A review of that form clearly shows that no privileged or confidential questions were asked to Defendant about his case.

### IV. ACSO SHOULD RECEIVE NOTICE AND THE OPPORTUNITY TO RESPOND PRIOR TO THE COURT ISSUING AN ORDER RELATED TO JAIL SECURITY, RULES, REGULATIONS, AND PROCEDURES

California Government Code Section 26605 states that "the sheriff shall take charge of and be the sole and exclusive authority to keep the county jail and the prisoners in it." Per the provisions of this code, the Sheriff has sole and exclusive authority over Alameda County's jail and inmates. ACSO submits that concurrent with the filing of any motions and/or prior to the issuance of any related orders that are in any way connected to how the Jail is operated and/or maintained therein, the ACSO must have proper notice and an opportunity to be heard.

The United States Supreme Court has long held it a violation of due process to render a judgment binding on a litigant unless it has been served with process or voluntarily defends the action. "It is a general principle of Anglo-American jurisprudence that one is not bound by a judgment . . . in which he is not designated a party or to which he has not been made a party by service of process. A judgment rendered in such circumstances is not entitled to full faith and credit . . . and judicial action enforcing it . . . is not that due process which [is] require[d]." *Hansberry v. Lee* (1940) 311 U.S. 32, 40; *see also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (noting that it is generally a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard).

In the instant matter, as the entity in charge of keeping the Jail and the inmates in it, the ACSO, a clear party-in-interest, received no notice from Defendant or his counsel regarding the allegations made in Defendant's bail motion until after the Court issued its order. Not only was the ACSO denied notice of the proceeding, it was also deprived of any opportunity to be heard prior to the issuance of the order, which called into question the confinement of Defendant at the Jail.

The Supreme Court has noted a direct connection between due process protection and the opportunity to be heard. "The opportunity to be heard is an essential requisite of due process law in judicial proceedings. . . . [A] State may not enforce a judgment against a party . . . without a hearing or opportunity to be heard, . . . without disregarding the right of due process." *Richards v. Jefferson County, Ala.* (1996) 517 U.S. 793, 797. The *Richards* court further held that to give a conclusive effect to a prior judgment, against a person who is neither a party nor in privity with a party, would be directly contrary to due process protections. *Id.*

Here, although the ACSO is a nonparty to the primary criminal matter, allegations were made by Defendant and his counsel that directly affected ACSO interests. ACSO, as "the sole and exclusive authority to keep the county jail and the prisoners in it," was summarily denied any opportunity to be heard prior to the issuance of the January 14, 2016 minute order. The ACSO's desire to be heard in such a matter is not merely perfunctory. Very real logistical and procedural concerns exist for how to run and manage the Jail, especially as they relate to Defendant. *See* Brodie Decl., ¶¶ 27-28, 35-36. Further, to best allocate resources and serve the needs of all persons in ACSO's custody, it is imperative that ACSO be a part of the conversation when such relief is requested. *Id.*

## V. DEFENDANT AIRING HIS GRIEVANCES IN OPEN COURT VIOLATES THE PLRA DUE TO HIS FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), requires the exhaustion of administrative remedies at a jail/prison prior to filing a complaint with a court.[7] As to the instant matter, the United States Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006) is instructive. In *Woodford*, the Supreme Court, in an opinion by Justice Alito, explicitly held:

---

[7] It states in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

> Exhaustion is no longer left to the discretion of the district court, but is mandatory. *See Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process. Id., at 734, 121 S.Ct. 1819. Finally, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. *Nussle*, supra, at 524, 122 S.Ct. 983.

*Woodford*, 548 U.S. at 83.

Here, Defendant has filed no grievances to date, despite the fact he was made aware of the grievance process. *See* Brodie Decl., ¶ 26. Rather, Defendant effectively airs a novel writ with the Court at each of his court appearances, asserting new, unsubstantiated allegations against the Jail, ACSO, and/or its deputies and officers. The letter and the spirit of the PLRA prohibit such conduct, especially here, where Defendant has not filed a single grievance that addresses any of his purported concerns. *Id.* As such, ACSO requests that the Court instruct Defendant to utilize the grievance system that is in place for the inmates at the Jail.

## CONCLUSION

For the foregoing reasons, ACSO requests that the Court find that allegations made in Defendant's motions as unfounded. ACSO further requests that ACSO be given notice and an opportunity to be heard on all future matters before the Court as they relate to this case, should any motion or order in anyway affect the security, policies, safety, rules, and/or procedures at the Jail. And, ACSO requests that the Court instruct Defendant to utilize the grievance process at the Jail as set forth above.

Respectfully submitted,

DATED: January 29, 2016

OFFICE OF THE COUNTY COUNSEL
COUNTY OF ALAMEDA

By _____
L. DAVID NEFOUSE
Deputy County Counsel
1221 Oak Street, Suite 450
Oakland, CA 94612
Tel: (510) 272-6700
Fax: (510) 272-5020
E-mail: david.nefouse@acgov.org
*Attorneys for Nonparty Alameda County Sheriff's Office*

CERTIFICATE OF SERVICE

UNITED STATES OF AMERICA v. ADAM SHAFI
Case No. 15-cr-00582-WHO-1

I, Rakia Grant-Smith, declare:

I am a resident of the State of California, over the age of eighteen years, and not a party to this action. My business address is 1221 Oak Street, Suite 450, Oakland, CA 94612-4296. On the date set forth below I served the documents listed below:

> APPLICATION OF NONPARTY ALAMEDA COUNTY SHERIFF'S OFFICE REGARDING QUESTIONS CONCERNING THE GLENN E. DYER JAIL AND THE CONFINEMENT OF DEFENDANT ADAM SHAFI;
>
> DECLARATION OF JOAN D. CAIRNS, LMFT;
>
> DECLARATION OF LIEUTENANT DAN BRODIE, ALAMEDA COUNTY SHERIFF'S OFFICE

☒ BY MAIL: I am readily familiar with the Office of the County Counsel, Alameda County's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in the City of Oakland, California, in a sealed envelope with postage fully prepaid.

Erik B. Levin
Law Office of Erik Levin
2001 Stuart Street
Berkeley, CA 94703
510.978.4778
Fax: 510.978.4422
Email: erik@erikblevin.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
Designation: Retained

Jeffrey L. Shih
United States Attorney's Office
Northern District of California
450 Golden Gate Avenue
Box 36055
San Francisco, CA 94102
415-436-7168
Email: jeffrey.shih@usdoj.gov

Joshua Lewis Dratel
Joshua L. Dratel, PC
29 Broadway, Suite 1412
New York, NY 10006
212-732-0707
Fax: 212-571-3792
Email: jdratel@joshuadratel.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge. Executed at Oakland, California on January 29, 2016.

_____
Rakia Grant-Smith