FILED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA  JAN 29  P 1: 55

SAN FRANCISCO DIVISION  SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. CA.

| | |
|---|---|
| UNITED STATES | ) CASE NO. 15-CR-00582-WHO-1 |
| Plaintiff, | ) |
| | ) |
| v. | ) DECLARATION OF **LIEUTENANT DAN** |
| | ) **BRODIE, ALAMEDA COUNTY SHERIFF'S** |
| ADAM SHAFI | ) **OFFICE** |
| Defendant. | ) |
| | ) |
| | ) |

I, **Dan Brodie**, declare as follows:

1.  I am an Administrative Lieutenant, employed by the Alameda County Sheriff's Office ("ACSO"), and stationed at the Glenn E. Dyer Jail (the "Jail"), in Oakland, California.

2.  I have worked for the ACSO for 16 years. I have held the position of Lieutenant at the Jail for four (4) months.

3.  My duties and responsibilities at the Jail include the oversight of operations and support services facilitated at the Jail. Since I have been employed at the Jail at my current position, I have come to understand the intricate operations required to manage the Administrative Isolation housing unit in compliance with federal and state mandates while maintaining the safety and security of staff and inmates.

4.  The Jail houses approximately 400 inmates. Of those up to ninety-six (96) inmates, may be designated with an "Administrative Isolation" classification. Presently, we have seventy-five (75) inmates with this classification. As discussed further below, this classification, as with case of inmate Adam Shafi ("Mr. Shafi"), shall be done for the safety of the inmate.

5.  Per Alameda County Sheriff's Office policy, and California Penal Code 4002, inmates at this facility are evaluated by "classification staff," who take a number of objective criteria, including consideration of criminal sophistication, seriousness of crime charged, presence or absence of assaultive behavior, age, and other criteria that will provide for the safety of the inmates and staff.

6.  Mr. Shafi is being held under Federal charges related to terrorism and has been in custody at this facility since July 6, 2015, when he was initially placed in a maximum security "mainline" type housing unit where two inmates may

DECLARATION OF LIEUTENANT DAN BRODIE
15-CR-00582-WHO-1

1

1    live together in a cell, and inmates participate in meals, recreation, and other activities together in a group setting. It

2    should be noted that his charges were not "public" at that time.

3   7.  On December 17, 2015, classification staff became aware that Mr. Shafi's case was made public, and was reported

4    through various media outlets. On that day staff met with Mr. Shafi and advised him of their concern for his safety

5    because of the media release of information. Mr. Shafi told ACSO staff he did not want to be moved, and Mr. Shafi

6    was advised to speak to a deputy if he felt threatened or the situation changed.

7   8.  Later that evening a search or a "shakedown," of the particular housing floor where Mr. Shafi was housed, was

8    conducted. All cells in this particular housing "pod" or area – 16 cells total – were selected to be searched. This

9    was the third search conducted by this particular shift in six (6) days, with the prior two (2) searches being on

10    December 12th and the previous evening, December 16th. The prior two (2) searches were on different housing

11    floors involving different cells, all of which are conducted as "spot checks" to control contraband and provide for its

12    disposition.

13   9.  During the search of Mr. Shafi's cell, a deputy located a notepad containing writings and drawings, which to the

14    deputy, based on this deputy's training and experience, appeared to support terrorism. Copies of these drawings

15    were retained in Mr. Shafi's classification file the original notebook was confiscated and later turned over to the

16    FBI.

17   10.  Any other searches of Mr. Shafi's cell were done in accordance with Alameda County Sheriff's Office rules and

18    procedures, and were not specifically targeted at Mr. Shafi. To the best of my knowledge, none of Mr. Shafi's legal

19    documents have been confiscated and/or misplaced. Furthermore, Mr. Shafi has and will continue have access to his

20    legal documents, and his rights to attorney-client privilege will be respected.

21   11.  On the following day, December 18, 2015, based on further review and discussion of the high profile media

22    coverage and type of case, as well as the documents recovered from his cell, classification determined it would be in

23    the best interest of Mr. Shafi's safety to be reclassified to "Administrative Isolation." Classification staff felt Mr.

