UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

```
United States of America,    )
                             )
         Plaintiff,          )
                             )   Case No. CR 15-582 WHO
  VS.                        )
                             )
Adam Shafi,                  )
                             )
         Defendant.          )
_____)
```

San Francisco, California

Thursday, February 25, 2016

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
        OFFICE OF THE UNITED STATES ATTORNEY
        Northern District of California
        450 Golden Gate Avenue
        San Francisco, California  94102
  BY: **JEFFREY L. SHIH**
      **S. WAQAR HASIB**
      **ASSISTANT UNITED STATES ATTORNEYS**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:      Kelly L. Shainline, CSR No. 13476, RPR
                           Court Reporter Pro Tem

```
1    APPEARANCES:   (CONTINUED)

2    For Defendant:
                              LAW OFFICE OF JOSHUA L. DRATEL
3                             29 Broadway - Suite 1412
                              New York, NY 10006
4                      BY:    JOSHUA L. DRATEL
                              ATTORNEY AT LAW
5

6                             LAW OFFICE OF ERIK LEVIN
                              2001 Stuart Street
7                             Berkeley, CA 94703
                       BY:    ERIK LEVIN
8                             ATTORNEY AT LAW
```

1   <u>Thursday - February 25, 2016</u>                               1:40 p.m.

2          **THE CLERK:**  Calling criminal matter 15-582, U.S.A.
3   versus Adam Shafi.
4       Counsel, please come forward and state your appearance.
5          **MR. SHIH:**  Good afternoon, Your Honor.
6       Jeff Shih and Waqar Hasib, H-A-S-I-B, for the United
7   States, Your Honor.
8          **MR. DRATEL:**  Good afternoon, Your Honor.
9       Joshua Dratel and Erik Levin for Mr. Shafi, who is coming
10  out now.
11         **THE COURT:**  Good afternoon.
12         **MR. SHIH:**  Also, Your Honor, just so the Court knows,
13  David Nefouse from Alameda County Counsel is also here.
14         **THE COURT:**  Mr. Nefouse, good afternoon.
15      Mr. Shafi, good afternoon.
16      All right.  So we're here on the motion for
17  reconsideration.  I've read all the papers submitted by the
18  parties and by the County Sheriff's Office regarding the motion
19  to reconsider the conditions of confinement of Mr. Shafi.
20      In order to grant a motion for reconsideration, I
21  essentially have to find that there are new facts or a change
22  in law in order to -- that I didn't consider when I initially
23  made my decision on January 14th.  I don't see that in the
24  papers submitted.
25      I'm going to allow argument, Mr. Dratel, in a moment.  But

1  I want you to focus on something that is new or something that
2  my summary, which I'm about to give, has missed.
3      Let me start by saying that I don't fault Mr. Shafi's
4  counsel in the least for bringing this matter up again.  And I
5  don't need to hear argument about that.  My concern, which
6  Mr. Shafi latched onto, is to avoid or minimize the mental
7  health impacts of administrative segregation for Mr. Shafi who
8  is essentially in protective custody until trial which could be
9  a long time off.
10     I understand that Mr. Shafi was detained without incident
11 in general population before his charges became public and that
12 he'd prefer to be in general population, but classification
13 decisions are left to the Sheriff, not the Court, until they
14 have some sort of a Constitutional dimension which they don't
15 in this case, at least at present.
16     I understand the hardship that's created by administrative
17 segregation, and it can be particularly hard for vulnerable
18 detainees.  But I have no reason to quarrel with the
19 administration segregation classification decision regarding
20 Mr. Shafi which is based on the concern for his safety.  The
21 threat to his health and welfare in general population, given
22 the publicity that this case has received, the statements he's
23 alleged to have made, and the crimes with which he's charged
24 seem real and the classification in administrative segregation
25 is not inappropriate.

