BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

JEFFREY SHIH (CABN 296945)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7168
     jeffrey.shih@usdoj.gov
     waqar.hasib@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 3:15-CR-582-WHO |
| | ) |
| Plaintiff, | ) UNITED STATES STATEMENT REGARDING |
| | ) DISCOVERY |
| v. | ) |
| | ) Date:   March 17, 2016 |
| ADAM SHAFI, | ) Time:  1:30 p.m. |
| | ) |
| Defendant. | ) |
| | ) |

     The United States files this Statement Regarding Discovery in advance of the status conference

scheduled for March 17, 2016, which will be the second status conference in this matter, in order to

inform the Court and the defendant of the status of discovery and to propose the next steps necessary for

the case to proceed to trial.

## I.    STATUS OF DISCOVERY

     The United States has produced a significant volume of discovery as acknowledged by the

defendant at the last Court hearing.[1]  This discovery has been produced on a rolling basis, thus far spans

---

[1] On February 25, 2016, defense counsel stated, "We have already gotten a significant volume of other materials that we have to go through.  We have to go through it with Mr. Shafi as well."  Docket No. 67 (Transcript of 2/25/2016 Hearing), at 9.

US STATEMENT RE DISCOVERY

the Bates ranges of AS-1 through 2025 and PROTECTED-1 through 61,[2] and has been made pursuant to

Federal Rule of Criminal Procedure 16, <u>Brady</u>, and <u>Giglio</u>.[3]  For example, in addition to the eleven

recordings of the defendant submitted to the Court, the United States has produced the following items

to the defendant:

- Agent reports (e.g., FBI 302s) of interviews of the defendant, his associates (e.g., A.N.), individuals who provided information about the defendant to the FBI (e.g., his father, the individual discussed in the Complaint who spoke with A.N.'s brother), and witnesses of his attempt to board his one-way flight to Turkey on June 30, 2015 (e.g., Turkish Airlines ticket counter agent, Turkish Airlines passenger).

- Agent reports (e.g., FBI 302s) of law enforcement database checks, trash covers, and physical spot checks of the defendant, and the arrest of defendant on July 3, 2015.

- Applications, supporting affidavits, and items seized pursuant to the search warrants executed for the defendant's email account, cellular phone service provider, cellular phone, computer, vehicle, and place of residence, including making the physical evidence available for viewing and inspection.

- Travel records of the defendant (e.g., boarding pass) from his prior trip to Turkey in August 2014, as well as travel records of his associates A.N. and S.K. for the same trip.

- Subscriber and non-content records of the email accounts used by the defendant and one of his associates to coordinate the purchase of the defendant's airline ticket for his flight from Egypt to Turkey in August 2014.

- Subscriber and non-content call-detail records of the telephones used by the defendant and his associates A.N. and S.K.

- Financial records of the defendant and his associates A.N. and S.K.

- Items seized pursuant to search warrants executed at email service provider, cellular phone service provider, and locations of associates A.N. and S.K., including making the physical evidence available for viewing and inspection.

---

[2] Several individual Bates numbers correspond not just to a single document page, but to a disk containing multiple files of data.  For example, the disk Bates stamped AS-541 that was submitted to the Court for purposes of detention contains nine recordings of the defendant, two of which are over an hour in length.  Docket No. 38-2 (Exhibit 2 to US Opp'n to Def.'s Appeal of Detention Order).

[3] The manner in which the United States has produced discovery in this case entails the voluntary production of most witness statements well in advance of the time required by the Jencks Act, which statutorily specifies the time of production after the witness has finished direct examination at trial.  18 U.S.C. § 3500.  In voluntarily producing such statements well in advance, the United States does not waive its rights to retain certain Jencks Act statements on a limited case-by-case basis in order to produce those statements on a schedule closer to trial.

1    The date range of the discovery produced has included investigative activities from the defendant's first

2    trip to Turkey in August 2014 through and after the defendant's arrest.  At the defendant's request, the

3    United States has delivered one set of such discovery to defense counsel in New York and another set of

4    discovery to defense counsel here.  Undersigned counsel has also voluntarily provided to the defendant

5    the United States discovery index with the rolling productions.  The United States expects to produce

6    additional agent reports of interviews, surveillance reports, chain of custody records, and documents

7    obtained by subpoena at and shortly after the hearing on March 17, 2016, though much of such

8    discovery may appear to focus on the defendant's associates rather than the defendant himself.[4]

9         The significant category of discovery that remains, and which made the nature of the prosecution

10   "complex" under the Speedy Trial Act in this Court's prior order excluding time (Docket No. 43),[5] is the

11   production of Foreign Intelligence Surveillance Act ("FISA") information, for which the United States

12   noticed its intent to use in this case (Docket No. 19).  As represented to the Court at the initial status

13   conference, undersigned counsel has been actively engaged in order to obtain the statutorily required

14   authority from the Assistant Attorney General of the Department of Justice National Security Division

15   and from executives at FBI Headquarters.  Based on these efforts, which have continued and will

16   continue regardless of the defendant's Notice of Appeal to the Ninth Circuit, undersigned counsel

17   estimates obtaining such authority and producing FISA information on or about **April 25, 2016**.[6]

18   **II.    CLASSIFIED INFORMATION PROCEDURES ACT ("CIPA")**

19        The United States anticipates that a subset of the FISA information will remain classified and

20   will thus be produced pursuant to CIPA, 18 U.S.C. App. 3 §§ 1-16.  CIPA establishes the procedures in

---

21        [4] Additional items discovered will be timely produced as required by Fed. R. Crim. P. 16(c).

