STEVEN G. KALAR
Federal Public Defender
Northern District of California
GALIA AMRAM
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Galia_Amram@fd.org

Counsel for Defendant SHAFI

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ADAM SHAFI, <br><br> Defendant. | **Case No.:** CR 15–582 WHO <br><br> **DEFENDANT SHAFI'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> **Court:** Courtroom 2, 17th Floor <br><br> **Hearing Date:** April 13, 2017 <br><br> **Hearing Time:** 1:30 p.m. |

# TABLE OF CONTENTS

FACTS ........................................................................................................................................ 3
I.   The History of 18 U.S.C. § 2339B ................................................................................... 3
II.  The Shafi Case ................................................................................................................. 5
ARGUMENT ............................................................................................................................. 6
I.   The Indictment Should Be Dismissed For Failure To State An Essential Element Of The Offense Of Attempted Material Support. ......................................................................... 6
  A.   Without The Direction Or Control Element, The Statute Would Be Unconstitutional. ...... 7
  B.   The Wording of § 2339b(h) Indicates That It Is An Element. .......................................... 10
  C.   The Government Is In A Much Better Position To Prove "Direction or Control" Than Is The Defense. ...................................................................................................................... 11
II.  Alternatively, If It Is An Affirmative Defense, The Court Should Find That The Government Has The Burden Of Proof As To The "Direction Or Control" Provision ............. 13
CONCLUSION ........................................................................................................................ 14


# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Free Speech Coal.*,
   122 S. Ct. 1389 (2002) ............................................................................................... 6-7, 9, 12

*Conn. Nat'l Bank v. Germain*,
   503 U.S. 249 (1992) ............................................................................................................ 10

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ........................................................................................................ *passim*

*Humanitarian Law Project v. Gonzales*,
   380 F. Supp. 2d 1134 (C.D. Cal. 2005) .................................................................................. 4

*Humanitarian Law Project v. Reno*,
   9 F. Supp. 2d 1205 (C.D. Cal. 1998) ...................................................................................... 3

*Humanitarian Law Project v. Reno*,
   205 F.3d 1130 (9th Cir. 2000) ................................................................................... 7-8, 10, 13

*Humanitarian Law Project v. Reno*,
   No. CASE NO.: CV 98-1971 ABC (BQRx), 2001 WL 36105333 (C.D. Cal. Oct. 2, 2001) .. 4

*Humanitarian Law Project v. U.S. DOJ*,
   352 F.3d 382 (9th Cir. 2003) .............................................................................................. 2, 4

*L.A. Cty. v. Humphries*,
   562 U.S. 29 (2010) ................................................................................................................. 3

*Russell v. United States*,
   369 U.S. 749 (1962) ............................................................................................................ 14

*United States v. Cook*,
   84 U.S. (17 Wall.) 168 (1872) ............................................................................................ 6, 7

*United States v. Du Bo*,
   186 F.3d 1177 (9th Cir. 1999) ........................................................................................... 6, 14

*United States v. Freter*,
   31 F.3d 783 (9th Cir. 1994) ....................................................................................... 7, 11, 13

*United States v. Hui Hsiung*,
   778 F.3d 738 (9th Cir.) ................................................................................................... 10, 11

*United States v. Hui Hsiung*,
   778 F.3d 738 (2014) .............................................................................................................. 7

*United States v. Kloess*,
   251 F.3d 941 (11th Cir. 2001) ............................................................................................. 10

*United States v. Lazarenko*,
   564 F.3d 1026 (9th Cir. 2009) ............................................................................................... 6

*United States v. Lonich*,
   2016 WL 324039 (N.D. Cal. Jan. 27, 2016) ........................................................................ 11

*United States v. McArthur*,
   108 F.3d 1350 (11th Cir. 1997) ................................................................................... 7, 11-12

*United States v. Reza-Ramos*,
   816 F.3d 1110 (9th Cir. 2016) ............................................................................................ 11

*Walker v. Endell*,
   850 F.2d 470 (9th Cir. 1987) .............................................................................................. 13

**Statutes**

18 U.S.C. § 2339A ........................................................................................................................ 3

18 U.S.C. § 2339B ................................................................................................... *passim*

**NOTICE OF MOTION TO DISMISS**

PLEASE TAKE NOTICE that on April 13, 2017 in the courtroom of the Honorable William H. Orrick, Defendant Adam Shafi will move this Court to dismiss the December 15, 2015 Indictment against him.  This motion is based on the Fifth and Sixth Amendments of the United States Constitution, all relevant case law and statutory authority, the following memorandum of points and authorities, and such argument as the Court will entertain at the Motion hearing.

