BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JEFFREY SHIH (CABN 296945)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

> 450 Golden Gate Avenue, Box 36055
> San Francisco, California 94102-3495
> jeffrey.shih@usdoj.gov; 415-436-7168
> waqar.hasib@usdoj.gov; 415-436-7261

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ADAM SHAFI, <br><br> Defendant. | CASE NO. 3:15-CR-582 WHO <br><br> UNITED STATES OPPOSITION TO DEFENDANT'S MOTION TO DISMISS[1] <br><br> Hearing Date;   April 13, 2017 <br> Hearing Time:   1:30 p.m. |

---

[1] Pursuant to this Court's standing order for criminal cases, time is properly excluded from the defendant's date of filing (February 9, 2017) through the disposition of this motion under 18 U.S.C. § 3161(h)(1)(D). Additionally, time has already been excluded through the scheduled hearing date on April 13, 2017. Docket No. 120. Therefore, with prior time exclusions, 70 days remain under § 3161.

TABLE OF CONTENTS

I. BACKGROUND ........................................................................................................................1

II. ANALYSIS................................................................................................................................2

    A. The Indictment Contains All Of The Essential Elements of Attempting to Provide Material Support to a Foreign Terrorist Organization............................................2

    B. 18 U.S.C. § 2339B(h) Is A Definitional Provision, Not An Essential Element of the Offense................................................................................................................3

    C. The United States Is Not Required to Prove That Defendant Acted Under The "Direction or Control" Of Al-Nusrah. .................................................................11

III. CONCLUSION........................................................................................................................12

# TABLE OF AUTHORITIES

## FEDERAL CASES

Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752 (1984) ............................................................... 8

Estate of Parsons v. Palestinian Auth., 952 F. Supp. 2d 61 (D.D.C. 2013) ............................................. 5

Holder v. Humanitarian Law Project, 561 U.S. 1 (2010) ............................................................... 5, 6, 8

Humanitarian Law Project v. Mukasey, 552 F.3d 916 (9th Cir. 2007) .................................................... 5

Leegin Creative Leather Prod., Inc. v. PSKS, Inc., 551 U.S. 877 (2007) .................................................. 8

*Mathis v. United States*, 136 S. Ct. 2243 (2016) ............................................................................. 2, 3, 10

Staples v. United States, 511 U.S. 600 (1994) ......................................................................................... 7

*State Oil Co. v. Khan*, 522 U.S. 3 (1997) .................................................................................................. 8

*United States v. Abdi*, 498 F. Supp. 2d 1048 (S.D. Ohio 2007) ............................................................... 5

*United States v. Afshari*, 635 F. Supp. 2d 1110 (C.D.Cal. 2009) ............................................................ 5

*United States v. Augustin*, 661 F.3d 1105 (11th Cir. 2011) .................................................................... 5

*United States v. Awad*, 551 F.3d 930 (9th Cir. 2009) ............................................................................. 2

*United States v. Ezeta*, 752 F.3d 1182 (9th Cir. 2014) ........................................................................... 2

*United States v. Goetzke*, 494 F.3d 1231 (9th Cir. 2007) ..................................................................... 11

*United States v. Gravenmeir*, 121 F.3d 526 (9th Cir. 1997) ........................................................... 4, 9,10

*United States v. Hui Hsiung*, 778 F.3d 738 (9th Cir. 2014) ............................................................ 7, 8, 9

*United States v. Kaziu*, 559 F. App'x 32 (2d Cir. 2014) ....................................................................... 12

United States v. LSL Biotechnologies, 379 F.3d 672 (9th Cir. 2004) ...................................................... 8

*United States v. Pugh*, No. 15-CR-116, 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) ................. 4, 10, 11

United States v. Sandoval-Gonzalez, 642 F.3d 717 (9th Cir. 2011) ...................................................... 10

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) ............................................................................. 5

United States v. Williams, 553 U.S. 285 (2008) ...................................................................................... 7

## FEDERAL STATUTES

15 U.S.C. § 6a ........................................................................................................................................... 7

18 U.S.C. § 922(o) .................................................................................................................................. 10

