1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STEVEN G. KALAR
Federal Public Defender
Northern District of California
GALIA AMRAM
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:        Galia_Amram@fd.org


Counsel for Defendant SHAFI

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ADAM SHAFI,<br><br>Defendant. | **Case No.:** CR 15–582 WHO<br><br>**DEFENDANT SHAFI'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**Court:**          Courtroom 2, 17th Floor<br><br>**Hearing Date:**   April 13, 2017<br><br>**Hearing Time:**   1:30 p.m. |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .............................................................................................................. 1

I.   18 U.S.C. §2339B IS AN ELEMENT ........................................................ 1

  A.   THE PLAIN LANGUAGE OF 18 U.S.C. §2339B, ALONG WITH PRINCIPLES OF STATUTORY CONSTRUCTION, INDICATE SUBSECTION (H) IS AN ELEMENT ........ 2

  B.   SUBSECTION (H) IS AN ELEMENT BECAUSE OTHERWISE THE STATUTE RAISES CONSTITUTIONAL CONCERNS .................................................. 6

  C.   UNDER *RUSSELL*, 369 U.S. 749 (1962), EVEN IF SUBSECTION H IS A NOT AN ELEMENT, COORDINATION WITH A FTO STILL MUST BE ALLEGED IN THE INDICTMENT .................................................................................. 9

II.  THE GOVERNMENT BEARS THE BURDEN OF PROOF OF SUBSECTION (H) EVEN WHEN IT CHARGES MATERIAL SUPPORT UNDER AN ATTEMPT THEORY. ............ 11

CONCLUSION ........................................................................................................... 12

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Ashcroft v. Free Speech Coal.*,
   122 S. Ct. 1389 (2002) .................................................................................. 12

4

*Conn. Nat'l Bank v. Germain*,
   503 U.S. 249 (1992) .................................................................................... 2

5

*Gomez v. United States*,
   490 U.S. 858 (1989) .................................................................................... 6

6

7

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ................................................................................. 1, 7, 9

8

*Humanitarian Law Project v. U.S. DOJ*,
   352 F.3d 382 (9th Cir. 2003) ........................................................................ 7

9

10

*Liparota v. United States*,
   471 U.S. 419 (1985) ............................................................................. 5, 6, 8-9

11

*Mathis v. United States*,
   136 S. Ct. 2243 (2016) ......................................................................... 2, 3, 4, 7

12

*Rewis v. United States*,
   401 U.S. 808 (1971) .................................................................................... 5

13

14

*Richardson v. United States*,
   526 U.S. 813 (1999) ................................................................................. 3, 7

15

*Russell v. United States*,
   369 U.S. 749 (1962) ................................................................................. 2, 9

16

17

*Schad v. Arizona*,
   501 U.S. 624 (1991) .................................................................................... 9

18

*United States v. Ahmed*,
   94 F. Supp. 3d 394 (E.D.N.Y. 2015) ............................................................. 10

19

20

*United States v. Ahmed*,
   No. 15-49 (MJD/FLN), 2015 U.S. Dist. LEXIS 171561 (D. Minn. Sept. 1, 2015) ................. 5

21

*United States v. Awan*,
   459 F. Supp. 2d 167 (E.D.N.Y. 2006) ............................................................. 10

22

*United States v. Hashmi*,
   No. 06 Crim. 442 (LAP), 2009 WL 4042841 (S.D.N.Y. Nov. 17, 2009) ........................ 10

23

24

*United States v. Hui Hsiung*,
   778 F.3d 738 (9th Cir. 2014) ...................................................................... 3, 6

25

*United States v. Kaziu*,
   559 F. App'x 32 (2d Cir. 2014) ................................................................... 11

26

27

*United States v. Lonich*,
   2016 WL 324039 (N.D. Cal. Jan 27, 2016) ......................................................... 3

28

*United States v. Pugh*,
  No. 15-CR-116, 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) ........................................... 5, 6

*United States v. Taleb-Jedi*,
  566 F. Supp. 2d 157 (E.D.N.Y. 2008) ................................................................................. 10

*United States v. Warsame*,
  537 F. Supp. 2d 1005 (D. Minn. 2008) ............................................................................... 10

**Statutes**

18 U.S.C. § 2339B ............................................................................................................... *passim*

## REPLY IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

According to the government, Mr. Shafi may be charged, detained pending trial, and tried for providing material support to a terrorist organization under 18 U.S.C. § 2339B without the government ever needing to prove coordination between him and al-Nusra.  This despite two things: 1. A statutory provision explicitly requiring that "[n]o person may be **prosecuted**" under § 2339(B) unless he or she actually worked under the terrorist organization's direction or control or was a manager of that organization, 18 U.S.C. § 2339B(h); and 2. A Supreme Court case holding 18 U.S.C. § 2339B constitutional because of the addition of subsection (h).  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 23 (2010) ("HLP").

