United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ADAM SHAFI,<br><br>    Defendant. | Case No. 15-cr-00582-WHO-1<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 123 |

## INTRODUCTION

Adam Shafi is charged with violating 18 U.S.C. § 2339B(a)(1)attempting to provide material support (namely himself) to the al-Nusrah Front, a foreign terrorist organization. He argues here that the indictment should be dismissed because it fails to allege sufficiently how he put himself under the organization's direction or control, which he contends is either an element or essential fact that must be included in the indictment. It is neither. Shafi knows what the government believes he was attempting to do and how he was attempting to do it. The motion to dismiss the indictment is DENIED.

## BACKGROUND

### I. THE CRIMINAL COMPLAINT.

On June 30, 2015, the government filed a criminal complaint against Shafi for one count of "attempt[ing] to provide material support to a foreign terrorist organization," as prohibited under 18 U.S.C. § 2339B. Compl. According to the complaint, Shafi "disappeared" during a family trip to Cairo, Egypt, in August 2014. Compl. ¶ 15. His father reported Shafi's disappearance to the United States embassy in Cairo, Egypt, explaining that Shafi had not told anyone in the family where he was going. Comp. ¶¶ 15-16. His father also reported that subsequent to his disappearance, Shafi sent a text message to a relative that he had gone to "protect Muslims."

Compl. ¶ 15. Shafi's father was concerned that he had "been recruited and that it was important to find him quickly to prevent him from doing harm to himself or others at the direction of those who recruited him." Compl. ¶ 16. It was later revealed that Shafi had traveled to Turkey. Compl. ¶ 18. He eventually rejoined his family and returned to the United States. Compl. ¶ 17.

After obtaining a warrant, the FBI conducted a search of Shafi's e-mail account on December 2, 2014. Compl. ¶ 22. The search revealed that once back in the United States, Shafi began researching ways to reach Syria through Turkey. Compl. ¶ 22-24. He had also e-mailed with others regarding possible travel to Turkey. Compl. ¶ 22.

While at home, Shafi led his two younger brothers in "paramilitary style" training exercises, including calisthenics, running through the neighborhood, and "crawling through the mud at a park near their home in Fremont, California." Compl. ¶ 25. Shafi also spoke with others via telephone, making statements such as "I am completely fine with dying with [an unspecified foreign terrorist organization]," discussing living in an area in Syria controlled by that foreign terrorist organization, and condemning America as the enemy. Compl. ¶ 27-38.

On June 30, 2015, Shafi purchased a one-way ticket to Istanbul, Turkey. Compl. ¶ 39. Prior to boarding, he was intercepted by federal agents, who told him they "needed to speak with him" and escorted him to an interview room. Compl. ¶ 41. He told the agents that he was traveling to Turkey because he no longer wanted to live in the United States; he said that he had planned to inform his parents once he arrived in Turkey. Compl. ¶ 42.

Shortly after that, a different federal agent conducted another interview with him. Compl. ¶ 43. Shafi reiterated his desire to move to Turkey. Compl. ¶ 43. The agent asked him if he was traveling to Turkey so that he could cross into Syria and join a foreign terrorist organization. Compl. ¶ 43. Shafi denied this, but noted that there were many refugees in Turkey; he said he would try to help the refugees if he could. Compl. ¶ 43. He said that some people "helped by building a house, while others picked up a gun." Compl. ¶ 43. When the agent asked Shafi if he intended to travel to Turkey so he could "pick up a gun" and become a fighter, Shafi said no. Compl. ¶ 43. With Shafi's consent, the agent then conducted a search of Shafi's backpack,. Compl. ¶ 44. The agent found personal items along with a copy of the Quran and a "small paper-

back book of Islamic prayers," among other things. Compl. ¶ 44.

After completing the interview and search, the agents escorted Shafi out of the airport to public transit so that he could return to his family's home. Compl. ¶ 45. On his way home, Shafi made a phone call that was intercepted by the government. He related his experience at the airport with the agents and expressed that only some "kind of idiot" would say yes in response to the questions asked by the agents regarding his intentions to travel to Syria in order to join a foreign terrorist organization. He then made another phone call, where he expressed similar sentiments about the questions asked by the agents. The person Shafi called asked if he could say where he intended to travel; Shafi responded, "You know where I was going to go . . . I was going to Turkey." Compl. ¶ 48.