24    Shafi may be at risk of being assaulted due to the nature of his case as it becomes public information amongst other

25    inmates in custody.

26   12.  Per policy inmates placed in "Administrative Isolation" will have their status reviewed every seven (7) days for the

27    first two (2) months, and at least every thirty (30) days thereafter.

28   13.  The following day, December 19, 2015, the first "reclassification review" of Mr. Shafi was conducted by

DECLARATION OF LIEUTENANT DAN BRODIE
15-CR-00582-WHO-1

classification staff. Staff contacted Mr. Shafi, who said he was "Okay," but confused about why he was placed in Administrative Isolation. Staff explained their concerns regarding a publicized high profile case at this time.

14. Another reclassification review was conducted on December 21, 2015. During this review Mr. Shafi did not have any questions or comments and it was determined his placement in Administrative Isolation, for his safety, would continue.

15. A reclassification review was conducted on December 28, 2015. During this review Mr. Shafi said he was doing well and asked when he could return to the "mainline" floor. It was again determined his placement in Administrative Isolation would continue due to the nature of his case, of which Mr. Shafi was informed.

16. Another reclassification review was conducted on January 4, 2016. During this review Mr. Shafi was contacted, and he advised he was fine and did not have any additional comments. During this review staff concluded his placement in Administrative Isolation would continue.

17. On January 11, 2016, another reclassification review was conducted. Staff spoke to Mr. Shafi who said he was fine and discussed going back to court in a few days. Due to the nature of his case staff determined his placement in Administrative Isolation would continue.

18. On January 18, 2016 a reclassification review was conducted. During this review staff contacted Mr. Shafi, who again said he was doing fine, but requested a "cell move" to a cell which had a view of the clock, so Mr. Shafi could conduct prayers at the proper times. An empty cell was available and Mr. Shafi was moved to accommodate this request. No other issues were noted and staff determined his status in Administrative Isolation would continue.

19. As of the writing of this Declaration, the last reclassification review was conducted on January 25, 2016. During this review Mr. Shafi had no questions and staff noted no issues. Due to the type of case and high profile coverage classification again determined Mr. Shafi will remain in Administrative Isolation for his safety.

20. Under ACSO policy, Administrative Isolation is defined as "the administrative separation of an inmate from the general population. Administrative Isolation inmates have been determined by classification to be prone to assault staff or other inmates, are likely to need protection from other inmates, are prone to escape, or continue to show complete disregard for established rules and regulations and are not currently in Disciplinary Isolation."

21. Administrative Isolation at the Jail is generally on housing floor 1, which, as of the writing of this Declaration, is where Mr. Shafi is currently housed. The construction of this facility is such that cells are essentially the same size and shape across all housing floors. In other words, "Administrative Isolation" cells on housing floor 1 are of

DECLARATION OF LIEUTENANT DAN BRODIE
15-CR-00582-WHO-1

3

similar size to the cells on "mainline" floors. An inmate housed in Administrative Isolation may be the single occupant of a cell sized for two (2) people. As of the writing of this Declaration, Mr. Shafi is housed in a cell that is designated for a single occupant no matter what floor it is on. An inmate occupying the same cell on the very "mainline" floor where Mr. Shafi was moved from would be housed by themselves, and the dimensions of these two (2) cells would be essentially the same. The cell, like all cells at this Jail, has a large floor to ceiling window providing natural light.

22. Per policy, inmates in Administrative Isolation are to be let out of their cells at for least one (1) hour per day, five days per week. This provides access to the larger "pod" area with a shower, television, and telephone, or, weather permitting, access to the yard area of the Jail.

23. Inmates in Administrative Isolation will be allowed to shave when they have pod time, and shower at least three (3) times per week, during their pod time, unless these procedures present an undue security hazard.

24. Per policy Administrative Isolation inmates will continue to have access to programs and services including, but not limited to: educational services, commissary, library services, social services, counseling services, religious guidance, and recreational programs, as long as access to these programs do not pose a threat to the health, safety, security of staff or to the facility. Administrative Isolation inmates also have access to both personal legal materials and available legal reference materials.