1     Mr. Shafi had complained of two incidents prior to the
2 last hearing.  I've now been provided with a subset of the
3 material seized during the search on December 17.  It did
4 include seizure of what appears to be privileged material.
5 However, it's not in a form that would have been obvious to
6 someone searching the cells.  No one provided the remainder of
7 the seized material.  I only got a subset of it.  So I don't
8 know what it contains.  The material has been filed under seal.
9 Mr. Shih indicates that he read it once without taking notes.
10 What he would have read, what I read, is not damaging to
11 Mr. Shafi, or particularly surprising.
12     The information has now been segregated from the
13 prosecution.  The Alameda County Sheriff's Office says that
14 Mr. Shafi has access to his legal documents and that it will
15 respect his rights to the attorney-client privilege.
16     The purpose of the visit on December 31st, 2015, by the
17 criminal justice mental health professionals, the psychiatrist
18 and licensed clinical social worker, was to do a mental health
19 assessment.  In light of the circumstances and in line with my
20 concerns, that was an appropriate procedure to undertake, and
21 there's no record that it was conducted in a manner that's
22 inconsistent with the professional's duties.
23     In the interest of locating a secure detention facility
24 that would address Mr. Shafi's conditions of incarceration in a
25 way that would give him more than one hour, five times a week

1   out of his cell, I asked the Marshal Service to investigate
2   alternatives to the Glenn Dyer Detention Facility in the
3   San Francisco Bay Area.  I'm told that given the charges
4   against Mr. Shafi, other neighboring facilities would make the
5   same classification determination and that the time out of cell
6   in those facilities is more restrictive than Glenn Dyer.
7        I don't know whether there are other institutions further
8   away that would have different sorts of conditions of
9   confinement.  I'd be open to hearing about those.  But that
10  would put Mr. Shafi further away from his counsel and his
11  family, which pose other problems.
12       So for the reasons given at the last hearing, I'm not
13  inclined to release Mr. Shafi, no matter how stringent the
14  conditions of that release might be.
15       So with that, Mr. Dratel, is there -- tell me what I've
16  missed or what's new or different.
17          **MR. DRATEL:**  Well, what's new and different is that at
18  the prior appearance, the Court directed us to confer with the
19  County and get a sense of what was going to be the future.
20  Because the Court said it was not tenable for it to remain in
21  isolation -- to remain in isolation for what could be a very
22  extensive pretrial period.  We now have -- what's new is we
23  have confirmation of, for one, it's not going to change.  And
24  we also have the County essentially not even acknowledging that
25  it took materials from the cell that are privileged, that the

1   Court has recognized are privileged.

2       And by the way, they were in a form that were obvious
3   because they were with other legal materials including some of
4   the filings in this case.  They were all in a folder of similar
5   materials.  So they shouldn't be looking at that.  They
6   shouldn't be turning it over.  They have not made any
7   representation that would give any confidence that's not going
8   to happen again and again whenever they feel they want to do
9   it.

10      Another thing that's new is that we know that the reasons
11  of the classification is really without any basis in fact.
12  What I mean by that is there is no threat.  He was in --
13  there's no one who could be in a detention center for six
14  months and everyone not know what their case is about.  And he
15  was not in any danger.  And he's not in any danger.

16      And then also the classification is they put the nature of
17  the charges, too, and that's not permitted.  They can't do it
18  just based on the nature of the charges.  That's sentencing him
19  before the trial.  We put in the cases with respect to that.

20      So that's what's new is we have a confirmation of what the
21  Court said was not tenable, is not going to be tenable for an
22  extended, extended period of time.  And it impairs not just the
23  mental health, but also the ability to prepare the case because
24  we can't give him a level of confidence.  Based on the County's
25  response or nonresponse with a number of these issues, we can't

1  give him confidence that he can create confidential material
2  and not have it seized.  And we will get to the impact of the
3  other seizure in a different context because I do think that
4  does require additional exploration, but that's not for this
5  proceeding.
6       But I think that what's new is that we have a confirmation
7  of the Court's concern that we went back and they've dug their
8  heels in further.  We are without relief other than bail
9  which -- and I'm not going to reargue all that, but I'm just
10 saying we have put together a package that I don't think could
11 be surpassed in trying to --
12          **THE COURT:**  We did spend a lot of time --
13          **MR. DRATEL:**  I know.  I'm not going to spend a lot
14 of -- I'm just saying, though.  And, you know, with respect to
15 the conversations, we've put in more from those conversations
16 that we think gives the Court a different perspective on what
17 those conversations -- someone who's resigned to staying now,
18 even without all of the rest of it that's coming up, his
19 parents putting up their house, the community coming in four
20 times now filling the courtroom.  Four times they've adjusted
21 their schedule, they've come in, they've shown their support.
22          **THE COURT:**  It's not the community that I'm concerned
23 about.
24          **MR. DRATEL:**  But, Your Honor, there are sufficient
25 conditions that -- I mean, there are so many belt and