22        [5] As previously indicated in its opposition to the defendant's bail motion, defense counsel knew
     and understood that this process would be burdensome, complex, and lengthy based on the nature and
23   circumstances of the terrorism charge.  In an effort to resolve the case short of an Indictment and to
     allow for the maximum possible benefits, the defendant thus consented to the United States not starting
24   its full discovery process pre-Indictment.

          [6] This estimate is consistent with the information provided to the defendant, and in turn relayed
25   by the defendant to the Court at the last hearing on February 25, 2016 (i.e., approximately 60 days from
     that hearing).

1   the handling of classified information for discovery, admissibility, and use in criminal cases.  United

2   States v. Sedaghaty, 728 F.3d 885, 903-904 (9th Cir. 2013).  While CIPA does not expand or restrict

3   established substantive discovery or admissibility principles, CIPA does govern the procedures that must

4   be used with such classified information.  Id.

5          Of pertinence at this stage of the case, CIPA § 2 authorizes the Court, upon motion by any party

6   or at its own discretion, to hold a pretrial conference to establish (1) the timing of requests for discovery

7   by the defense, (2) the provision of the required written pretrial notice to the United States of the

8   defendant's intent to disclose classified information pursuant to CIPA § 5, and (3) the initiation of

9   hearings concerning the relevance, admissibility, and use of classified information pursuant to CIPA § 6.

10  18 U.S.C. App. 3 § 2.  CIPA § 2 also authorizes the Court at this pretrial conference to "consider any

11  matters which relate to classified information or which may promote a fair and expeditious trial," id., but

12  as emphasized by the Senate Judiciary Committee in CIPA's enactment, "no substantive issues

13  concerning the use of classified information are to be decided in" such a CIPA § 2 pretrial conference as

14  substantive issues are reserved for CIPA § 6 hearings.  S. Rep. No. 96-823, at 5-6, 1980 U.S.C.C.A.N.

15  4294, 4298-99 (June 18, 1980).

16         In this case, the United States respectfully proposes that the Court schedule a CIPA § 2 pretrial

17  conference a few weeks after April 25, 2016.  This would enable the United States to discuss the details

18  and scope of the FISA information, which the United States is not currently authorized to do, with the

19  Court, and would permit the defendant through his defense counsel a reasonable period of time to

20  review the scope of the FISA information before the pretrial conference.

21         The United States also suggests a bifurcated in camera CIPA § 2 conference.  In the first part of

22  the conference, the United States could provide details of the classified information implicated in this

23  prosecution in an ex parte, in camera classified conversation.  Accord Sedaghaty, 728 F.3d at 908

24  (observing that ex parte and in camera proceedings in cases involving classified information is well-

25

1    established).  In the second part of the conference, all counsel could participate in an <u>in camera</u>

2    conference to discuss the discovery and motion plan more generally.

3           Shortly after the status conference on March 17, 2016, and well in advance of the proposed CIPA

4    § 2 conference, the United States would file motions with the Court in order (a) to secure a protective

5    order to protect against the disclosure of any classified information disclosed by the United States

6    pursuant to CIPA § 3,[7] which would enable counsel with the appropriate security clearance to review

7    such material,[8] and (b) if necessary, to designate a Classified Information Security Officer ("CISO") to

8    perform the duties and responsibilities prescribed for CISOs in the Security Procedures established by

9    the Chief Justice of the United States pursuant to CIPA § 9.[9]

10          Should no other issues arise, the United States currently anticipates that it would file its CIPA

11   motions approximately four weeks after the CIPA § 2 pretrial conference.  The resolution of such

12   motions should move the case from the discovery stage, to substantive motions, and to trial.

13          While respectfully submitting this statement in advance of the status conference scheduled for

14   March 17, 2016, the United States remains open to discussion with the Court and the defendant.

15

16                                             Respectfully submitted,

17                                             BRIAN J. STRETCH
                                               Acting United States Attorney

18

19   DATED: March 14,  2016                     /s/ Jeffrey Shih
                                               JEFFREY SHIH
20                                             S. WAQAR HASIB
                                               Assistant United States Attorneys

21

22   _____

          [7] Such a CIPA § 3 protective order would apply to classified information and thus be distinct
23   from the existing protective order (Docket No. 63), which applies to unclassified information.

          [8] One of the defendant's counsel has represented to the undersigned that he has obtained the
24   necessary clearance to review classified discovery previously in other criminal cases.
          [9] Such duties include, for example, assisting the Court and its personnel in handling any motions
25   and pleadings and implementing any orders relating to the CIPA proceedings.