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## INTRODUCTION

In 2003, the Ninth Circuit declared unconstitutional 18 U.S.C. § 2339B, the material support statute under which Adam Shafi is charged. Specifically, the Ninth Circuit found that the term "personnel" was impermissibly overbroad, and thus void for vagueness under the First and Fifth Amendments. *Humanitarian Law Project v. U.S. Department of Justice,* 352 F.3d 382, 385 (9th Cir. 2003). In response, Congress amended the statute and added subsection (h). Subsection (h) states:

> No person may be prosecuted under [§ 2339B] in connection with the term 'personnel' unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control. § 2339B(h).

In 2010, the Supreme Court reversed the Ninth Circuit's decision because Congress' addition of subsection (h) rendered the statute constitutional. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35-36 (2010) ("HLP") (finding 18 U.S.C. § 2339B constitutional because Congress, in response to a First Amendment challenge, amended the statute by adding subsection (h) to "avoid[] any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups").

Mr. Shafi is charged in a one-count Indictment with violating 18 U.S.C. § 2339B by attempting to provide material support to al-Nusra Front (hereinafter, "al-Nusra"), a designated foreign terrorist organization (hereinafter "FTO").[1] The Indictment specifies that the form of material support Mr. Shafi attempted to provide was "personnel," that is, he tried to provide himself as personnel to al-Nusra. But nowhere in the Indictment does the Government allege

---

[1] Mr. Shafi's inclusion of facts contained in the Indictment should not be considered an admission of their veracity.

DEF.'S NOTICE AND MOT. TO DISMISS
*SHAFI*, CR 15–582 WHO

that Mr. Shafi attempted to provide himself to work "under [al-Nusra's] direction or control," as required by the post-2003 statute. *See* 18 U.S.C. § 2339B(h).

Specifically, the indictment here contains no language that suggests the grand jury considered whether Mr. Shafi "work[ed] under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization," or whether Mr. Shafi acted "independently of the foreign terrorist organization to advance its goals or objectives." 18 U.S.C. § 2339B(h). From the charging language itself, the grand jury could have indicted Mr. Shafi for a federal crime on the mistaken belief that it was irrelevant whether Mr. Shafi had any coordination with al-Nusra. Such a construction would not constitute a federal crime, and Mr. Shafi could not be held to answer in federal court under such a construction. *See HLP*, 562 U.S. at 36 ("We also find it significant that Congress has been conscious of its own responsibility to consider how its actions may implicate constitutional concerns … most importantly, Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups."). As a result, this Court must dismiss the Indictment

**FACTS**

**I.    The History of 18 U.S.C. § 2339B**

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. 104–132, 110 Stat. 1214–1319 (1996), to address concerns regarding international terrorism. As part of that bill, Congress created 18 U.S.C. § 2339B to criminalize providing material support to a FTO.[2] Approximately two years later, in 1998, a number of U.S. citizens and non-profit groups filed a constitutional challenge to Section 2339B in the Central District

---

[2] 18 U.S.C. § 2339B initially provided that: "Whoever, within the United States or subject to the jurisdiction of the United States, knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 10 years, or both." *See Humanitarian Law Project v. Reno*, 9 F.Supp.2d 1205, 1207 (C.D.Cal.1998). And 18 U.S.C. § 2339A(b) (2000 ed.) defined "material support or resources" to mean "currency or other financial securities, financial services, lodging, training, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials."

of California. The plaintiffs claimed that the material support statute violated their freedom of speech and freedom of association under the First Amendment, and that the statute was unconstitutionally vague. As to the vagueness challenge, the plaintiffs claimed that the terms "personnel" and "training" were vague because it is "easy to imagine protected expression that falls within the bounds of those terms." *HLP*, 561 U.S. at 11. The District Court granted the plaintiff's motion for a preliminary injunction in part and the Ninth Circuit affirmed. *Id.*