18 U.S.C. § 1326 ..................................................................................................................................... 10

18 U.S.C. § 2256(2) ................................................................................................................ 10

18 U.S.C. § 2339A(b)(1) ........................................................................................................... 3

18 U.S.C. § 2339B ................................................................................................................ 3, 8

18 U.S.C. § 2339B(a)(1) ............................................................................................................ 2

18 U.S.C. § 2339B(h) ...................................................................................................... 3, 6, 12

18 U.S.C. § 3161(h)(1)(D) ......................................................................................................... 1

26 U.S.C. § 5845(b) ................................................................................................................. 10

**FEDERAL RULES**

Fed. R. Crim. P. 7(c)(1) ....................................................................................................... 2, 10

**LEGISLATIVE HISTORY**

H.R. Rep. No. 108-724, pt. 5, pt. 6, 108th Cong. (2nd Sess. November 16, 2004) ...................... 6

*Aiding Terrorists: An Examination of the Material Support Statute: Hearing Before the Senate Committee on the Judiciary, 108th Cong. (May 5, 2004)* ................................................ 6

*A Review of the Tools to Fight Terrorism Act: Hearing Before the Subcommittee on Terrorism, Technology and Homeland Security of the Senate Committee on the Judiciary, 108th Cong. (Sept. 13, 2004)* ......................................................................................................... 6

The United States respectfully submits its opposition to Defendant Adam Shafi's pretrial motion to dismiss the Indictment (Docket No. 123). The motion should be denied because the Indictment alleges all of the elements of the charged offense.

**I.   BACKGROUND**

The Criminal Complaint and prior filings of the United States, *see, e.g.* Docket No. 38 (United States Opp'n to Def. Appeal of Detention Order), summarize the defendant's conduct in attempting to travel to Turkey in order to support the cause of the al-Nusrah Front in June 2015. Briefly, the FBI initiated its investigation of the defendant after he left his family in Cairo, Egypt, on August 16, 2014, and traveled on a one-way ticket to Istanbul, Turkey, which adjoins and is a common entry point into Syria. The next day, the defendant's father contacted the U.S. Embassy in Cairo, Egypt, and stated that the defendant had disappeared during a family trip to Cairo, that the defendant had been following extreme imams online, that he may have traveled to Syria, Iraq, Gaza, or some other area in the region to defend Muslims, and that it was important to find him quickly to prevent him from doing harm to himself or others. While the defendant subsequently returned to his family in Cairo and with his family back to the United States, the defendant booked a one-way ticket again and attempted to travel to Istanbul, Turkey, on June 30, 2015. The evidence obtained by the FBI included intercepted telephone conversations of the defendant in the weeks leading up to this attempt to travel. In the conversations, the defendant discussed his love for the emir of the al-Nusrah Front, his understanding of life in Syria, his desire to die with the al-Nusrah Front, and his statement that he "really wanted to kill some, like, fricking people that were, uh, like supporting America or-or American soldiers or something."

On December 15, 2015, the grand jury returned the Indictment charging the defendant with one count of attempting to provide material support and resources to a foreign terrorist organization—specifically, the al-Nusrah Front. After describing al-Nusrah's designation as a foreign terrorist organization, the Indictment reads as follows:

> Beginning on a date unknown, but no later than June 2015, through on or about June 30, 2015, in the Northern District of California, the defendant, ADAM SHAFI, knowingly attempted to provide material support and resources, specifically, personnel, to a foreign terrorist organization, namely, al-Nusrah Front, knowing that it was a designated foreign terrorist organization and that the organization had engaged and was engaging in terrorist activity and terrorism, in violation of Title 18, United States Code, Section 2339B(a)(1).

On February 9, 2017, Defendant filed the instant motion to dismiss arguing that the "direction or control" provision of § 2339B(h) is an essential element of the offense that the Indictment fails to plead. For the following reasons, this Court should deny Defendant's motion to dismiss.

## II.     ANALYSIS

### A.     The Indictment Contains All Of The Essential Elements of Attempting to Provide Material Support to a Foreign Terrorist Organization.