### ARGUMENT[1]

## I.   18 U.S.C.  § 2339B IS AN ELEMENT

The government's argument is that it does not need to allege coordination between a defendant and a FTO in an Indictment, nor bear the burden of proof at trial, because

---

[1] In its Opposition, the government included a culled set of facts irrelevant to the purely legal question before this Court.  United States Opposition to Defendant's Motion to Dismiss at 1 [Docket No. 133] ("Opp'n").  Since the particular facts of this case do not change whether the government did or did not fail to allege an element of the charge in the Indictment, the defense is unclear on the purpose of including such facts.  However, the defense does point out that the government's description of Mr. Shafi's father's statements is misleading in light of a FBI 302 documenting an interview in which Mr. Shafi's father told the FBI:

> SALAMA was very concerned and frightened for his son and went to the US Embassy, as well as the Egyptian authorities, to report him missing. SALAMA was initially redirected to a website and was not getting the attention he felt the matter deserved. He was there to report an emergency and felt most others there were trying to get routine business done, like visas. He felt he had to use eye catching language to get someone's attention, which was part of the reason he made the statements about fearing SHAFI had been recruited . . . He and his wife were very protective of their children . . . Each member of the family had an app on their phones which shared their location at all times . . . SALAMA did not think SHAFI had contact with anyone overseas before his travel to Turkey nor did he think SALAMA had contact with anyone since their return. Declaration of Galia Amram In Support Of Reply To Motion To Dismiss, Exh. A [AS-00003.]

subsection (h) is a "definition" instead of an "element."  Specifically, the government argues that the relevant "element" in 18 U.S.C. § 2339B is "material support," that "personnel" is a "means" of committing the element of material support, and that subsection (h) provides a definition of "personnel."  Opposition to Motion to Dismiss (Docket No. 133) ("Opp'n) at 3-11 and n. 2.

The government's position is contradicted by the plain language of the statute (including the subsections directly above and below subsection (h)); the Supreme Court's recent decision in *Mathis v. United States,* 136 S.Ct. 2243 (2016) – which held that a statutory provision is an element if it is not "extraneous to the crime's legal requirements" – and the rule of lenity.  Subsection (h) must also be an element because otherwise the statute raises constitutional concerns and criminalizes innocent conduct.  And under *Russell v. United States*, 369 U.S. 749, 770 (1962), even if subsection (h) is not an element, coordination with a FTO must be alleged in the Indictment because it is an "essential fact."  Finally, contrary to the government's claim, charging an attempted violation of the material support statute does not obviate the government's burden of showing coordination as required by section 2339B(h), as attempts are specifically included in subsection (h).

## A.  THE PLAIN LANGUAGE OF 18 U.S.C. § 2339B, ALONG WITH PRINCIPLES OF STATUTORY CONSTRUCTION, INDICATE SUBSECTION (H) IS AN ELEMENT

The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  Here, the plain meaning of the words in subsection (h) indicates it is an element not, as the government contends, a definition of "personnel." Subsection (h) states: "[n]o person may be prosecuted unless…"  It does not say "'personnel' is defined as…"  In fact, there is a "Definitions" section to section 2339B, just one subsection above (18 U.S.C. § 2339B(g)), where Congress could have easily placed the language of subsection (h), if it was in fact a definition.

Congress also used the words "[n]o person may be prosecuted unless…" *not* "no person may be convicted unless…."  The only way to give effect to Congress' language that "no

person may be prosecuted unless" is if subsection (h) is an element that a grand jury must find for the government to get an Indictment.  If a grand jury need not find the requirements of subsection (h), then a person may be prosecuted for acting entirely independently of the foreign terrorist organization, in direct contravention of the explicit language of the statute.  *See Richardson v. United States,* 526 U.S. 813, 818 (1999) ("When interpreting a statute, we look first to the language.")