## II. PROCEDURAL BACKGROUND.

On February 9, 2017, Shafi moved to dismiss the indictment because it fails to state an essential element of the offense of material support. Motion [Dkt. No. 123] at 3. He claims that an essential element of "material support" to a terrorist organization in the form of personnel is that the personnel must be under the "direction or control" of that terrorist organization. *Id*. at 6. He asserts that neither the criminal complaint nor the indictment state facts to indicate that he attempted to place himself under the "direction or control" of, or attempt to "organize, manage, supervise, or otherwise direct the operation of" a "foreign terrorist organization." 18 U.S.C. § 2339B(h); Compl.;   Dkt. No. 15.

 He argues in the alternative that if the "direction or control" provision is merely affirmative defense that does not need to be pleaded in the indictment, I should require the government at trial to prove beyond a reasonable doubt that Mr. Shafi acted under the "direction or control" of a terrorist organization. *Id*. at 13.

The government opposed, arguing that: (i) the indictment contains all essential elements of attempting to provide material support for a foreign terrorist organization, Opposition [Dkt. No. 133] at 2; (ii) subsection (h) is a "definitional provision" and not an "essential element" of the offense, *id*. at 3-10; and (iii) it need not prove that Shafi acted under the "direction or control" of a foreign terrorist organization at trial. *Id*. at 11-12.

3

In reply, Shafi advanced two new arguments. Reply [Dkt. No. 134]. First, he contends that the rule of lenity requires that subsection (h) be construed as an element of the offense and that it must be pleaded in the complaint. Second, he asserts that regardless of whether the requirements of subsection (h) are elements of the offense or merely definitional, they must be pleaded in the complaint because otherwise the indictment is unconstitutionally vague. Reply 9.

**LEGAL STANDARD**

Rule 7 of the Federal Rules of Criminal Procedure requires an indictment to be "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). To be sufficient, an indictment must "(1) contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against him which he must defend; and (2) enable[ ] him to plead an acquittal or conviction in bar of future prosecutions of the same offense." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (internal quotation marks omitted). However, an indictment that tracks the language of the statute charging the offense is sufficient if it unambiguously sets forth all of the elements necessary to constitute the offense. *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985).

If an indictment fails to include an essential element of the charged offense, it must be dismissed. *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999). An indictment may also be dismissed if it contains an error and there is "some evidence that the error misled the defendant to the defendant's prejudice." *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007).

A party may raise "by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). When considering such a motion, the Court accepts the allegations of the indictment as true. *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993). The indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States v. King*, 200 F.3d 1207, 1217 (9th Cir.1999).

**DISCUSSION**

18 U.S.C. § 2339B makes it unlawful to "knowingly provide[ ] material support . . . to a foreign terrorist organization or attempt[ ] or conspire[ ] to do so." To violate Section 2339B, a

4

person "must have knowledge that the organization is a designated terrorist organization, that the organization has engaged or engages in terrorist activity, or that the organization has engaged or engages in terrorism." "Material support or resources" includes "personnel (1 or more individuals who may be or include oneself)." 18 U.S.C. §§ 2339A(b)(1) and 2339B(g)(4).

In 2003, the Ninth Circuit declared Section 2339B unconstitutional on the basis that the term "personnel" was "impermissibly overbroad, and thus void for vagueness under the First and Fifth Amendments." *Humanitarian Law Project v. U.S. Dep't of Justice*, 352 F.3d 382, 385 (9th Cir. 2003). Congress responded by amending the statute with subsection (h), clarifying and limiting the scope of Section 2339B. That subsection provides:

> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control. § 2339B(h).

In 2010, the Supreme Court overturned the Ninth Circuit's decision, partially on the basis that subsection (h) resolved the statute's overbreadth and vagueness. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35-36 (2010) ("HLP"). This case turns on the meaning of subsection (h).

Each element of a charged crime must be pleaded in the indictment. *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998). As Shafi's indictment does not include any reference to whether he sought to place himself under the "direction or control" of a foreign terrorist organization, the indictment charging Shafi must be dismissed if subsection (h) constitutes an essential element of the offense. On the other hand, if subsection (h) is a definition, the relevant facts do not need to be pleaded in the indictment unless they are necessary to "fairly inform[ ] a defendant of the charge against him which he must defend; and . . . enable[ ] him to plead an acquittal or conviction in bar of future prosecutions of the same offense." *Lazarenko*, 564 F.3d at 1033. Of course, if definitional, the government must prove at trial beyond a reasonable doubt that the defendant's conduct falls within subsection (h).