25. Correspondence and visiting privileges are also continued while in Administrative Isolation.

26. As of the writing of this Declaration I am not aware of any grievances, consistent with the Prison Litigation Reform Act ("PLRA"), filed by Mr. Shafi through the established grievance procedure at the Jail. To the extent Mr. Shafi wishes to file a grievance, a grievance form will be made available to him. Like all inmates at the Jail, Mr. Shafi was advised and provided information on ACSO's grievance process; a description of it is included in the Inmate Information Handbook Mr. Shafi was provided with during his intake into the facility.

27. Pursuant to the ACSO policy, two (2) deputies must accompany each Administrative Isolation inmate while moving throughout the housing unit.

28. The movement of inmates throughout the unit occurs regularly throughout day and nighttime hours. Inmates must be moved to and from court, yard time, pod time, medical and dental appointments, visits, attorney meetings, telephone usage, tutoring and other classes, etc.

29. The Administrative Isolation housing unit deputies, in addition to moving the inmates to and from appointments, are

DECLARATION OF LIEUTENANT DAN BRODIE
15-CR-00582-WHO-1

1     tasked with feeding the inmates, supervising work crews inside the facility, accompanying nurses as they pass out

2     medications (pill call), responding to grievances, completing police reports, numerous daily inspections, passing out

3     books, commissary, and other supplies to inmates, etc.

4    30. The outdoor recreation area (yard) at the Jail is on the roof. This design requires the Administrative Isolation

5     housing deputies to leave the floor in order to move inmates to and from the yard.

6    31. Inmates in Administrative Isolation may have access to their discovery, to review legal documents in preparation for

7     a trial or hearing. An inmate may have two (2) boxes of discovery material in their cell at any given time. If the

8     inmate has more than two (2) boxes of discovery material to review, an inmate may request, via an "Inmate Message

9     Request" to the Inmate Services Deputy, to "swap out" a box of discovery material for another box.

10    32. On January 19, 2016, I was made aware of an allegation that two (2) medical personnel visited with Mr. Shafi.

11     Upon further review, we believe Mr. Shafi was visited by members of Alameda County's Criminal Justice Mental

12     Health department ("CJMH"). A representative from CJMH will be submitting separate declaration to the Court

13     addressing these concerns.

14    33. The GEDDF is compliant with inspections and audits by the California Board of State and Community Corrections,

15     Department of Public Health, United States Marshal's Service, Grand Jury Inspections, and annual ACSO

16     inspections which includes a safety inspection. In addition, the GEDDF recently was audited under Federal "Prison

17     Rape Elimination Act (PREA)" standards, and expects to achieve compliance and certification in March 2016.

18    34. The policies and procedures in place at the GEDDF are in line with both Federal standards and California law.

19    35. It is the opinion of the Facility Commander, Captain Yesenia Sanchez, and myself that making any changes to the

20     Jail's rules or policies will disrupt the proper running of the facility. Any changes will cause other Administrative

21     Isolation inmates to lose yard time, pod time, timely access to the pro per telephone, be late to appointments,

22     interviews and visits, or cause other disruption in the housing floor. I also believe any change orders will cause an

23     undue burden on my staff, resulting in lapses in safety and security.

24    36. As of the writing of this Declaration, after discussion with the classification staff, a review of Mr. Shafi's

25     classification file, and the nature of his case, and in the interests of his safety and the safety and security of this

26     facility, Mr. Shafi will remain in Administrative Isolation.

27    37. The Sheriff's Office welcomes the Court to contact the Sheriff's Office if it has additional questions, or if the Court

28     wishes to tour the Jail.

DECLARATION OF LIEUTENANT DAN BRODIE
15-CR-00582-WHO-1

1     I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

2     Executed this 28th day of January, 2016.

3     /s/ _____

           **Dan Brodie**

4     **Lieutenant**

           **Alameda County Sheriff's Office**

DECLARATION OF LIEUTENANT DAN BRODIE
15-CR-00582-WHO-1