1   suspenders that we have put together for this.
2          **THE COURT:** I understand, but now you're rearguing.
3          **MR. DRATEL:** Yeah, I know, but also -- but I want
4   to -- but it has to be juxtaposed against what he's in custody
5   and what the Court said would not be tenable and it will remain
6   untenable for the extended period of time. We're looking at 60
7   days before we get certain materials in this case. And that's
8   all the phone calls. We've just gotten 11 phone calls. This
9   is a 24/7/365 wiretap, a FISA wiretap. And we don't know how
10  long it is, but I can't imagine that it started June 1 when
11  they already were interviewing him in August of 2014. So it
12  didn't start on June 1 of 2015.
13         We're going to get a significant volume of calls that we
14  are going to have to go through. We have already gotten a
15  significant volume of other materials that we have to go
16  through. We have to go through it with Mr. Shafi as well.
17  He's going to have to participate in this, and he's incapable
18  of doing it under the conditions that exist now.
19         And I think with everything that we've presented, that
20  we've put a case together that warrants that kind of review.
21         **THE COURT:** Mr. Shih.
22         **MR. SHIH:** Just two points. I think I've submitted a
23  written brief to the Court that addresses most arguments based
24  on what the Court has already indicated. I only have two
25  additional points to add.

1    The first one is based on the volume of calls, there are
2 several defendants in this district who are -- who have been
3 segregated in the past where there is a wiretap investigation
4 in place.  And my understanding is there are provisions at the
5 detention facility that allow counsel to prepare with their
6 client so that they can access those recordings.  So that's the
7 first point.
8    And then the second point is obviously the prosecution
9 team doesn't know what's in their legal material -- what is in
10 Mr. Shafi's legal materials that are at the jail.  Based on
11 what counsel just stated, there are -- it can't be that he has
12 no confidence, I think, in preparing for this case.  I think
13 that's a little bit of an exaggeration, especially since it
14 seems like based on what counsel just stated there are other
15 materials that haven't been seized.
16    My understanding is there were no other -- there were no
17 other alleged legal materials that were searched by the
18 detention facility.  And certainly the prosecution team and the
19 FBI has not received anything beyond what has been the subject
20 of, I think, the December 17th search.  So with that, the
21 government would submit on its written submission.
22         **THE COURT:**  Mr. Nefouse, is there anything that you
23 wanted to add?
24         **MR. NEFOUSE:**  If I may, Your Honor.
25         **THE COURT:**  Sure.

1    **MR. NEFOUSE:** David Nefouse, Office of the County
2    Counsel, County of Alameda, on behalf of the Alameda County
3    Sheriff's Office.
4         First, Your Honor, the County would like to thank the
5    Court for letting us be here today and let us brief this issue.
6    I'll try to be brief and address some of the points that
7    Mr. Dratel brought up in his argument just now.
8         I think first he talked about the mental health concern.
9    Your Honor, I think that what was stated in the declarations
10   submitted by Ms. Cairns on behalf of the County noting CJMH,
11   appointments can be scheduled and there are monthly checkups,
12   and we're happy to do more to the extent the defendant were to
13   request it or if the Court has concern.
14        **THE COURT:** Well, so I do have concern, and that is my
15   major concern.  And the reason that I don't think at the moment
16   there is a changed circumstance because not a lot of time has
17   passed.  But the longer that this lasts before we can get to
18   trial, the more concern I'm going to have.  So that is
19   something that is of great concern.  And it's also a concern to
20   me that we get this case ready for trial as quickly as we can.
21        **MR. NEFOUSE:** Yes, Your Honor, and we agree.  Counsel
22   for CJMH unfortunately could not be here today, nor could
23   Ms. Cairns, she's on vacation.  But I will be sure to relay
24   that message to them.
25        The second thing, Your Honor, that Mr. Dratel brought up

```
 1   was this preparation of case and the right to -- you know,
 2   right to counsel.  Just a few points on that.
 3        First, Your Honor, we checked our records, and since
 4   December the 16th, neither Mr. Dratel nor Mr. Levin have
 5   visited Mr. Shafi at the jail.  We just wanted to point that
 6   out to the Court because it seemed that that was an argument
 7   that was being presented that there's no right to counsel when
 8   in fact counsel has not made visits.
 9        I do understand that Scott Dudek who is investigator who's
10   working on behalf of the defense team has made visits.
11   However, that's not counsel himself.
12        You know, as to Mr. Dudek, I think we pointed this out in
13   the briefs, he is a prior employee of the Sheriff's Office, but
14   it's been 23 years since he worked in the jail.  So we would
15   just caution on any reliance on what he represents as to the
16   conditions and the operation of the jail.
17        Finally, Your Honor, I think that, again, and this is just
18   consistent with what we said in our briefing, ultimately this
19   was done for safety.  This is a high-profile case.  I know that
20   there was an article last week on NBC Bay Area News
21   highlighting this case.
22        And the jail population, it changes quite frequently,
23   Your Honor.  And the idea that this is just the same people
24   over and over again, it's not true.  You have people who come
25   in and out.  And we can't account for someone's passions as to
```