The case then returned to the District Court where the parties moved for summary judgment on the merits. *Id.* The District Court entered a permanent injunction against applying to plaintiffs the bans on "personnel" and "training" support. *See* No. CV–98–1971 ABC (BQRx), 2001 WL 36105333 (C.D. Cal., Oct. 2, 2001). The Court of Appeals initially affirmed, 352 F.3d 382 (9th Cir. 2003), but then granted rehearing en banc. *See* 382 F.3d 1154, 1155 (2004). The en banc court heard reargument on December 14, 2004. *See* 380 F.Supp.2d 1134, 1138 (C.D.Cal.2005). Three days later, Congress amended § 2339B and the definition of "material support or resources." Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA), § 6603, 118 Stat. 3762–3764.

IRTPA limited the scope of the term "personnel" by adding section (h), which provides:

> No person may be prosecuted under [§ 2339B] in connection with the term 'personnel' unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control. § 2339B(h).

In light of IRTPA, the en banc court vacated in part the panel's 2003 judgment and remanded to the District Court for further proceedings. *HLP*, 561 U.S. at 13. The District Court still granted partial relief to the plaintiffs on vagueness grounds. The Court of Appeals affirmed again. The parties filed cross-petitions for certiorari that the Supreme Court granted. *Id.*

In 2010, the Supreme Court reversed the Ninth Circuit and upheld the constitutionality of the Section 2339B. As to the plaintiff's challenge to the term personnel, the Supreme Court

was explicitly clear that Section 2339B was constitutional **because of the addition of subsection (h) in the IRTPA amendment:**

> As for "personnel," Congress enacted a limiting definition in IRTPA that answers plaintiffs' vagueness concerns. Providing material support that constitutes "personnel" is defined as knowingly providing a person "to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization." § 2339B(h). The statute makes clear that "personnel" does not cover independent advocacy: "Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control."

*Id.* at 23.

The Supreme Court found "it significant that Congress has been conscious of its own responsibility to consider how its actions may implicate constitutional concerns" by amending the statute in response to plaintiff's litigation. *Id.* at 35; *see also id.* at 36 ("in response to the lower courts' holdings in this litigation, Congress added clarity to the statute by providing narrowing definitions of the terms 'training,' 'personnel,' and 'expert advice or assistance,' as well as an explanation of the knowledge required to violate § 2339B.") The Court also noted that Congress' action narrowed the scope of conduct covered by the statute. *Id.* at 35-36. ("Congress [] took care to add narrowing definitions to the material-support statute over time. These definitions increased the clarity of the statute's terms.")

## II. The Shafi Case

Mr. Shafi is charged in a one-count Indictment filed December 15, 2015. (Docket No. 15). The indictment charges Mr. Shafi with "knowingly attempt[ing] to provide material support and resources, specifically, personnel, to a FTO, namely, al-Nusra Front, knowing that it was a designated FTO and that the organization had engaged and was engaging in terrorist activity and terrorism in violation of Title 18, United States Code, Section 2339B(a)(1)." *Id*. at ¶ 2. Despite charging Mr. Shafi under the "personnel" prong of material support, the Indictment does not allege that Mr. Shafi "work[ed or attempted to work] under [al-Nusra's] direction or control" or was attempting "to organize, manage, supervise, or otherwise direct the operation of [al-Nusra]," as required by 18 U.S.C. § 2339B(h) and *HLP*, 561 U.S. at 35-36.

# ARGUMENT

## I. The Indictment Should Be Dismissed For Failure To State An Essential Element Of The Offense Of Attempted Material Support.

Under Rule 7 of the Federal Rules of Criminal Procedure, the Indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). An Indictment is only sufficient if it "(1) contains the elements of the offense charged and fairly informs a defendant of the charge against him which he must defend; and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (internal quotation marks omitted). The Indictment must include every element of the charged offense, including implied elements, whether or not they are present in the statute itself. *United States v. Du Bo*, 186 F. 3d 1177, 1179 (9th Cir. 1999).