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge." *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (internal quotations omitted). Dismissal of an indictment is appropriate if the indictment "fails to recite an essential element of the charged offense." *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014). However, "[t]he test for sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Awad*, 551 F.3d at 935.

The elements of an offense are "the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (quoting Black's Law Dictionary 634 (10th ed. 2014)). 18 U.S.C. § 2339B(a)(1) sets forth criminal penalties for "[w]hoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so." As relevant to an attempt charge, § 2339B(a)(1) therefore requires the government to show that the defendant (1) knowingly (2) attempted (3) to provide material support or resources (4) to a foreign terrorist organization.

The Indictment in this case alleges that, on the dates specified, Defendant "knowingly attempted to provide material support and resources" to the al-Nusrah Front, "a foreign terrorist organization" ("FTO"), and that Defendant knew that the al-Nusrah Front was a designated FTO and had engaged in terrorist activities. As such, the Indictment clearly sets forth each essential element of the offense charged. Further, the Indictment also specifies that Defendant attempted to provide material support in the form of "personnel."[2]

---

[2] The term "personnel" does not constitute an element of the material support offense. In

**B.    18 U.S.C. § 2339B(h) Is A Definitional Provision, Not An Essential Element of the Offense.**

Defendant moves to dismiss the Indictment on the ground that it fails to allege an essential element of the charged offense. Specifically, Defendant argues that the Indictment is insufficient for failure to allege that Defendant satisfied the definition of "personnel" set forth in 18 U.S.C. § 2339B(h), *i.e.*, that he "attempted to provide himself to work 'under [al-Nusrah's] direction or control.'" Def. Mot. at 3. That argument is meritless.

As described in Section II.A above, § 2339B(a)(1) sets forth the essential elements of attempting to provide material support or resources to an FTO. Through the definitions provisions of § 2339B(g), the term "material support or resources" of the unlawful conduct specified in § 2339B(a)(1) is given the same definition as that in § 2339A(b)(1), specifically:

> [T]he term "material support or resources" means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

In 2004, Congress enacted the Intelligence Reform and Terrorism Prevention Act ("IRTPA"), Pub. L. No. 108-458, which, as relevant, amended 18 U.S.C. § 2339B by adding § 2339B(h). This additional provision in § 2339B(h) states as follows:

> Provision of personnel.—No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's

---

*Mathis v. United States*, 136 S. Ct. 2243 (2016), the Supreme Court clarified the distinction between an "element" of an offense versus "various factual means of committing a single element." *Id.* at 2249. Where a statute describes "alternative methods of committing one offense," the Court made clear that such "methods" or "means" are distinct from "elements." *Id.* at 2256 (internal quotation omitted). 18 U.S.C. § 2339A(b)(1), which defines "material support or resources" to mean "any property, . . . or service, including . . . lodging, training, expert advice or assistance, . . . [and] personnel," provides the sort of "various factual means of committing a single element" of an offense (namely, provision of material support) that the Court described in *Mathis*.

Nonetheless, consistent with the government's practice, the Indictment does specify that Defendant is alleged to have attempted to provide material support to al-Nusrah through the specific means of attempting to provide "personnel." And as part of its theory of the case, the United States will seek to prove at trial that Defendant specifically attempted to provide himself as personnel to al-Nusrah, and will propose jury instructions specifying that "personnel" must be defined consistent with § 2339B(h).

US OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                                                                                         3

       direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization.  Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

Section 2339B(h) does not impose a new substantive element for the offense of providing material support.  Rather, it provides further clarification regarding the meaning of the term "personnel," which appears in the "definitions" provision of § 2339A as part of the definition of the term "material support or resources."  Specifically, § 2339B(h) refines the term "personnel" by stating that providing "personnel" under the statute means providing an individual to work under the direction or control of a foreign terrorist organization ("FTO"), or to manage or supervise an FTO, and not merely to act independently to advance an FTO's goals.  To the extent that § 2339B(h) carves out independent action as an "exception" to the statute—rather than simply clarifying the ordinary meaning of the term "personnel"—courts have long held that "an indictment . . . need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere . . . ."[3]  *McKelvey v. United States*, 260 U.S. 353, 357 (1922); *see also, e.g., United States v. Gravenmeir*, 121 F.3d 526, 528 (9th Cir. 1997).