Moreover, as explained in Section I.B. of the opening brief, the language of subsection (h) is consistent with language that the Ninth Circuit held, in *United States v. Hui Hsiung,* 778 F.3d 738 (9th Cir. 2014) creates an element.  In response to this, the government argued that *Hui Hsiung's* holding does not apply because *Hui Hsiung* is limited to the Sherman Act.  Opp'n. at 7-9.[2]  The *Hui Hsiung* Court did not say that its holding was limited to the Sherman Act, nor has the government cited any other case, from the Ninth Circuit or otherwise, finding *Hui Hsiung* so limited.[3]

In addition, subsection (h) meets the definition of an element as that term is defined in the Supreme Court's recent decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016).  In *Mathis,* the Supreme Court addressed the difference between elements and "the various factual means" of committing an offense.  *Id.* at 2249.  The *Mathis* Court explained that:

---

[2] The government also argued, in a footnote, that "personnel" is a "means" of committing the "element" of "material support."  Opp'n. at n. 2.  Presumably the point of this is to say that if "personnel" is a means, then subsection (h) cannot be an element.  But that argument is foreclosed by case law establishing that statutes sometimes have elements that only apply when the Government chooses to proceed on a particular theory of prosecution.  *See Hui Hsiung,* 778 F.3d at 756 (the FTAIA element only applied because the Government proceeded on a domestic effects theory); *see also United States v. Lonich*, 2016 WL 324039, *7-8 (N.D. Cal. 2016) (finding that duty to disclose is an element of bank or wire fraud where the prosecution proceeds on an omissions theory).  The defense made this point in its opening brief, but the government did not address it.

[3] In another footnote, the government briefly cited case law on exceptions to statutes as affirmative defenses, Opp'n. at 4, even though the text of subsection (h) clearly reads as an element, not an exception.  The government then stated in a footnote that it was not actually arguing that subsection (h) is an affirmative defense.  Opp'n. at n. 4.  This concession makes sense as Section 2339B has a section titled "Exceptions."  18 U.S.C. § 2339B(j).  So if subsection (h) was meant to be an exception, Congress would have placed it in the "Exceptions" section of the statute.

"'[e]lements' are the 'constituent parts' of a crime's legal definition — the things the 'prosecution must prove to sustain a conviction.' Black's Law Dictionary 634 (10th ed. 2014). At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant." *Id.* at 2248. "Facts, by contrast, are mere real-world things — extraneous to the crime's legal requirements. (We have sometimes called them "brute facts" when distinguishing them from elements.) They are 'circumstance[s]' or 'event[s]' having no 'legal effect [or] consequence': In particular, they need neither be found by a jury nor admitted by a defendant." *Id.* (internal citations omitted).

There can be no doubt that subsection (h) is an element as that term is defined in *Mathis*. As explained in detail in the opening brief, subsection (h) was added to the material support statute in response to the Ninth Circuit's finding that section 2339B was unconstitutional, Defendant's Motion to Dismiss at 3-5 (Docket No. 123) ("MTD"), and the Supreme Court then upheld the constitutionality of section 2339B because of the addition of subsection (h). *Id.* With such a legislative history, it is illogical to deem subsection (h) "extraneous to the crime's legal requirements." *Mathis,* 136 S.Ct. at 2248. A provision of a statute that is explicitly added, during the pendency of a constitutional challenge, to make the statute pass constitutional muster, and then found by the Supreme Court to in fact render that statute constitutional, cannot "hav[e] no legal effect or consequence." *See id.* (describing means vs. elements).

In fact, in Section 2339B(i), one section below subsection (h), Congress stated the following:

(i)Rule of Construction.—

Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States.

18 U.S.C. § 2339B(i).

Considering this express directive from Congress, it is hard to see how subsection (h) can be construed in a way that neither protects a person from prosecution (because it need not be

1    alleged in an Indictment) nor from conviction (because it need not be proved beyond a

2    reasonable doubt).

3        Finally, if the Court finds the statute ambiguous as to whether subsection (h) is an

4    element, a definition, or an affirmative defense, the rule of lenity compels this Court to find

5    subsection (h) to be an element.  The Supreme Court has long recognized the principle that

6    "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."