5

No court of appeal has weighed in on this question. Two district courts have. Each has arrived at a different conclusion: one has found it to be a definitional provision not required to be pleaded in the indictment, *United States v. Pugh*, No. 15-CR-116, 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015); the other has found it to be an affirmative defense. *United States v. Ahmed*, No. 15-CR-49, 2015 U.S. Dist. LEXIS 171561 (D.Mn. Sept. 9, 2015).[1] For the reasons discussed below, I agree with the *Pugh* court.

## I. SUBSECTION (H) IS NOT AN "ESSENTIAL ELEMENT" OF THE OFFENSE, BUT IS DEFINITIONAL.

An element is "[a] constituent part of a claim that must be proved for the claim to succeed." *Element*, BLACK'S LAW DICTIONARY (10th ed. 2014). Because the legislature decides what elements constitute a crime, determining what is an element and what is not is a matter of statutory interpretation. *See Almendarez-Torres*, 523 U.S. at 228. In making such a determination, the court must look to (1) the language and structure of the statute, (2) the legislative history of the provision, and (3) whether the defendant or the government "is better situated to adduce evidence tending to prove or disprove the exception." *United States v. McArthur*, 108 F.3d 1350 (11th Cir. 1997). I will discuss each in turn, and then address other arguments Shafi makes.

### A. The language and structure of the statute suggest that subsection (h) is definitional.

The analysis begins with the wording and structure of the statute itself. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). Section 2339B(a), by its plain language, establishes the activities prohibited under the statute: "knowingly provid[ing] material support or resources to a foreign terrorist organization." Subsection (a) is the only section of the statute that even appears to establish a criminal

---

[1] Neither the government nor Shafi argue that subsection (h) is an affirmative defense. I agree with them and need not discuss further why *Ahmed* is not persuasive.

prohibition or to impose criminal penalties. The remainder of the section, by contrast, turns to other tasks: for example, regulating the extraterritorial application of the statute (subsection (d)), establishing procedures for handling classified information in related civil proceedings (subsection (f)), or providing a rule of construction (subsection (i)).

Even though these other sections do not create additional elements, many of them still operate in a way that significantly regulates the reach and function of the language in subsection (a). For example, subsection (d) expands the scope of the statute to cover offenses that take place outside of the United States. But that does not render it an "element" of the activities made a crime under subsection (a).

The reasoning of the *Pugh* court is instructive. In that case, as in this one, the government indicted the defendant but did not plead "direction or control" by a foreign terrorist organization. The court looked to two of subsection (h)'s statutory features to conclude that subsection (h) was not an element of the offense, but rather a limiting definition. *Pugh*, 2015 WL 9450598, at 8. First, subsection (h) uses the phrase "the term 'personnel,'" placing the word "personnel" in quotation marks. *Pugh*, 2015 WL 9450598, at 8. This indicates that it refers back to the statutory term "personnel" as used previously in the section, to limit the definitional scope of that term. In this sense, it functions much in the same way that any other statutory definition section does. Second, *Pugh* pointed to the structure of subsection (h), noting that it "materially tracks the substantive offense" in Section 2339B(a)(1). The primary distinction between the two sections is solely in the context of "personnel," which subsection (h) limits. *Id.* Construing subsection (h) as an element would be largely redundant because it simply modifies the meaning of the word "personnel" as used in subsection (a). In this way, subsection (h) functions in the same way a statutory definition section does.

Shafi advances three arguments about the language and structure of the statute to assert that subsection (h) should be read as an element of the offense. None is persuasive.

First, Shafi says that subsection (h) "does not begin with the words 'except when' or provided'--words that would tend to indicate an affirmative defense . . . ." Mot. 10. That subsection (h) is not an affirmative defense does not render it an element.

7

Second, Shafi insists that if subsection (h) were a definition, it would be located in the "Definitions" section to section 2339B, "just one subsection above," where "Congress could have easily placed the language of subsection (h)." Reply 2. But it is not always the case that Congress places all definitions of a statute in the "definitions" section. *See, e.g.*, 18 U.S.C. § 921 (the definitions section for firearms prohibitions, which does not define "weapon"). And not all of the relevant definitions are located in subsection (g), the "designated" subsection for definitions: one provision of that subsection incorporates Section 2339A. 18 U.S.C. § 2339B(g)(4).