1   this issue, and that's the reason why this was done,
2   Your Honor.
3       So thank you.
4           **THE COURT:**  Mr. Dratel.
5           **MR. DRATEL:**  Well, this is part of the problem because
6   their records, who knows what their records are.  I've been
7   there.  I've been there twice.  They don't have --
8           **THE COURT:**  That wasn't an argument.
9           **MR. DRATEL:**  I know, but the point is there's no
10  accountability and there won't be any accountability and
11  there's never going to be accountability there.  And it's
12  just -- why should he have confidence when they won't
13  acknowledge what they did.  There's just a complete broad-based
14  denial.  And if it happens again, there will be another
15  broad-based denial.
16      And I understand the Court's position with respect to the
17  length of time, but I don't want to get there.  I don't want to
18  get to the point where he's so permanently damaged that he
19  can't testify and he can't participate.  We're trying to do
20  that now.
21          **THE COURT:**  I understand.  I understand.  But do you
22  have anything further?
23          **MR. DRATEL:**  No, Your Honor.
24          **THE COURT:**  All right.  So I'm going to deny the
25  motion to reconsider for the reasons that I stated at the

1   beginning of the hearing.  There aren't any new facts or
2   changes in the law that impact the basis for my earlier
3   decision.  In light of your past, Mr. Shafi's past attempts to
4   reach Syria, his strongly expressed desire to assist the
5   Al-Nusra Front, and the disturbing nature of some of his
6   tape-recorded conversations, I think detention is necessary.
7       I remain interested in Mr. Shafi's conditions of
8   confinement and mental health, as I am with anybody who's
9   incarcerated.  The Sheriff has a lot of inmates they need to
10  manage at Glenn Dyer, and nothing has been presented so far
11  that makes me think that any action on my part is appropriate
12  or necessary.
13      I encourage Mr. Shafi to utilize the grievance procedure
14  at Glenn Dyer if issues arise that can't be resolved informally
15  within the jail.  And I encourage County Counsel to be open to
16  investigating issues raised by and exploring alternatives with
17  counsel for Mr. Shafi as the need arises.
18      All right.  So we have a hearing --
19          **MR. DRATEL:**  March 17th.
20          **THE COURT:**  -- March 17th on status.
21          **MR. SHIH:**  That's correct, Your Honor.
22          **THE COURT:**  And so at that time, I'm going to hope
23  that you can present to me, Mr. Shih, a very detailed sense of
24  what's been provided, what hasn't been provided, how long it's
25  going to take for you to be ready so that I can then get some

1  sense from the defense of how quickly we can move this case to
2  trial.  And I am confident this isn't the last time that we're
3  going to have a conversation about conditions, and so I remain
4  attentive to that.  Okay.
5          **MR. DRATEL:**  Thank you, Your Honor.
6          **MR. SHIH:**  Thank you, Your Honor.
7          **THE COURT:**  All right.  Thank you.
8              (Proceedings adjourned at 1:59 p.m.)

**CERTIFICATE OF REPORTER**

     I, KELLY SHAINLINE, Court Reporter for the United States District Court, Northern District of California, hereby certify that the foregoing proceedings in CR 15-582 WHO, United States of America v. Adam Shafi, were reported by me, a shorthand reporter, and were thereafter transcribed under my direction into text; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

     The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_Kelly Shainline_

Kelly Shainline, Court Reporter

Wednesday, March 9, 2016