The "direction or control" provision contained in Section 2339B(h) is an essential element of the material support offense when the Government puts forward a "personnel" theory of guilt for three reasons. *See* 18 U.S.C. § 2339B(h) ("No person may be prosecuted under [the provision of personnel] section . . . unless that person knowingly . . . attempted to provide . . . 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control"). First, the provision is an element because it is "material" to the offense: without the provision the statute would violate the First Amendment. *See United States v. Cook*, 84 U.S. 168, 176 (1872) (If a clause of a statute "is not so incorporated with the clause defining the offence as to become a material part of the definition of the offence, then it is a matter of defence"); *HLP*, 561 U.S. at 35-36 (finding that § 2339B is narrowly drawn and thus satisfies strict scrutiny because "Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups"). Affirmative defenses are disfavored as a way to save statutes that would otherwise be unconstitutional under the First Amendment. *See Ashcroft v. Free Speech Coalition*, 122 S.Ct. 1389, 1404 (2002) ("The Government raises serious constitutional difficulties by seeking to impose on the defendant the burden of proving his speech is not

unlawful"). Second, the provision is an element because the statutory language reads as an element. *See United States v. Hui Hsiung*, 778 F.3d 738, 756-57 (2014), cert. denied, 135 S. Ct. 2837 (2015) (finding that the plain language of the statute indicated an element rather than an affirmative defense). Third, it is an element because the Government can much more easily prove "direction or control" than the defendant can disprove it. *See United States v. Freter*, 31 F.3d 783, 788 (9th Cir. 1994) (finding a provision an affirmative defense because it was "far easier" for the defense to gain access to relevant evidence).

### A. Without The Direction Or Control Element, The Statute Would Be Unconstitutional.

The Supreme Court has held that a provision of a statute should be considered an element, rather than an affirmative defense, when the provision "constitute[s] a material part of the description of the acts, omission, or other ingredients which constitute the offence." *United States v. Cook*, 84 U.S. 168, 176 (1872). A provision is material when its omission would "do[] violence to the definition of the offense," or when it "embodies the culpability of the offense." *United States v. MacArthur*, 108 F.3d 1350, 1353, 1354 (1997). The Supreme Court has demonstrated that the "direction or control" provision is material and embodies the culpability of the offense, as without the provision, the statute would be unconstitutional. *HLP*, 561 U.S. at 35-36 (2010) (upholding the constitutionality of § 2339B in spite of First Amendment challenge because "Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups"). As explained above, in 2000, the Ninth Circuit found the term "personnel," as used in § 2339B, unconstitutionally vague. *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1137 (9th Cir. 2000) ("It is easy to see how someone could be unsure about what AEDPA prohibits with the use of the term "personnel," as it blurs the line between protected expression and unprotected conduct . . . Someone who advocates the cause of [a foreign terrorist organization] could be seen as supplying them with personnel . . . But advocacy is pure speech protected by the First Amendment."). In response, Congress amended § 2339B in 2004 to include the following language:

"(h) Provision of personnel.—No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction or control."

18 U.S.C. § 2339B(h); IRTPA § 6603, 118 Stat. 3762-64, Material Aid for Terrorists: Hearing on S. 2679 Before Senate Judiciary Committee, 108th Cong. 4 (2004) (statement of Daniel J. Bryant, Assistant Attorney General) (section § 2339B(h) "would address the [Ninth Circuit's] concern by providing that a person may be prosecuted under 2339B for providing 'personnel' to a designated foreign terrorist organization only if that person provided one or more individuals to work under the organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization").

The added "direction or control" language led the Supreme Court to find in 2010 in *HLP* that the term "personnel" was no longer vague. 561 U.S. 1, 23 ("As for 'personnel,' Congress enacted a limiting definition in IRTPA that answers plaintiffs' vagueness concerns"). The Court in *HLP* repeatedly cited the "direction or control" provision, which it interpreted to require "coordination" between the group and the charged individual, as saving the statute from being struck down under the First Amendment. *See, e.g., id*. at 26, 31, 36 ("the statute is carefully drawn to cover only a narrow category of speech to, under the direction of, or in coordination with foreign groups"; "[t]he statute reaches only material support coordinated with or under the direction of a designated foreign terrorist organization"; "most importantly, Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups").

The Supreme Court's repeated reference to the importance of the "direction or control" provision in *HLP* demonstrates that this provision is material to the offense. *See* 561 U.S. at 36 ("most importantly, Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups"). Its omission would "do[] violence to the definition of the offense," as without it, the statute would

almost certainly violate the First Amendment by criminalizing protected association and independent advocacy. *See id*. at 35-36 (applying strict scrutiny but finding that the statute satisfies strict scrutiny because it addresses the compelling interest of combatting terrorism and is narrowly drawn in that "most importantly, Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups").