The District Court in *United States v. Pugh*, No. 15-CR-116, 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015), addressed an argument substantially similar to that raised by Defendant and persuasively rejected it.  Based on the plain meaning of the text, the District Court concluded that "[t]he fairest reading of Section 2339B(h) suggests that its limitations on the meaning of 'personnel' are definitional—not . . . an essential element." *Id.* at *8.[4]  The District Court found this reading is supported by "three statutory features."  First, the language in § 2339B(h) referring to prosecutions "in connection with *the term 'personnel'*" "indicates that subsection (h) was intended to piggyback on the

---

[3] *McKelvey* also stated in the same sentence ". . . and that it is incumbent on one who relies on such an exception to set it up and establish it."  260 U.S. at 357.  As discussed in the text accompanying footnote 6 below and in the text of pages 9 and 10 below, however, pleading requirements are determined by what is or is not an essential element, not by what is or is not an affirmative defense.

[4] The District Court in *Pugh* also rejected the Government's argument that § 2339B(h) describes an affirmative defense—*i.e.*, that it is a defendant's burden to show he or she was working independently of an FTO as an affirmative defense to the charge of providing personnel.  The government does not advance that argument here.

US OPPOSITION TO DEFENDANT'S MOTION TO DISMISS      4

statutory term 'personnel' as used in the defined term 'material support or resources.'" *Id.* (emphasis added). Second, because the language in § 2339B(h) parallels language in § 2339B(a)(1), § 2339B(h) "do[es] nothing more than limit[] the breadth of Section 2339B(a)(1) with regard to 'personnel' offenses." *Id.* Third, in dismissing the Government's argument in *Pugh* that § 2339B(h) instead describes an affirmative defense, the District Court noted that it "does not add any additional factual considerations that would tend to negate a crime," but, rather, that it "simply circumscribes the breadth of a term defined in the substantive offense." *Id.* at *9.

As the District Court in *Pugh* noted, courts in several other jurisdictions share this view, or at least have referred to § 2339B(h) as a definitional term in passing. The Supreme Court itself in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), referred to § 2339B(h) as a "limiting definition" that Congress enacted through IRTPA and that "added clarity to the statute by providing narrowing definitions." *Id.* at 23, 35; *see also id.* at 21 (referring to § 2339B(h), along with other provisions defining the terms "training" and "expert advice or assistance," as "narrowing definitions" that Congress added to the statute).[5] The Courts of Appeals for the Second and Eleventh Circuits have also referred to § 2339B(h) as having "defined" or provided a "definition" of the term "personnel." *United States v. Stewart*, 590 F.3d 93, 118 n.21 (2d Cir. 2009) (through enactment of IRTPA, "the term ['personnel'] was defined in more detail for purposes of section 2339B"); *United States v. Augustin*, 661 F.3d 1105, 1121 (11th Cir. 2011) (referring to § 2339B(h) as "the definition of personnel provided under § 2339B"); *see also, e.g., United States v. Afshari*, 635 F. Supp. 2d 1110, 1120 (C.D.Cal. 2009) ("the plain text of IRTPA goes further in defining 'personnel' as providing '1 or more individuals . . . to work under that terrorist organization's direction or control'"); *Estate of Parsons v. Palestinian Auth.*, 952 F. Supp. 2d 61, 68 (D.D.C. 2013) (describing § 2339B(h) as "a more detailed definition of 'personnel'" provided by Congress through enactment of IRTPA); *United States v. Abdi*, 498 F. Supp. 2d 1048, 1063 (S.D. Ohio 2007) ("Congress, as part of IRTPA . . . , clarified the term 'personnel' as it is employed in § 2339B by adding a new subsection (h) defining the term, as it is used in the definition of 'material support.'").