7    *Rewis v. United States*, 401 U.S. 808, 812 (1971).  Application of the rule of lenity ensures

8    that criminal statutes will provide fair warning concerning conduct rendered illegal and strike

9    the appropriate balance between the legislature, the prosecutor, and the court in defining

10   criminal liability.  *Liparota v. United States,* 471 U.S. 419, 427 (1985) (rule of lenity

11   compelled a finding that specific intent was element of statute).  Although the rule of lenity is

12   not to be applied where doing so would conflict with the implied or expressed intent of

13   Congress, the rule provides a time-honored interpretive guideline when the congressional

14   purpose is unclear.  *Id.*

15       The rule of lenity is particularly important when this Court considers what weight, if any,

16   to give to the prior district court opinions on the role of subsection (h).  There appear to be

17   only two district courts that have addressed whether subsection (h) is an element.  In *United*

18   *States v. Pugh,* No. 15-CR-116, 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015), the district

19   court found it was a definition, and in *United States v. Ahmed,* No. 15-CR-49, 2015 U.S.

20   Dist. LEXIS 171561 (D.Mn. Sept., 09, 2015), the district court found it was an affirmative

21   defense.  No circuit courts seem to have addressed this issue.  The government chose not to

22   even argue the position taken by the *Ahmed* court.  *See* Opp'n, at n. 4 (declining to argue that

23   subsection (h) is an affirmative defense).  Instead, the government cited *Pugh* extensively in

24   support of its argument that subsection (h) is a definition.  However, Pugh "recognize[d] that

25   plausible alternative readings of the statute are defensible." *Pugh,* 2015 WL 9450598 at 8.  In

26   light of this acknowledgment, the rule of lenity should have compelled a finding that

27   subsection (h) is an element.  That the *Pugh* court did not so hold may have been the result of

28   the fact that *Pugh* did not address the rule of lenity, nor the First Amendment implications of

finding subsection (h) a definition, nor the Supreme Court's decision in *Mathis* defining an element, nor any of the Supreme Court cases explaining the doctrine that statutes should be interpreted to avoid constitutional concerns. *Id.* at 7-11. The *Pugh* court was also not bound by the Ninth Circuit's decision in *Hui Hsiung,* 778 F.3d 738, finding similar language to be an element.

### B. SUBSECTION (H) IS AN ELEMENT BECAUSE OTHERWISE THE STATUTE RAISES CONSTITUTIONAL CONCERNS

In discerning the elements of a criminal statute, the Court must look to whether possible interpretations raise constitutional concerns. *See Gomez v. United States*, 490 U.S. 858, 864 (1989) ("It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question").[4] Here, not only does the plain language of the statute, along with principles of statutory construction, indicate that subsection (h) is an element, but the interpretation advanced by the government would render the statute unconstitutional.

Despite the government's claims to the contrary, Congress amended the material support statute to make it pass constitutional muster. *See United States v. Afshari*, 635 F.Supp.2d 1110, 1120 (C.D. Cal. 2009) ("IRTPA's amendment seems to go further than what HLP I suggested was necessary to save the statute … HLP I suggested that Congress could constitutionally prohibit an individual from advocating on behalf of a foreign terrorist organization where the individual was "under the direction or control" of the foreign terrorist organization ..."); *id.* at 1120 (In "enacting IRTPA, the Congress did what the Ninth Circuit could not do, it rewrote the statute to save it against constitutional attacks.")

---

[4] In *Liparota*, 471 U.S. at 424, the Supreme Court addressed the elements of the food stamp fraud statute. In its Opposition brief, the government cited *Liparota* for the proposition that: "[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Id.* at 424. However, a footnote at the end of that sentence, not cited by the government, stated: "Of course, Congress must act within any applicable constitutional constraints in defining criminal offenses. In this case, there is no allegation that the statute would be unconstitutional under either interpretation." *Id.* at n. 6. Here, there is an allegation that the statute is unconstitutional if subsection (h) is not an element.

REPLY IN SUPPORT OF MOT. TO DISMISS
*SHAFI*, CR 15–582 WHO

That Congress added subsection (h) to ensure the constitutionality of the material support statute is evidenced by three things: 1) the legislative history of the statute which makes clear that it was amended in response to the Ninth Circuit's ruling in *Humanitarian Law Project v. U.S. Department of Justice,* 352 F.3d 382, 385 (9th Cir. 2003); 2) the Supreme Court opinion in *HLP,* which stated explicitly that subsection (h) was added to address constitutional concerns, *HLP,* 561 U.S. at 35 ("We also find it significant that Congress has been conscious of its own responsibility to consider how its actions may implicate constitutional concerns); and 3) the addition of subsection (i) which shows that Congress was concerned with ensuring that the material support statute was not interpreted in a way that jeopardized people's First Amendment rights.  18 U.S.C. § 2339B(i).  Considering this history, it is illogical of the government to argue that subsection (h) is not necessary to the statute's constitutionality.  It is necessary, and, as such, it must be given actual legal significance.  *Mathis,* 136 S.Ct. at 2248 (a term is not an element if it is "extraneous to the crime's legal requirements.")