Third, Shafi argues that subsection (h) should be construed as an essential element under the "plain" text of the statute if construed in accordance to the principles applied by the Ninth Circuit in *United States v. Hui Hsiung*, 778 F.3d 738 (9th Cir. 2014). In that case, the Ninth Circuit addressed whether the Foreign Trade Antitrust Improvements Act ("FTAIA"), an amendment to the Sherman Act, constituted an element of the Sherman Act that the government had to plead in the indictment. *Id*. at 756. The court determined that the FTAIA was an element on the basis of the "plain language of the statute." *Id*. Drawing a parallel between the language of the FTAIA ("[T]his title shall not apply to conduct involving trade or commerce . . . with foreign nations ***unless*** (1) such conduct has a direct, substantial, and reasonably foreseeable effect" (emphasis added)) and subsection (h) on the basis that both provisions use the word "unless," Shafi concludes that *Hui Hsiung* demands that subsection (h) be found to be an element.

The statute at issue in *Hui Hsiung* is too different from the statute at issue here to meaningfully inform the analysis of subsection (h). In *Hui Hsiung,* the court was focused on the Sherman Act and its amendments. As the Supreme Court has found, "[t]he language of . . . the Sherman Act is sweeping in its breadth." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 784-85 (1984). As a result, courts have treated the Act as a "common-law statute," *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 899 (2007), playing a substantial role in limiting its reach.

Section 2339B stands in stark contrast. Congress, not the courts, has played the primary role in shaping the statute and giving it meaning. *See, e.g.*, *HLP*, 561 U.S. at 35 ("Congress has been conscious of its own responsibility to consider how its actions may implicate constitutional

concerns"). The jurisprudence of the Sherman Act makes a poor analog to Section 2339B which, unlike the Sherman Act, "implicates sensitive and weighty interests of national security and foreign affairs," *HLP*, 561 U.S. at 33-34, and reflects determinations made by Congress and the Executive entitled to deference. In *HLP*, for example, the Court distinguished a domestic freedom of speech case, *Cohen v. California*, 403 U.S. 15 (1971), from the case before it by noting that, "Congress and the Executive are uniquely positioned" with regard to the subject matter of Section 2339B. 561 U.S. at 35. Given the substantial differences between the statute at issue in *Hui Hsiung* and the statute at issue here, *Hui Hsiung* does not compel a finding that subsection (h) is an element of the offense.

Even if the *Hui Hsiung* approach were relevant here, it would not be the end of the analysis. After concluding its analysis of the language of the statute at issue, the *Hui Hsiung* court reviewed the legislative history of the statute to find further support for its conclusion. *See id*. at 754-55. While I am always wary of arguments about legislative history, since it is easy to cherry pick, the legislative history of the amendment here supports construing subsection (h) as a definitional provision and not as an element.

**A. The legislative history of subsection (h) supports construing it as a definition, not an element.**

The House Judiciary Committee summary and discussion of the amendment to Section 2339B that inserted subsection (h) explained that it had done so in order to "more clearly define[ ] the term material support." H.R. Rep. No. 108-724, pt. 5, at 173, and pt. 6, at 174 (2004) (2d Sess. November 16, 2004). This, and the other legislative history to which the government points, indicates a congressional intent not to treat subsection (h) as imposing an additional element but rather as providing a definition designed to limit the scope of the statute. *See* Oppo. 6. Shafi identifies nothing in the legislative history to support his argument that subsection (h) is an element.

**B. Construing subsection (h) as a definition instead of an element does not necessarily burden Shafi.**

As to the third factor --which party is best in a position to put forth evidence-- the

9

government is clearly in a better position to shoulder the burden of proof if subsection (h) were an essential element. Shafi would be forced to jump through a series of comically implausible hoops if subsection (h) was an affirmative defense for which he bore the burden of proof. *See* Mot. FN 3 at 12 ("[T]he only way the defense could [establish the affirmative defense] would be . . . to call an al-Nusra leader as a witness to testify that Mr. Shafi never worked for or with al-Nusra"). However, that does not mean subsection (h) must be considered an essential element; it merely means that it is not an affirmative defense. Determining subsection (h) to be a definitional provision does not burden Shafi.