Furthermore, affirmative defenses are disfavored in the First Amendment context. In *Ashcroft*, for example, the Court found that the Child Pornography Prevention Act of 1996 (hereinafter, "CPPA") violated the First Amendment because it prohibited not only child pornography made using real children, but also computer-generated child pornography. 122 S.Ct. 1389, 1396, 1406 (2002). The statute included an affirmative defense in a subsection that allowed a defendant to avoid conviction by showing that the materials were produced using only adults. *Id*. at 1404. Allowing an affirmative defense to do the work of protecting the First Amendment, the Court reasoned, was troublesome:

> The Government raises serious constitutional difficulties by seeking to impose on the defendant the burden of proving his speech is not unlawful. An affirmative defense applies only after prosecution has begun, and the speaker himself must prove, on pain of a felony conviction, that his conduct falls within the affirmative defense.

*Id.*

A statute that infringes on the First Amendment cannot be saved by an affirmative defense, but only by an element that properly limits the statute's application, as the Court required in the *Ashcroft* case. *See id.* Here, therefore, the "direction or control" provision of Section 2339B(h) must be an element, rather than an affirmative defense, since without it the statute would violate the First Amendment. *See HLP*, 561 U.S. at 35-36 (applying strict scrutiny but finding that the statute satisfies strict scrutiny because it addresses the compelling interest of combatting terrorism and is narrowly drawn in that "most importantly, Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups"). *Compare Reno*, 205 F.3d at 1137 (finding "personnel" provision unconstitutionally vague without the "direction or control"

1   provision), *with HLP*, 561 U.S. at 21, 31, 36 (finding "personnel" constitutional based on
2   newly added "direction or control" provision).

3       **B. The Wording of § 2339b(h) Indicates That It Is An Element.**

4       The Ninth Circuit has provided additional signposts for the lower courts to use in
5   deciding whether a provision is an element or an affirmative defense, including the wording of
6   the provision itself.  *See Hui Hsiung*, 778 F.3d at 756-57 (finding that the plain language of the
7   statute indicated an element rather than an affirmative defense); *see also United States v.*
8   *Kloess*, 251 F.3d 941, 944 (11th Cir. 2001) (courts begin with "language and structure of the
9   statute itself" to determine whether a provision is part of the general statutory offense);
10  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 ("We have stated time and again that
11  courts must presume that a legislature says in a statute what it means and means in a statute
12  what it says there").  In *Hui Hsiung*, the Ninth Circuit analyzed whether the domestic effects
13  exception under the Foreign Trade Antitrust Improvements Act (hereinafter, "FTAIA") was an
14  element of the Sherman Antitrust Act violation that needed to be in the indictment, where the
15  Government proceeded on a domestic effects theory of prosecution.  778 F.3d at 756.  There,
16  the court rejected the Government's argument that the FTAIA was an affirmative defense
17  because that "interpretation [was] at odds with the plain language of the statute, which
18  establishe[d] that when a case involves nonimport trade with foreign nations, the Sherman Act
19  does not apply unless the FTAIA domestic effects exception applies."  *Id.*  The statute itself
20  read: "this title shall not apply to conduct involving trade or commerce (other than import trade
21  or import commerce) with foreign nations **unless** (1) such conduct has a direct, substantial, and
22  reasonably foreseeable effect."  15 U.S.C. § 6a (emphasis added).

23      Similarly, here, the plain language of § 2339B(h) indicates that the "direction or control"
24  provision is an element of the material support offense when the Government proceeds on a
25  "personnel" theory of prosecution.  Section 2339B(h) does not begin with the words "except
26  when" or "provided"— words that would tend to indicate an affirmative defense — but rather
27  with the words "no person **may be prosecuted** under this section in connection with the term
28  'personnel' **unless**."  *See* 18 U.S.C. § 2339B(h) (emphasis added).  This is almost identical

language to the *Hei Hsiung* language that the Ninth Circuit found indicated an element, rather than an affirmative defense. *Compare* 778 F.3d at 756 ("does not apply unless"), *with*, 18 U.S.C. § 2339B(h) ("no person may be prosecuted . . . unless").