---

[5] The Ninth Court, in its prior opinion in *Humanitarian Law Project*, which the Supreme Court affirmed in part and reversed in part, also referred to "IRTPA's definition of 'personnel'" and "the term 'personnel' as defined in IRPTA." *Humanitarian Law Project v. Mukasey*, 552 F.3d 916, 931 (9th Cir. 2007).

<pre>

Moreover, Congress itself described adding the pertinent IRTPA language to § 2339B in order to "more clearly define[] the term material support." H.R. Rep. No. 108-724, pt. 5, at 173, and pt. 6, at 174 (2004) (House Judiciary Committee summary and discussion of H.R. 10 § 2043 108th Cong. (2$^d$ Sess. November 16, 2004), which contained the language incorporated into IRPTA § 6603 and codified in 18 U.S.C. § 2339B(h)); *see also Aiding Terrorists: An Examination of the Material Support Statute: Hearing Before the Senate Committee on the Judiciary*, 108th Cong. 2, 4-5, 9-10, 27, 29, 47-49, 118-22 (May 5, 2004) (describing similar legislation amending, clarifying, and refining definition); *A Review of the Tools to Fight Terrorism Act: Hearing Before the Subcommittee on Terrorism, Technology and Homeland Security of the Senate Committee on the Judiciary*, 108th Cong. 10, 18, 48-50, 78, 115 (Sept. 13, 2004) (same). The meaning of "personnel" is thus a definition in, not an element of, the offense.

Defendant's contrary arguments lack merit. First, Defendant argues that § 2339B(h) must be a "material" part of the offense described in § 2339B because without subsection (h)'s limiting provisions the statute would be unconstitutionally vague. As an initial matter, however, the Supreme Court in *Humanitarian Law Project* never held that the material support statute would be unconstitutionally vague but for subsection (h). To the contrary, the Court found that the Ninth Circuit had erred in other aspects of its vagueness analysis in its prior opinion and noted that "applying the statutory terms in this action—'training,' 'expert advice or assistance,' 'service,' and 'personnel'—does not require" the types of "untethered, subjective judgments" that have rendered other types of statutes void for vagueness. 561 U.S. at 21. With respect to subsection (h), the Court noted that it provided *additional* reason to conclude that the statute is not unconstitutionally vague by "increas[ing] the clarity of the statute's terms," *id.* at 21, and that it therefore "answer[ed]" even the "plaintiffs' vagueness concerns" about whether political advocacy on behalf of an FTO would be considered unlawful "material support," *id.* at 23.

But even if subsection (h) were necessary to save the statute from a vagueness challenge, that would not render it an "element" of the statute. A federal statute may be void for vagueness under the Due Process Clause of the Fifth Amendment if, as applied, it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Humanitarian Law Project*, 561 U.S. at 18 (internal quotations omitted). Unsurprisingly, the existence of specific statutory definitions may help alleviate concerns that

</pre>

a particular offense (or element, means, or term of an offense) is vague. *See, e.g., United States v. Williams*, 553 U.S. 285, 296-97, 305-06 (2008) (finding that a carefully tailored statutory definition for the term "sexually explicit conduct" within an anti-child pornography statute alleviates overbreadth and vagueness concerns). But the fact that a statutory definition supplies an important limitation does not convert that definition into an element of the offense and require that an indictment include a recitation of that definition.[6] If that were the case, separate definitional provisions of statutes would be converted to "elements" any time a court concluded that a statutory definition helps to alleviate overbreadth or vagueness concerns. Rather than adopt such a new rule, this Court should adhere to the well-settled principle that "the definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Staples v. United States*, 511 U.S. 600, 604 (1994) (internal quotations omitted).