Moreover, Congress needed to act "within [] applicable constitutional constraints in defining" the material support statute because the material support statute expanded criminal liability beyond what traditionally had been considered criminal.  *Liparota*, 471 U.S. at n. 6. In fact, the Supreme Court stated that the material support statute would possibly not pass constitutional muster, even with the addition of subsection (h), if the statute applied to domestic organizations.  *HLP,* 561 U.S. at 39 ("We also do not suggest that Congress could extend the same prohibition on material support at issue here to domestic organizations.") When a statute expands criminal liability beyond what is traditionally considered criminal, the Supreme Court has been especially cautious in finding contested provisions to be elements that the government must prove beyond a reasonable doubt.  *See Richardson,* 526 U.S. at 819-820 ("Government's arguments for an interpretation of [the contested provision] as means are not sufficiently powerful to overcome the considerations just mentioned, those of language, tradition, and potential unfairness.")

Congress also needed to act "within applicable constitutional constraints" because of the breadth of the material support statute.  In *Richardson,* 526 U.S. at 819, the Supreme Court

1   had to interpret the statute criminalizing participation in a continuing criminal enterprise, 21

2   U.S.C. § 848.  This statute defines "continuing criminal enterprise" (CCE) as involving a

3   violation of the drug statutes where "such violation is part of a continuing series of

4   violations." § 848(c); *Richardson*, 526 U.S. at 815.  The district court judge rejected the

5   defendant's proposal to instruct the jury that it must unanimously agree on which three acts

6   constituted the series of violations.  Instead, the judge instructed the jurors that they must

7   unanimously agree that the defendant committed at least three federal narcotics offenses, but

8   did not have to agree as to the particular offenses.  The Supreme Court reversed.  It held that

9   "a jury in a federal criminal case brought under § 848 must unanimously agree not only that

10  the defendant committed some 'continuing series of violations' but also that the defendant

11  committed each of the individual "violations" necessary to make up that "continuing series."

12  *Id.  See also id.* at 820.  ("To hold that each "violation" here amounts to a separate element is

13  consistent with a tradition of requiring juror unanimity where the issue is whether a

14  defendant has engaged in conduct that violates the law. To hold the contrary is not.")

15       In interpreting the contested provisions as elements, the Supreme Court noted its concern

16  over the breadth of the statute.  *Id.* at 819 ("The CCE statute's breadth also argues against

17  treating each individual violation as a means, for that breadth aggravates the dangers of

18  unfairness that doing so would risk.")  The Court held that "the Constitution itself limits a

19  State's power to define crimes in ways that would permit juries to convict while disagreeing

20  about means, at least where that definition risks serious unfairness and lacks support in

21  history or tradition.  We have no reason to believe that Congress intended to come close to,

22  or to test, those constitutional limits when it wrote this statute." *Id.* at 820.

23       Without the limiting provision of subsection (h), the material support statute, like the

24  CCE statute, is very broad.  If anything the breadth of the material support statute is of even

25  greater concern than the CCE statute because it risks criminalizing innocent conduct (unlike

26  the CCE in which the underlying violations are themselves crimes).  *Liparota*, 471 U.S. at

27  426 (in determining the elements of a statute, a court should consider whether a particular

28  interpretation of the statute would "criminalize a broad range of apparently innocent

1  conduct.")  Subsection (h) is the material statute's bulwark against the criminalization of both

2  innocent conduct and conduct protected by the First Amendment – it protects from

3  prosecution those who act independently of a FTO.  *See HLP*, 561 U.S. at 36; *Schad v.*

4  *Arizona*, 501 U.S. 624, 633 (1991) (plurality opinion) ("[I]t is an assumption of our system of

5  criminal justice ... that no person may be punished criminally save upon proof of some

6  specific illegal conduct").[5]  As a result, subsection (h) must be an element.