### C. Shafi's other arguments in support of finding subsection (h) to be an element of the offense are unpersuasive.

Shafi advances three other arguments as to why subsection (h) is an essential element of the offense. They rest upon his incorrect assumption that subsection (h)'s "direction or control" provision is either an affirmative defense, or an essential element of the crime. Because I find that subsection (h) is definitional, these arguments are not persuasive.

First, Shafi contends that the "direction or control" provision is "material" to the offense because without the qualification that the personnel be under the "direction or control" of a terrorist organization, the statute is unconstitutionally vague. *See* Mot. 7. He relies on the Ninth Circuit's decision in *Humanitarian Law Project*, which declared 2339B, prior to the addition of subsection (h), to be unconstitutionally vague. 352 F.3d at 382. He notes that Congress added section (h) in response, limiting the scope of the statute so that "[n]o person may be prosecuted under [§ 2339B] in connection with the term 'personnel' unless that person" knowingly provided or attempted to provide "a known terrorist organization with 1 or more individuals to work under that terrorist organization's direction or control." 18 U.S.C. § 2339B(h). In Shafi's view, the Supreme Court's decision in *HLP* "reversed the Ninth Circuit's decision because Congress' addition of subsection (h) rendered the statute constitutional." Mot. 2. Therefore, he reasons that subsection (h) *must* be material, and as a result an element of the offense. Shafi similarly points to Section 2339B(i), which provides that "[n]othing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the

10

United States." Because, he says, the only way to interpret subsection (h) in a constitutional manner is to consider it an element, subsection (h) must be an element.

Though such an argument would have merit if the choice were exclusively between construing the provision as either an essential element or an affirmative defense, that is not the case here. If subsection (h) is a definitional provision and still requires, at a minimum, the government to prove "direction or control" as part of the "material support or resources" element beyond a reasonable doubt at trial, it has the same limiting effect on the scope of the statute. This interpretation keeps the statute well within the bounds of constitutionality. *See HLP*, 561 U.S. at 23. Neither *HLP* nor subsection (i) requires this Court to find subsection (h) to be an element of the offense.

The same part of *HLP* that Shafi uses as support that subsection (h) constitutes a material part of the offense also describes subsection (h) as a "limiting definition," not as an essential element or an affirmative defense. *HLP*, 561 U.S. at 23 ("As for 'personnel,' Congress enacted a *limiting definition* in IRPTA that answers plaintiffs' vagueness concerns." (emphasis added)). Other courts have also characterized subsection (h) as definitional. *See United States v. Stewart*, 590 F.3d 93, 118 n.21 (2d Cir. 2009) (explaining that through subsection (h), "the term ['personnel'] was defined in more detail for purposes of section 2339B"); *United States v. Augustin*, 661 F.3d 1105, 1121 (11th Cir. 2011) (referring to subsection (h) as "the definition of personnel provided under § 2339B")*; United States v. Afshari*, 635 F. Supp. 2d 1110, 1120 (C.D.Cal. 2009) ("the plain text of IRTPA goes further in defining 'personnel' as providing '1 or more individuals . . . to work under that terrorist organization's direction or control'")*; Estate of Parsons v. Palestinian Auth.*, 952 F. Supp. 2d 61, 68 (D.D.C. 2013) (describing subsection (h) as "a more detailed definition of 'personnel'"); *United States v. Abdi*, 498 F. Supp. 2d 1048, 1063 (S.D. Ohio 2007) ("Congress, as part of IRTPA . . . , clarified the term 'personnel' as it is employed in § 2339B by adding a new subsection (h) defining the term, as it is used in the definition of 'material support.'"). The constitutionality (and materiality) of the entire section does not turn on construing subsection (h) as an element as opposed to a limiting definitional provision.