*Hei Hsiung* also demonstrates that statutes sometimes have elements that only apply when the Government chooses to proceed on a particular theory of prosecution. *See* 778 F.3d at 756 (the FTAIA element only applied because the Government proceeded on a domestic effects theory); *see also United States v. Lonich*, 2016 WL 324039, *7-8 (N.D. Cal. 2016) (finding that duty to disclose is an element of bank or wire fraud where the prosecution proceeds on an omissions theory). Similarly, under the material support statute, the "direction or control" provision only applies when the prosecution has proceeded under a "personnel" theory, as it has chosen to do in Mr. Shafi's case. *See* § 2339B(h).

**C. The Government Is In A Much Better Position To Prove "Direction or Control" Than Is The Defense.**

The other signpost that the Ninth Circuit has provided for determining whether a provision is an element or an affirmative defense is which party would have an easier time shouldering the burden of proof. *See Freter*, 31 F.3d at 788 (finding a provision an affirmative defense because it was "far easier" for the defense to gain access to relevant evidence); *United States v. Reza-Ramos*, 816 F.3d 1110, 1120 (9th Cir. 2016) (putting the burden on the defendant to show that he or she is a member of a federally recognized Indian tribe makes sense because it "is far more manageable for the defendant to shoulder the burden" than for the Government "to produce evidence that [the defendant] is not a member of any one of the hundreds of such tribes"); *United States v. McArthur*, 108 F.3d 1350 (11th Cir. 1997) (assessing "whether the defendant or the government is better situated to adduce evidence tending to prove or disprove the applicability of the exception"); *see also Ashcroft*, 122 S.Ct. at 255 (imposing the burden of proof on the defendant "raises serious constitutional difficulties" where the defendant "may have no way of establishing" the defense). The Government is in a much better position than is Mr. Shafi to shoulder the burden of proof here. If the Government bears the burden of proof, it would need to show that Mr. Shafi was working under the

1   direction or control of al-Nusra, a fact it would presumably be able to prove, if it were true,
2   with information gained from the government's extensive surveillance of Mr. Shafi's
3   movement and communications, as well as his friends, family and contacts.
4       The Court has some sense of the scope of the government's investigation, but to briefly
5   recap, it includes: ████████████████████████████████████████
6   ████████████████████████████████████████████████████████████
7   ████████████████████████████████████████████████████
8   ████████████████████████████████████████████████████████████
9   ████████████████████████████████████████████████████████
10  ████████████████████████████████████████████████████████████
11  ████████████████████████████████████████████████████████
12  ██████████████████████████████████████████████████
13  ██████    Declaration of Galia Amram in Support of Motion to Dismiss, ¶ 2.  It also seems
14  reasonable to assume that the NSA's extensive surveillance capabilities were utilized. *See*
15  Charlie Savage, *NSA Gets More Latitude to Share Intercepted Communications*, N.Y. Times,
16  Jan. 12, 2017.
17      On the other hand, if Mr. Shafi were to have the burden of proof, he would have to prove
18  a negative: that he did not have contact with anyone in al-Nusra.  As Bertrand Russell
19  explained with his famous Teapot analogy, this is not possible.  Russell, Bertrand, "Is There a
20  God? [1952], The Collected Papers of Bertrand Russell, Vol. 11: Last Philosophical
21  Testament, 1943–68. (Routledge) at pp. 547–548 (illustrating the impossibility of proving a
22  negative by saying that, if he were to assert without proof that a teapot orbits the Sun
23  somewhere between Earth and Mars, he could not expect to be believed just because he could
24  not be proven wrong).  Much like Russell's teapot, the government could simply assert at trial
25  that somewhere there is evidence of Mr. Shafi's coordination with al-Nursa and the defense
26  cannot prove otherwise.[3]  Since placing the burden on the defense would foist upon it a

27
28  [3] It seems the only way the defense could defeat this argument would be for the defense to call an al-Nusra leader as a witness to testify that Mr. Shafi never worked for or with al-Nusra. This too is impossible as even assuming that defense counsel could find such a person (without

metaphysical impossibility (in addition to the enormous investigative advantage the government has), it is "far easier" for the Government to prove the "direction or control" requirement, which further indicates that it is an element of the offense that the Government needed to set out in the Indictment. *See Freter*, 31 F.3d at 788 (finding that the burden of proof rested on the party that would have a "far easier" time shouldering that burden).