Defendant's second argument based on the Ninth Circuit's decision in *United States v. Hui Hsiung*, 778 F.3d 738 (9th Cir. 2014), is also unavailing. In that case, the court construed the Foreign Trade Antitrust Improvements Act ("FTAIA") in considering appeals to defendants' convictions under the Sherman Act. The FTAIA provides that the Sherman Act "shall not apply" to certain conduct involving non-import trade with foreign nations "unless" the defendant's conduct has "direct, substantial, and reasonably foreseeable" effects on domestic commerce. 15 U.S.C. § 6a. The *Hui Hsiung* defendants contended that the indictment was defective because it did not cite or mention the FTAIA. Rejecting the argument that the FTAIA is an affirmative defense, the Ninth Circuit held instead that, where the prosecution involves non-import trade with foreign nations and proceeds under a "domestic effects" theory, the government must "plead and prove the requirements for the domestic effects exception to the FTAIA." 778 F.3d at 756.[7] Based on *Hui Hsiung*, Defendant argues here that § 2339B(h) must also constitute an element of the material support statute because it too contains a

---

[6] The Ninth Circuit Model Criminal Jury Instructions 8.181 through 8.185, for example, use the statutory definition of "sexually explicit conduct" as a definition (not an element) in child exploitation offenses.

[7] Although the indictment had not cited the FTAIA or used "[t]he magic words—'domestic effects,'" the Ninth Circuit found that the indictment was valid as it sufficiently alleged a domestic effects theory of the case, and that therefore "[t]he scope of the charges was not a mystery" to the defendants. *Hui Hsiung*, 778 F.3d at 757-58 (9th Cir. 2014).

1  formulation that the statute shall not apply "unless" certain conditions are met. Def. Mot. at 10-11. This
2  argument fails for several reasons.

3  At the threshold, the Supreme Court has long recognized that the Sherman Act is a distinct area
4  of criminal law. The Sherman Act's statutory language is sweeping in its breadth. *Copperweld Corp. v.*
5  *Indep. Tube Corp.*, 467 U.S. 752, 784–85 (1984). "From the beginning the [Supreme] Court has treated
6  the Sherman Act as a common-law statute." *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S.
7  877, 899–900 (2007). And federal courts have played a distinct role "in light of the accepted view that
8  Congress 'expected the courts to give shape to the statute's broad mandate by drawing on common-law
9  tradition," such that general axioms like *stare decisis* and presuming that changes should be left to
10 Congress have less force. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). By contrast, the material
11 support statute of 18 U.S.C. § 2339B is an enactment of Congress. Unlike the distinct jurisprudence of
12 the Sherman Act, the Supreme Court has observed that Congress has been conscious of its role shaping
13 the material support statute and that § 2339B "implicates sensitive and weighty interests of national
14 security and foreign affairs" where, in certain litigation, "Congress and the Executive are uniquely
15 positioned" and "entitled to significant weight." *Humanitarian Law Project*, 561 U.S. at 33-34, 35-36.

16 Additionally, the interaction between the Sherman Act and the FTAIA differs substantially from
17 the interaction between §§ 2339B(a)(1) and 2339B(h). The FTAIA did not define or clarify any term
18 within the Sherman Act. Rather, as the Ninth Circuit explained in *United States v. LSL Biotechnologies*,
19 379 F.3d 672 (9th Cir. 2004), prior to the passage of the FTAIA, federal courts through common law had
20 "applied varying tests to determine when foreign conduct fell within the purview of the Sherman Act" to
21 limit the Sherman Act's extraterritorial reach, at times as a question of subject matter jurisdiction. *Id.* at
22 677–78. Because courts differed and because the extraterritorial reach of the Sherman Act remained
23 uncertain, Congress enacted the FTAIA. *Id.* at 678. The FTAIA displaced the prior test at common law
24 for determining the Sherman Act's extraterritorial reach and established that the Sherman Act did not
25 apply to non-import trade and commerce with foreign nations unless those activities had adverse
26 "domestic effects" as specified in the FTAIA. *Hui Hsiung*, 778 F.3d at 748, 751, 757. Additionally, as
27 the Ninth Circuit explained in *Hui Hsiung*, the "domestic effects" test of the FTAIA was not a question
28 of subject matter jurisdiction as previously framed, but rather a substantive element under the Sherman