7  **C.  UNDER *RUSSELL*, 369 U.S. 749 (1962), EVEN IF SUBSECTION H IS A NOT
       AN ELEMENT, COORDINATION WITH A FTO STILL MUST BE**

8  **ALLEGED IN THE INDICTMENT**

9      If this Court finds that Section 2339B(h) is not element of the offense, it should

10  nevertheless find that the provision is an "essential fact" that must be alleged in the

11  Indictment, as without it there would be no assurance that the grand jury indicted Mr. Shafi

12  for anything other than exercising his constitutional rights.  In the *Russell* case, the Supreme

13  Court considered the sufficiency of an indictment charging an offense under 2 U.S.C. § 192.

14  *Russell,* 369 U.S. at 751-752.  That statute criminalizes a willful failure to answer questions

15  "pertinent to a question under inquiry" by a congressional entity. *Id.*  Each indictment in

16  question failed to identify the subject under congressional subcommittee inquiry at the time

17  the defendants were questioned.  Although the indictment contained the questions themselves

18  that the defendants refused to answer, it failed to state the "subject of the inquiry," thus

19  handicapping the defendants from making an argument that the refused answers were not

20  pertinent to that subject and hence, the failure to answer was not criminal.  Although the

21  "subject of the inquiry" was not an essential element of the crime charged, it was deemed by

22  the Supreme Court to be an "essential fact" necessary for the government to allege in the

23  indictment so the grand jury could make the initial determination as to whether probable

24  cause existed for the crime.  *Id.* at 770 (expressing concern that a defendant could then be

25

26  [5] It bears noting that the Supreme Court clearly held, in addressing whether a specific intent to
    further the FTO's purpose must be read into the statute to address First Amendment concerns,

27  that Section 2339B does not prohibit mere membership in a FTO.  *HLP,* 561 U.S. at 18.  This is
    another reason why subsection (h) must actually matter.  If it is relegated to a "definition" than

28  Section 2339B could, as a practical matter, be applied in ways that do criminalize membership
    in a FTO.

1    convicted on the basis of facts not found by, and perhaps not even presented to, the grand

2    jury which indicted him.)

3         *Russell* is particularly crucial here because numerous court have already found that its

4    holding applies to the material support statute.  Specifically, courts have found that the

5    government must put in the Indictment the "means" with which a person allegedly violated

6    the material support statute (such as providing expert assistance, training, currency, etc.),

7    even though the "means" are listed in the "Definitions" section of the material support

8    statute.  *United States v. Awan*, 459 F. Supp. 2d 167, 175 (E.D.N.Y. 2006), aff'd 384 F.

9    App'x 9 (2d Cir. 2010) (summary order) (citing *Russell* and holding that the government

10   must allege in the Indictment what activity the grand jury considered as material support);

11   *see also United States v. Taleb-Jedi,* 566 F.Supp.2d 157, 166 (E.D.N.Y. 2008); *United States*

12   *v. Ahmed,* 94 F.Supp.3d 394, 425 (E.D.N.Y. 2015); *United States v. Hashmi*, No. 06-CR-442

13   (LAP), 2009 WL 4042841, at *3-4 (S.D.N.Y. Nov. 18, 2009) (finding that an indictment that

14   enumerated specific types of resources that the defendant allegedly provided, "provide[d]

15   ample notice as to what acts are at issue," and allowed the defendant to "prepare a defense

16   based on the information provided"); *cf. United States v. Warsame*, 537 F. Supp. 2d 1005,

17   1011 (D. Minn. 2008) (finding that a bill of particulars that identified that the material

18   support alleged was personnel, currency, and training, was sufficient); *see also* 18 U.S.C. §

19   2339B(g)(4) (providing the definition of "material support or resources").

20        The term "sexually explicit conduct" in child pornography crimes is another example of

21   when a "definition" must be alleged in an Indictment.  In fact, the government cited the

22   example of "sexually explicit conduct" in its Opposition to show how a constitutionally

23   required definition need not be an "element."  Opp'n., at 7.  What the government did not

24   say, however, was that the Ninth Circuit model jury instructions actually require the

25   government to prove "sexually explicit conduct," and the government does include "sexually

26   explicit conduct" in the Indictments when it charges child pornography crimes.  *United States*

27   *v. Gregory Wayne Shook*, Case No. 3:15-CR-00589-VC (N.D. Cal.) [Docket 1] (filed

28   December 17, 2015); *United States v. Edmund Lee*, Case No. 3:14-CR-00314-EMC (N.D.

1  Cal.) [Docket 1] (filed June 12, 2014); *see* Ninth Circuit Model Jury Instruction 8.181.  This

2  shows that regardless of whether a term is labelled a "definition," an "element" or a "means,"

3  if it is essential to the statute's constitutionality, it must be alleged in the Indictment and

4  proved beyond a reasonable doubt by the government.