Second, Shafi contends that *Mathis v. United States*, 136 S.Ct. 2243 (2016), requires a finding that subsection (h) is an element. Under his reading of *Mathis*, there are only two possibilities: either subsection (h) is an element, or it has no legal effect whatsoever. But he misreads Mathis. The issue there was identifying the crimes that qualify as predicates under the Armed Career Criminal Act (ACCA), which imposes a mandatory minimum sentence on defendants convicted of being a felon in possession of a firearm if that defendant has three prior state or federal convictions for a "violent felony." 18 U.S.C. §§ 924(e)(1). In conducting its analysis, the Court distinguished between "brute facts or means" by which the defendant committed a crime and the actual elements of the crime. *See id*. at 2248. Contrary to Shafi's argument, when the Court explained that "[f]acts are . . . mere real-world things--extraneous to the crime's legal requirement," it referred to the circumstances or means by which a defendant committed a prior crime, not to the limiting definitions of a statute. *Id*. The Court was not enumerating all possibilities describing statutory provisions; *Mathis* does not stand for the proposition that a given section of a statute must be either an element or meaningless. Subsection (h) still has "legal effect or consequence" if it is construed as a definitional provision. *Mathis*, 136 S.Ct. at 2248.

Next, Shafi argues that whether subsection (h) is an element or not is so unclear and unsettled that the rule of lenity compels the conclusion that subsection (h) is an essential element of the offense. *See* Reply 5. The rule of lenity is used primarily to determine the scope of what a statute prohibits, not the particulars of how the statute constructs those prohibitions. Because the scope of the section is the same regardless of whether subsection (h) is an element or a limiting definition, the rule of lenity does not help in determining whether subsection (h) is an element or a limiting definition.

"The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008); *Rewis v. United States,* 401 U.S. 808, 812 (1971) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."). Shafi insists that Section 2339B is ambiguous largely because of the dearth of precedent, pointing out that there are only two district court decisions on point, and

12

each arrived at a different conclusion. Reply 5. This alone, however, is insufficient to establish "ambiguity" of the statute for the purposes of the rule of lenity, as there are other ways of determining the "ambit" of Section 2339B. *Rewis*, 401 at 812.

Shafi also points to the conclusory statement by the District Court in *Pugh* that "plausible alternative readings of the statute are defensible." *Pugh*, 2015 WL 9450598 at 8. Perhaps. But what is relevant here is whether the specific scope of what is prohibited under the statute is ambiguous. This is consistent with *Rewis*, where the Court addressed a statute prohibiting interstate travel "with the intent to promote, manage, establish, carry on, or facilitate certain kinds of illegal activity." 401 U.S. at 812. The Court focused on the scope of what the statute prohibited: the question before it was whether "travel by mere customers of a gambling establishment should violate" the statute. *Id*. To determine the scope of the statute, the Court did not look to the number of court decisions on its subsections, as Shafi would have me do. Rather, the Court considered the legislative history of the statute, which it found to be "limited." *Id*. It was largely on that basis that the Court determined that the statute was ambiguous, and that the ambiguity of the overall scope should be resolved in favor of lenity. *Id*. That is not the case here, where the intent of Congress in passing subsection (h) is clearly established by an extensive legislative history. *See, e.g.*, H.R. Rep. No. 108-724, pt. 5, at 173, and pt. 6, at 174 (2004).

Because the scope of the section is clearly established by the plain language of the statute after the addition of (h), as well as the clear legislative history, and because the scope is unaffected by whether subsection (h) is construed specifically as a limiting definition or as an element, the rule of lenity does not apply to the present case.

## II. SUBSECTION (H) DOES NOT PERTAIN TO FACTS ESSENTIAL TO THE OFFENSE THAT MUST BE PLEADED IN THE INDICTMENT.

Having determined that subsection (h) is a definitional provision, as opposed to an element, I turn to whether subsection (h) is an essential fact that must be alleged in the indictment. An indictment must include sufficient information as to "fairly inform[ ] a defendant of the charge against him which he must defend; and . . . enable[ ] him to plead an acquittal or conviction in bar of future prosecutions of the same offense." *Lazarenko*, 564 F.3d at 1033. If there is such a

13

deficiency, the indictment is defective and must be dismissed where there is "some evidence that the error misled the defendant to the defendant's prejudice." *United States v. Berger*, 473 F.3d at 1103. Shafi insists that if subsection (h) is definitional, it amounts to an "essential fact" required to be pleaded in the indictment. Reply 9.

Shafi questions whether the grand jury was appropriately informed of the scope of "personnel" under subsection (h). He does not claim that the indictment did not adequately inform him of the crime with which he is charged, which is what determines whether a fact must be pleaded in the indictment. Nor does he assert that he has been prejudiced. *See Berger*, 473 F.3d at 1103. Instead, he relies heavily on the reasoning in *Russell v. United States*, 369 U.S. 749 (1962) to argue for dismissal.