## II.  Alternatively, If It Is An Affirmative Defense, The Court Should Find That The Government Has The Burden Of Proof As To The "Direction Or Control" Provision

Even if this Court does not find the Indictment fatally infirm, it should nonetheless order that, at trial, the Government must prove beyond a reasonable doubt that Mr. Shafi acted under the "direction or control" of al-Nusra. *See* 18 U.S.C. § 2339B(h).

The Ninth Circuit has held that "[i]f a defense negates an element of the crime, rather than mitigates culpability once guilt is proven, it is unconstitutional to put the burden of proof on the defendant." *Walker v. Endell*, 850 F.2d 470, 472 (9th Cir. 1987). Here, even if the Court finds that the "direction or control" element is an affirmative defense, the defense would negate an element of the crime and therefore the burden should be on the Government. If there is no "direction or control" then that would negate the "provi[sion of] material support" element because a person who provides himself as personnel without acting under the direction or control of a FTO is just an independent advocate. Independent advocacy that occurs separate from the FTO is protected First Amendment activity and not material support. *See HLP*, 561 U.S. at 39 (quoting *Reno*, 205 F.3d at 1133) ("'The statute does not prohibit being a member of one of the designated groups or vigorously promoting and supporting the political goals of the group.... What [§ 2339B] prohibits is the act of giving material support....'"); *id.* at

---

getting herself killed), that person would have a Fifth Amendment privilege not to answer such questions. Moreover, because this necessarily involves a FTO whose leaders are outside this country's borders, they are beyond the subpoena power of the Court. And even if they were not, the U.S. Marshals could not find and arrest them when they refused to respond to a subpoena, in the improbable event that defense counsel and her investigator were able to serve one. In the even more unlikely event that defense counsel was able to find an al-Nusra leader willing to voluntarily testify despite the near certain prosecution that would result, it seems doubtful (to say the least) that the State Department would allow such a person a visa to come to the United States and testify. Realistically then, it appears impossible for the defense to prove the absence of coordination with a FTO.

23, 31 ("The statute makes clear that 'personnel' does not cover independent advocacy"; "The statute reaches only material support coordinated with or under the direction of a designated foreign terrorist organization").

Furthermore, as detailed above, it does not make logical sense to impose the burden of proof as to the "direction or control" provision on the defendant, as that would require him to prove a negative. In addition, the government is a far better position to shoulder the burden. Thus, even if the Court chooses not to dismiss the Indictment, it should find that the burden is on the Government to show that Mr. Shafi acted under the "direction or control" of al-Nusra.

## CONCLUSION

Only a grand jury may determine whether a person should be held to answer in a criminal trial for giving material support, in the form of personnel, to a FTO. U.S. CONST. amend. V. A grand jury, in order to make that ultimate decision, must necessarily determine whether the person was acting independently or under the direction or control of the FTO. 18 U.S.C. § 2339B(h). Here, the Indictment gives no indication that the grand jury addressed this issue at all. As the Supreme Court explained over 50 years ago, this is not permitted:

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

*Russell v. United States*, 369 U.S. 749, 770 (1962).

Without the allegation of that Mr. Shafi worked under the direction of control of al-Nusra, there is no assurance that the grand jury properly indicted Shafi for anything other than exercising his constitutional rights. This deficiency is not merely a matter of linguistics; it is the very essential element that renders the alleged actions illegal under the statute. From the Indictment as currently worded, it is impossible to tell whether the grand jury actually indicted Shafi for the crime that the amended (and constitutional) Section 2339B prohibits, as opposed to the pre-2004 version of the statute that the Ninth Circuit held did not pass constitutional muster. *HLP,* 561 U.S. at 35-36; *see, e.g., Du Bo*, 186 F.3d at 1179-1180 ("we may only guess

whether the grand jury received evidence of, and actually passed on, Du Bo's intent. We may never know if the grand jury would have been willing to ascribe criminal intent to Du Bo.") As a result, Mr. Shafi respectfully requests that this Court grant his motion to dismiss the Indictment against him or, alternatively, order that the Government bears the burden of proof as to the § 2339B(h) "direction or control" provision at trial.

February 9, 2017
Dated

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S
GALIA AMRAM
Assistant Federal Public Defender