1  Act in cases involving nonimport trade and commerce with foreign nations. *Id.* at 751-753. Against this
2  backdrop, the Ninth Circuit rejected the Government's argument in *Hui Hsiung* that the "domestic
3  effects" test of the FTAIA was an affirmative defense. Specifically, instead of laying out the prohibited
4  conduct and providing an escape hatch exception, the FTAIA carved out a substantial exception to the
5  potential extraterritorial nature of the Sherman Act—nullifying its application to non-import trade and
6  commerce with foreign nations unless those activities have adverse "domestic effects" as specified in the
7  FTAIA. *See* 778 F.3d at 57 ("as a default, the FTAIA provides that when the alleged conduct involves
8  nonimport trade with foreign nations, the Sherman Act does *not* apply") (emphasis in original). As
9  such, to allege a Sherman Act claim under those conditions, the burden shifts back to the government to
10 prove that the exception-to-the-exception (i.e., the "domestic effects" specified in the FTAIA) is met.
11 By contrast, § 2339B(h) attaches itself to a particular term in the material support statute ("personnel"),
12 which itself forms part of the definition of another term ("material support or resources"), and simply
13 clarifies the definition of the term "personnel" by explaining that providing personnel means providing
14 individual(s) to work under an FTO's organization or control, not to act independently.

15     More generally, *Hui Hsiung* cannot plausibly be read to mean that any statutory term must be an
16 element if it is couched in a similar "unless" formulation. Most definitions or exceptions described in
17 criminal statutes, after all, could be re-formulated to say that "no prosecution may be brought unless" a
18 series of defined terms are present. *Cf. Gravemeir*, 131 F.3d at 528 (finding that a statutory exception to
19 a prohibition respecting machineguns does not constitute an element of the offense, and that "[w]here
20 . . . the statutory prohibition is broad and an exception is narrow, it is more probable that the exception is
21 an affirmative defense" (internal quotations omitted)). The court's reasoning in *Hui Hsiung* was,
22 instead, based on a specific analysis of the interaction between the FTAIA and the Sherman Act,
23 including common law and legislative history that indicated the intent of both federal courts and
24 Congress to remove certain activities from the reach of the Sherman Act altogether, *see* 778 F.3d at 751,
25 and a close reading of the statutory language.

26     Lastly, Defendant's third argument is that because the United States is in a better position to
27 shoulder the burden on proving the "direction or control" provision of § 2339B(h), it should not be an
28

affirmative defense[8] and thus must be an essential element of the charged offense. Def. Mot. 11-13. This argument is flawed. While courts have often evaluated whether a provision is an essential element or an affirmative defense, perhaps due to adversaries taking the diametric positions, a provision need not be one or the other. There is one test to determine whether a provision establishes an element. *See Mathis*, 136 S. Ct. at 2256 (summarizing aspects of statutory interpretation to determine elements versus means). There is a different test to determine whether a provision establishes an affirmative defense. *See Gravenmeir*, 121 F.3d at 528 (listing three factors of (i) whether statute establishes exception in proviso or distinct clause, (ii) whether statutory prohibition is broad and exception narrow, and (iii) evaluating relative burdens of parties with respect to evidence). And there may be provisions of statutes that may be something else entirely, such as a means of committing an offense, *see, e.g., Mathis*, 136 S. Ct. at 2256-57 (discussing means of burglary that need not be charged), or a definition of a term, *see, e.g., Pugh*, 2015 WL 9450598 at *7-*11 (holding § 2339B(h) to be definitional provision, not essential element or affirmative defense). For example, in *United States v. Sandoval-Gonzalez*, 642 F.3d 717 (9th Cir. 2011), the Ninth Circuit held that derivative citizenship was not an affirmative defense to the crime of illegal reentry under 8 U.S.C. § 1326. *Id.* at 721-25. This holding, however, did not make disproving derivative citizenship an element required in an indictment. *See id.* at 724 ("To be clear, the government does not have the burden of disproving each element of derivative citizenship; only 'alienage' is among the elements of the crime, so only it must be proven."). Rather, as part of the definition of the alienage element, derivative citizenship could be a defense advanced "simply to negate an element of the crime" without any shift in the burden of proof from the prosecution. *Id.* at 723. There are a plethora of other crimes with defined terms that can similarly negate elements of those crimes, such as the definition for "sexually explicit conduct" in crimes involving child pornography, 18 U.S.C. § 2256(2) or the definition for "machinegun" in the crime of possessing a machinegun, 26 U.S.C. § 5845(b). Defendant's argument would require an indictment to recite all such definitions or all language that is not an affirmative defense. If that were the rule, indictments would not be plain and concise under Federal Rule of