5  **II.    THE GOVERNMENT BEARS THE BURDEN OF PROOF OF SUBSECTION (H)
       EVEN WHEN IT CHARGES MATERIAL SUPPORT UNDER AN ATTEMPT**

6       **THEORY.**

7        At the end of its Opposition, the government briefly argues that it does not bear the

8  burden of proof of subsection (h) because it charged an attempted violation of the material

9  support statute.  Opp'n., at 11-12.  The only authority cited by the government for this

10  proposition is an unpublished Second Circuit opinion that briefly rejected an insufficiency of

11  the evidence challenge to an attempted material support conviction.  *United States v. Kaziu,*

12  559 F.App'x 32, 37 (2d Cir. 2014).  The Second Circuit did not address at all the

13  constitutional implications of such a holding – there was no mention of the Supreme Court's

14  holding in *HLP*, nor of subsection (i)'s requirement that the statute not be interpreted in a

15  manner that abridges the First Amendment; there was also no mention of the rule of lenity

16  nor the Supreme Court's decision in *Russell,* nor the doctrine of avoiding an interpretation of

17  a statute that conflicts with the constitution.  *Kaziu* therefore provides no guidance on this

18  issue.

19        The government's interpretation, in addition to lacking legal authority, is also

20  contradicted by the express wording of Section 2339B(h).  Subsection (h) includes attempts

21  in its proscription on prosecution.  It says:

22        No person may be prosecuted under this section in connection with the term
         "personnel" unless that person has knowingly … **attempted** to provide … a
23        foreign terrorist organization with 1 or more individuals (who may be or include
         himself) to work under that terrorist organization's direction or control …
24

25        18 U.S.C. § 2339B(h).

26  Congress explicitly stated that subsection (h)'s requirement of coordination applies to

27  attempts (and conspiracies) just as it applies to completed acts.  *Id.*  The government cannot

28  ask this Court to ignore the plain text of the material support statute.  Especially when doing

1    so would render subsection (h) – and also the Supreme Court's decision in *HLP* – utterly

2    meaningless.  Because under the government's interpretation, the government could simply

3    allege an attempt anytime it lacked evidence of coordination.  Separate from the fact that

4    subsection (h) explicitly includes attempts, such a construction would mean people charged

5    under an attempt theory would have less protection for their First Amendment rights than

6    those defendants who actually completed the act of material support.  It cannot be that after

7    the Ninth Circuit went to all the trouble of declaring Section 2339B unconstitutional,

8    Congress went to the trouble of amending it, and the Supreme Court went through the trouble

9    of finding the statute constitutional because of the amendment, that the government can get

10   around subsection (h) by simply saying that because the defendant did not succeed in his

11   alleged goal and only attempted to violate the material support statute, no constitutional

12   concerns exist.

13       Finally, it bears mentioning that the government proffered no response to the argument in

14   the opening brief that under *Ashcroft v. Free Speech Coalition,* 122 S.Ct. 1389, 1396, 1406

15   (2002), the government must bear the burden of proof when First Amendment concerns exist.

16   MTD at 9.

17                                        **CONCLUSION**

18       This Court should follow Congress' express directive in 18 U.S.C. § 2339B(i) and

19   interpret the material support statute consistent with the First Amendment: it should find that

20   the government cannot prosecute someone for providing material support, in the form of

21   personnel, to a FTO unless a grand jury finds that the "defendant knowingly … attempted to

22   provide … a foreign terrorist organization with 1 or more individuals (who may be or include

23   himself) to work under that terrorist organization's direction or control …" 18 U.S.C. §

24   2339B(h), and that the government cannot convict someone unless and until they can prove

25   that very same thing at trial beyond a reasonable doubt.

26   \\

27   \\

28   \\

Respectfully submitted,

March 23, 2017                    STEVEN G. KALAR
Dated                            Federal Public Defender
                                 Northern District of California

                                            /S
                                 _____
                                 GALIA AMRAM
                                 Assistant Federal Public Defender