*Russell* actually illustrates the sufficiency of Shafi's indictment. That case involved a statute that criminalized the willful failure to answer questions "pertinent to a question under inquiry" from a congressional entity. *Id*. at 752-53. The indictments of the defendants in *Russell* omitted the subject of the "question under inquiry," preventing the defendants from arguing that the questions they refused to answer were not "pertinent." *Id*. The Court asked whether the omission "amount[ed] to no more than a technical deficiency of no prejudice to the defendant," or whether "the omission deprive[d] the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure." *Id.* at 763. It concluded that the defendants had been prejudiced because the indictment did not "sufficiently apprise[ ] the defendant[s] of what [they] must be prepared to meet." *Id*. It reasoned that this was so because "the very core of criminality" under the statute was "pertinency to the subject under inquiry of the questions which the defendant refused to answer." *Id*. at 764. In expressing its concern about the omissions from the indictment, the Court explained that such omissions "enable[ ] [a defendant's] conviction to rest on one point and the affirmance of the conviction to rest on another. It gives the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture." *Id*. at 766.

The fundamental difference between this case and *Russell* is that Shafi does not claim that he does not know what the government intends to prove against him. The absence from Shafi's indictment of any reference to the requirements of subsection (h) does not create a prejudicial

14

result as in *Russell*. See Dkt. No. 15. Shafi's indictment is more similar to the one in *Hamling v. United States*, 418 U.S. 87 (1974), where the Supreme Court determined that an indictment for mailing an obscene advertising brochure that did not include the definition of obscenity was sufficient. The Court reasoned that because "[t]he legal definition of obscenity does not change with each indictment[,] it is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him." The same is true in the present case. Shafi is fully apprised with what crime has been charged because the relevant definition of "personnel" has been laid out for him—and for the Grand Jury—in subsection (h).

The definition in subsection (h) does not go to the "very core of criminality," as the missing information in *Russell* did. Though significant in limiting the scope of the statute, the "core" of criminality is the attempt to provide material aid a foreign terrorist organization. Both parties know that the government will have to prove that the attempt to provide material support in this case must include that Shafi attempted to place himself under the "direction or control" of the al-Nusrah Front. Merely because those allegations, which were known to Shafi, were not stated explicitly in the indictment does not mean that the government will not have to prove them at trial.

Further, the purported omission from Shafi's indictment does not go to the same concerns that led the *Russell* court to dismiss the indictments against the defendants there. The present case does not involve a "cryptic" form of indictment. Shafi has been fairly informed of the charges against him and the government will not be able to change its argument over time.

Shafi also points by analogy to child pornography jury instructions. The government contends that the Ninth Circuit's Model Criminal Jury Instructions 8.181 through 8.185 "use the statutory definition of 'sexually explicit conduct' as a definition (not an element) in child exploitation cases." Mot. FN 6 at 7. Shafi counters that the jury instructions "actually require the government to prove 'sexually explicit conduct,' and the government does include 'sexually explicit conduct' in the Indictments when it charges child pornography crimes." Reply 10.

Shafi's first point, that the government must prove "direction or control" just as it must prove "sexually explicit conduct" at trial is not in dispute here, as the government conceded at the April 13, 2017, hearing. But his second point is flawed. That the government generally includes

15

"sexually explicit conduct" in its indictments for child pornography does not mean that it is a general constitutional requirement that the government include statutory definitions in indictments when not required under *Russell*. Moreover, the government does not actually include the definition of "sexually explicit" conduct in charging child pornography crimes, as the cases cited by Shafi reveal. Rather, the government simply alleges the content of the images includes "one or more minors engaging in sexually explicit conduct." *E.g.*, *United States v. Gregory Wayne Shook*, Case No. 3:15-CR-00589-VC (N.D. Cal.) [Docket 1] (filed December 17, 2015). Only in the Model Criminal Jury Instructions must the Court specifically explain the definition of "sexually explicit." *See* Ninth Cir. Model Crim. Jury Instruct. 8.181. The child pornography cases, if anything, are consistent with the government's argument that it need not include the definitional provision of subsection (h) in its indictment.

## CONCLUSION

Because I do not find Shafi's arguments persuasive and do not see how he is prejudiced by the way the indictment was returned, I DENY his motion to dismiss.

**IT IS SO ORDERED.**

Dated: May 3, 2017



William H. Orrick
United States District Judge

16