---

[8] Note that the government's ability to prove an item "does not mean that the statute requires it to do so." *Gravenmeir*, 12 F.3d at 528 (holding that exception to possession of machinegun crime of 18 U.S.C. § 922(o) to be an affirmative defense where statute "clearly sets out the elements of the offense in one paragraph and the exceptions to the offense in another").

US OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                                                                                                 10

Criminal Procedure 7(c)(1), but rather a recitation of everything in the jury instructions, such as the definitions of constructive and joint possession in cases involving possession of drugs or firearms. As such, that the § 2339B(h) definition of "personnel" is not an affirmative defense does not mean the definition is an essential element of the crime.

At bottom, the Indictment in this case alleges all of the elements required by the statutory language of § 2339B(a)(1), which establishes the material support crime. There is no merit to Defendant's contrary arguments that definitional language creates an essential element whenever such language is material, is worded with "unless," and is easier for the government to prove. Such reasoning is flawed, unsupported, and provides no justification for making the § 2339B(h) definition of "personnel" an essential element that an indictment must recite. Defendant cites no other courts that have adopted his arguments. Indeed, the District Court in *Pugh*, in holding § 2339B(h) to be definitional observed that "courts have routinely accepted indictments that, with regard to the 'material support or resources' element only allege that the defendant provided personnel to an FTO." 2015 WL 9450598, at *13. This Court should hold the same, find that the Indictment alleges all of the elements of the charged offense, and deny Defendant's motion to dismiss.

### C. The United States Is Not Required to Prove That Defendant Acted Under The "Direction or Control" Of Al-Nusrah.

Lastly, Defendant argues in the alternative that even if this Court does not dismiss the Indictment, it should require that the Government to "prove beyond a reasonable doubt that Mr. Shafi acted under the 'direction or control' of al-Nusra[h]." Def. Mot. at 13. But this argument misunderstands (or disregards) the fact that Defendant is charged with *attempting* to provide material support in the form of personnel. "An attempt conviction requires evidence that the defendant intended to violate the statute and took a substantial step toward completing the violation." *United States v. Goetzke*, 494 F.3d 1231, 1235 (9th Cir. 2007) (citation and internal quotation marks omitted). As such, even if § 2339B(h) were an element of the material support charge (which it is not), the United States is not required to show that Defendant acted under al-Nusrah's direction or control. Rather, the law requires that the United States to prove that, as alleged in the Indictment, Defendant attempted to provide material support in the form of personnel to al-Nusrah. And the United States will propose jury

instructions defining "personnel" consistent with § 2339B(h), i.e., "attempt[ing] to provide . . . a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control." 18 U.S.C. § 2339B(h); *cf. United States v. Kaziu*, 559 F. App'x 32, 37 (2$^d$ Cir. 2014) (holding that "it was not necessary for Kaziu to succeed in assisting al-Shabaab in its war against the Somali government for him to be convicted of attempting to do so" and that "because the evidence showed that the object of Kaziu's attempt was to join with other al-Shabaab fighters in Somalia, his actions did not fall within the [§ 2339B(h)] provision that insulates from criminal liability those who 'act entirely independently of the foreign terrorist organization to advance its goals or objectives'").

Accordingly, this Court should reject Defendant's argument to require the United States to prove that he acted under the direction and control of al-Nusrah, which would essentially eliminate the *attempt* charged in the Indictment and provided by Congress in the statute.

### III. CONCLUSION

For the foregoing reasons, the Indictment alleges all of the elements of the charged offense, and this Court should deny Defendant's motion to dismiss.

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

DATED: March 2, 2017

/s/ Jeffrey Shih
JEFFREY SHIH
S. WAQAR HASIB
Assistant United States Attorneys