UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>           Plaintiff,<br><br>     v.<br><br>ADAM SHAFI,<br><br>           Defendant. | Case No. 15-cr-00582-WHO-1<br><br>**ORDER DENYING MOTIONS TO SUPPRESS AND FOR A *FRANKS* HEARING AND MOTION FOR NOTICE AND DISCOVERY** |

## INTRODUCTION

Defendant Adam Shafi brings three motions: (1) a motion to suppress, for a *Franks* hearing, and for disclosure of orders, applications, and related materials under the Foreign Intelligence Surveillance Act of 1978 ("FISA"), as amended, 50 U.S.C. § 1801, et. seq.; (2) a motion for notice of and discovery about the use of surveillance pursuant to the FISA Amendments Act, 18 U.S.C. § 1881, and Federal Executive Order 12333, 46 Fed. Reg. 59,941 (Dec. 4, 1981); and (3) an additional motion to suppress and for a *Franks* hearing. These motions were necessarily based on Shafi's supposition of what the classified FISA application documents might show; his lawyers were not allowed to review them under the FISA. This required Shafi to speculate about the record and me to review it *ex parte*, *in camera.* Following that review, I conclude that the government presented probable cause for the surveillance and search and that material evidence was not recklessly omitted from the warrant. For the reasons discussed below, I DENY all of Shafi's motions.

## BACKGROUND

Adam Shafi is a United States citizen. The government became aware of him when his father, Salama Shafi ("Salama"), reported his disappearance during a family vacation in Egypt. Compl. ¶ 15 (Dkt. No. 1). Speaking with the U.S. Embassy in Egypt on August 17, 2014, Salama

expressed fear that Shafi had been recruited by extremists and had traveled to "protect Muslims." *Id.* ¶¶ 15-16. Shafi returned to his family the next day. *Id.* ¶ 17.

On August 19, 2014, Customs and Border Patrol interviewed Shafi's friend, Abdul Niazi, who admitted to meeting with Shafi in Turkey during his disappearance from the family vacation. *Id.* ¶ 18. Niazi said that he and Shafi were visiting mosques in Turkey. *Id.* On September 4, 2014, upon Shafi's return to the U.S., the FBI interviewed him regarding his trip to Turkey. Shafi explained that he left his family in Egypt to observe the Syrian refugee crisis. *Id.* ¶ 19.

On September 22, 2014, an anonymous tipster called the FBI claiming to be a friend of Niazi's brother Yusef. *Id.* ¶ 20. The tipster said that Yusef had told him that Niazi would be going on, or had just returned from, a trip to join ISIS. *Id.* Subsequently, the FBI again interviewed Niazi on September 29, 2014. He stated that he and Shafi had purchased one-way tickets to Turkey but returned because Adam "wasn't feeling it." *Id.* ¶ 21. Niazi revealed his plans to return to Turkey to finish his vacation. *Id.*

On December 2, 2014, the FBI conducted a search of Shafi's e-mail account after obtaining a warrant based on the affidavit of agent Sara Dial. Ex. A (Dkt. No. 146-1)(Dial's application for a search warrant); *Id.* ¶ 22. The search revealed that once back in the United States, Shafi began researching ways to reach Syria through Turkey. *Id.* ¶ 22-24. He had also e-mailed with others regarding possible travel to Turkey. *Id.* ¶ 22. While at home, Shafi led his two younger brothers in "paramilitary style" training exercises, including calisthenics, running through the neighborhood, and "crawling through the mud at a park near their home in Fremont, California." *Id.* ¶ 25. Shafi also spoke with others on the telephone, making statements such as "I am completely fine with dying with [Jabhat al-Nusra]," discussing living in an area in Syria controlled by that foreign terrorist organization, and condemning America as the enemy. *Id.* ¶ 27-38. On December 7, 2014, the tipster called the FBI again and said that Niazi and Shafi had gone to Turkey originally to meet a person who would help them to join ISIL. *Id.* ¶ 26.

On June 30, 2015, Shafi attempted to board a plane to Turkey but was stopped by the FBI. *Id.* ¶¶ 39-42. On July 3, 2015, Shafi was arrested and charged with one count of attempting to provide material support and resources to a foreign terrorist organization, specifically the al-Nusra

front.  *See* Dkt. Nos. 1, 15.

On June 10, 2016, the government filed notice that it intends to offer into evidence "information obtained or derived from electronic surveillance and physical search conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 ("FISA"), as amended, 50 U.S.C. §§ 1801-1812 and 1821-1829."  Dkt. No. 84.  Shafi's motions followed.

## LEGAL STANDARD
### I. REQUIRED CONTENTS OF A FISA APPLICATION

50 U.S.C. §1804(a) provides:

Each application for an order approving electronic surveillance under this subchapter shall be made by a Federal officer in writing upon oath or affirmation to a judge having jurisdiction under section 1803 of this title.  Each application shall require the approval of the Attorney General based upon his finding that it satisfies the criteria and requirements of such application as set forth in this subchapter.  It shall include-

(1) the identity of the Federal officer making the application;

(2) the identity, if known, or a description of the specific target of the electronic surveillance;

(3) a statement of the facts and circumstances relied upon by the applicant to justify his belief that—

    (A) the target of the electronic surveillance is a foreign power or an agent of a foreign power; and

    (B) each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

(4) a statement of the proposed minimization procedures;

(5) a description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance;

(6) a certification or certifications by the Assistant to the President for National Security Affairs, an executive branch official or officials designated by the President from among those executive officers employed in the area of national security or defense and appointed by the President with the advice and consent of the Senate, or the Deputy Director of the Federal Bureau of Investigation, if designated by the President as a certifying official—

    (A) that the certifying official deems the information sought to be foreign intelligence information;

3

(B) that a significant purpose of the surveillance is to obtain foreign intelligence information;

(C) that such information cannot reasonably be obtained by normal investigative techniques;

(D) that designates the type of foreign intelligence information being sought according to the categories described in section 1801(e) of this title; and

(E) including a statement of the basis for the certification that—

(i) the information sought is the type of foreign intelligence information designated; and

(ii) such information cannot reasonably be obtained by normal investigative techniques;

(7) a summary statement of the means by which the surveillance will be effected and a statement whether physical entry is required to effect the surveillance;

(8) a statement of the facts concerning all previous applications that have been made to any judge under this subchapter involving any of the persons, facilities, or places specified in the application, and the action taken on each previous application; and

(9) a statement of the period of time for which the electronic surveillance is required to be maintained, and if the nature of the intelligence gathering is such that the approval of the use of electronic surveillance under this subchapter should not automatically terminate when the described type of information has first been obtained, a description of facts supporting the belief that additional information of the same type will be obtained thereafter.

## II.   REVIEW OF FISA APPLICATIONS

50 U.S.C. § 1806(e) provides in relevant part:

> Any person against whom evidence obtained or derived from an electronic surveillance to which he is an aggrieved person is to be . . . introduced or otherwise used or disclosed in any trial . . . may move to suppress the evidence . . . .

50 U.S.C. § 1806(f) provides in relevant part:

> [W]henever any motion or request is made by an aggrieved person . . . to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under [FISA], . . . the United States district court . . . shall if the Attorney General files an affidavit under oath that disclosure or an adversary-hearing would harm the national security of the United States, review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the

> aggrieved person was lawfully authorized and conducted. In making this determination, the court may disclose to the aggrieved person . . . materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.

50 U.S.C. § 1806(g) provides in relevant part:

> If the [Court] determines that the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure.

The same in-camera review procedures authorize district courts to decide motions to suppress FISA evidence based on inadequate minimization procedures. 50 U.S.C. § 1825(f)-(g).

### III. *FRANKS* EVIDENTIARY HEARING

There is "a presumption of validity with respect to the affidavit supporting [a] search warrant." *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). However, in *Franks*, the Supreme Court held that:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155-56. A *Franks* hearing is held to investigate the veracity of the affiant. *United States v. Dozier*, 844 F.2d 701, 704 (9th Cir. 1988).

A party moving for a *Franks* hearing must make a substantial showing to support the elements entitling it to a *Franks* hearing. *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002). The Ninth Circuit has established a five step test before granting a *Franks* hearing: the defendant must (1) allege specifically which portions of the affidavit are allegedly false, (2) assert that the false statements or omissions were made deliberately or recklessly, (3) present a detailed offer of proof, including affidavits, to support these allegations, (4) challenge only the veracity of the affiant, and (5) challenge statements that are necessary to find probable cause. *United States v. Jaramillo-Suarez*, 950 F.2d 1378, 1387 (9th Cir.1991). A court must conduct a *Franks* hearing to allow a defendant to challenge the sufficiency of an affidavit if he makes "a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a

finding of probable cause." *United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985).

## DISCUSSION

**I.  MOTION TO SUPPRESS, FOR A *FRANKS* HEARING, AND FOR DISCLOSURE OF FISA ORDERS, APPLICATIONS, AND RELATED MATERIALS**

### A.  Motion to Suppress

Shafi moves to suppress all evidence obtained pursuant to or derived from the warrant issued by the Foreign Intelligence Surveillance Court ("FISC"). If the motion to suppress is denied, Shafi alternatively moves for a *Franks* hearing and for disclosure of FISA orders, applications, and related materials. In justifying his motion to suppress, Shafi argues that: (1) there was no probable cause to find that Shafi or Niazi were agents of a foreign power or that Shafi engaged in prohibited activities; (2) the required certifications may be deficient; and (3) the FISA applications may have included intentional or reckless material falsehoods or omissions. The government responds that (1) it satisfied the probable cause requirements of the FISA; (2) the requisite certification(s) complied with the FISA; (3) the duration of the FISA collection was proper; and (4) it complied with the minimization procedures.

A probable cause showing under the FISA requires that the target of electronic surveillance is a foreign power or an agent of foreign power, that the purpose of surveillance is to obtain foreign intelligence information, and that information cannot reasonably be obtained by normal investigative techniques. § 1804(a). The FISA does not provide the relevant standard of review for evaluations of the FISC's probable cause determination. The government concedes that the majority of courts review the FISC's probable determination *de novo* rather than under a more deferential standard. Oppo. at 21 (Dkt. No. 171). Accordingly, I follow the majority and review the sufficiency of the submitted materials *de novo*. I also presume that certifications contained in the applications are valid.

Shafi argues that the government could not have supported, and did not support, the FISA warrant with probable cause. Shafi contends that nothing in the evidence suggests that he or Niazi is either an "agent of a foreign power" or was engaged in one or more prohibited activities. *See* 50 U.S.C. § 1804(b)(2).

1    Under the FISA, an agent of a foreign power is any person who "knowingly engages in
2    clandestine intelligence gathering activities for or on behalf of a foreign power, whose activities
3    involve or may involve a violation of the criminal statutes of the United States," *id.*
4    § 1801(b)(2)(A), or who "knowingly engages in …international terrorism, or activities that are in
5    preparation therefor, for or on behalf of a foreign power," *id.*, § 1801(b)(2)(C). An individual who
6    knowingly aids and abets another engaging in such activities is also considered an agent of a
7    foreign power. *See id.* § 1801(b)(2)(D). In supporting a FISA warrant, the government can thus
8    present evidence establishing probable cause that a target knowingly engaged in, aided and abetted
9    a foreign power engaging in clandestine intelligence activities or international terrorism. *See id.*;
10   *see also United States v. Turner*, 840 F.3d 336, 341 (7th Cir. 2016) ("FISA authorizes surveillance
11   and searches based on probable cause that the target is an "agent of a foreign power," which
12   relates to "any person" engaged in certain activities (or knowingly aids and abets a person so
13   engaged) on behalf of a foreign power").

     As part of its FISA application materials in this case, the government submitted a
15   certification in the form of a Declaration and Claim of Privilege from the Attorney General that
16   "the unauthorized disclosure of the FISA Materials could be expected to cause exceptionally grave
17   damage to the national security of the United States." Dkt. No. 171-1. This declaration is
18   sufficient to justify an *ex parte, in camera* review of the FISA application and materials. *See* 50
19   U.S.C. § 1806(f). That said, such a review puts a judge in an unusual position. Courts are a place
20   of public record, where parties are ordinarily free to discover what the other side knows and argue
21   from the same base of information. Our democratic principles and system of justice depend on the
22   American people being informed about the activities of our government. But throughout our
23   history, as a 2009 Executive Order points out, our national defense has required that certain
24   information be kept in confidence in order to protect our citizens, democratic institutions,
25   homeland security, and interactions with foreign nations. Exec. Order No. 13,526, 75 Fed. Reg.
26   707 (Dec. 29, 2009). With this tension of principles in mind, when I conducted the *ex parte, in*
27   *camera* review I tried to consider how a skeptical defense counsel might view the evidence.

28   Based on that review, I find that the government presented sufficient evidence in its FISA

7

applications to establish probable cause for the surveillance and search.  While it may be true that a unilateral desire to conspire with someone to engage in activities in preparation for international terrorism or a violation of criminal statues of the United States is not enough to show probable cause, as Shafi argues, that is not the case the government is bringing.  The government's evidence identified a web of activities conducted by Shafi that goes beyond merely traveling to Turkey.  The FISA application established the requisite probable cause and met the requirements of the FISA.  *See id.* § 1804(a).  The certifications were not deficient.  Foreign intelligence was the "significant purpose" of the FISA surveillance.  The government also used sufficient minimization procedures and did not exceed any time limits imposed for the surveillance and searches.

Shafi also expressed concern that the government relied on false or misleading information in its FISA application.  In my review, I paid close attention to the facts as asserted by Shafi.  Nothing in the applications suggests that the government relied on any material falsehood or omission in its FISA application.  The evidence gathered from the FISA surveillance and searches is not subject to suppression.  *See U.S. v. Leon*, 468 U.S. 897 (1984).

### B. Motion for a *Franks* Hearing and for Disclosure of FISA Orders, Applications, and Related Materials

Shafi alternatively moved for an order permitting his counsel to review the government's classified materials submitted to the FISC in support of its applications for the FISA searches and surveillance in addition to any classified evidence obtained during the course of its surveillance and searches of Shafi.  The government opposed the motion and requested that I instead conduct an *ex parte, in camera* review of its FISA applications to determine whether the surveillance and searches were lawful.

If an *ex parte, in camera* review of the FISA material raises a concern as to the foundation for the FISA surveillance order, the material may be disclosed to the defendant.  The FISA allows a reviewing court to disclose such materials "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C. § 1806(f).  A court "has the discretion to disclose portions of the documents, under appropriate protective procedures, only if [the court] decides that such disclosure is necessary to make an accurate determination of the

8

legality of the surveillance." *U.S. v. Duggan*, 743 F.2d 59, 78 (2d Cir. 1984).

Shafi claims that disclosure is required because the FISC's probable cause determination was not supported by the evidence and the government failed to comply with FISA's minimization procedures. Shafi also contends that disclosure could be sufficiently limited and protected by the protective order and, given his lawyer's security clearance, should be compelled. I am not persuaded. Disclosure is allowed only where it implicates the foundation of the FISA surveillance order. *See U.S. v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987) ("reject[ing] the notion that a defendant's due process right to disclosure of FISA materials turns on the [security] qualifications of his counsel"). Defense counsel's security clearance does not negate the requirements for disclosure.

As noted, I conducted an *ex parte, in camera* review of the government's application and certification materials presented to the FISC. Disclosure of these materials to defense counsel is unnecessary to make an accurate determination as to the legality of the surveillance and searches, and is neither required nor appropriate in this case.

As to the motion for a *Franks* hearing, Shafi did not make "a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *Stanert*, 762 F.2d at 780. During my review of the materials presented to the FISC, I saw nothing in the FISA applications that suggested that the government relied on false or misleading information in its FISA certifications. Although I cannot describe the content of the FISA applications, the government supported the applications in more than sufficient detail. There is no basis for a *Franks* hearing.

### C. Constitutionality of the FISA's "Significant Purpose" Test

Even if the FISA applications meet statutory requirements, Shafi argues that his motion to suppress should be granted because the FISA, as amended, is unconstitutional. Shafi contends that the case history of the FISA clearly demonstrates that the non-criminal, primary purpose standard was essential to upholding FISA's constitutionality. By replacing the "primary purpose" test with the "significant purpose" test, the Patriot Act "eliminated a fundamental piece of the foundation upholding FISA's constitutionality." Mot. at 34.

9

1     The Ninth Circuit has yet to address the constitutionality of the "significant purpose" test.
2  But both the Third and Fifth Circuit have explicitly rejected Shafi's argument. *United States v.*
3  *Aldawsari*, 740 F.3d 1015, 1018 (5th Cir. 2014) ("searches conducted pursuant to FISA do not
4  violate the Fourth Amendment so long as they are not performed with the 'sole objective of
5  criminal prosecution'"); *United States v. Duka*, 671 F.3d 329, 344 (3rd Cir. 2011) (concluding that
6  "FISA's 'significant purpose' standard is reasonable in light of the government's legitimate
7  national security goals"). I adopt the analysis of those cases. The FISA's "significant purpose"
8  test is reasonable under the Fourth Amendment. Shafi's constitutional argument against the
9  FISA's "significant purpose" test fails.
10     Accordingly, Shafi's motion to suppress, for a *Franks* hearing, and for disclosure of the
11  FISA orders, applications, and related materials is DENIED.

## II. MOTION FOR NOTICE OF AND DISCOVERY ABOUT THE USE OF SURVEILLANCE PURSUANT TO THE FISA AMENDMENTS ACT AND FEDERAL EXECUTIVE ORDER 12333

14     Shafi moved for notice of the surveillance used in his case pursuant to the FISA
15  Amendments Act ("FAA") and Executive Order 12333 and for discovery about the FAA and
16  Executive Order 12333 programs used to conduct the surveillance. The FAA amended the FISA
17  in 2008 and added Section 702, which allows the Attorney General and the Director of National
18  Intelligence to acquire foreign intelligence information by jointly authorizing the surveillance of
19  individuals who are not "United States persons" and are reasonably believed to be located outside
20  the United States. *Clapper v. Amnesty International*, 568 U.S. 398, 401 (2013). Executive Order
21  12333 puts forth the intelligence gathering responsibilities of the United States intelligence
22  agencies. *See* 46 Fed. Reg. at 59942.
23     Shafi argued that the federal government must give notice of the section 1881(a)
24  surveillance and the Executive Order 12333 surveillance. The government argues that an *ex parte,*
25  *in camera* review will demonstrate that it has complied with its notice and discovery obligations.
26  The government is correct. My *ex parte, in camera* review revealed that Shafi's motion does not
27  apply to the circumstances of the FISA applications and subsequently gathered intelligence in this
28  case. The government has satisfied its disclosure obligations. Shafi's motion for notice and

1  discovery is DENIED as moot.

## III. MOTION TO SUPPRESS AND FOR A *FRANKS* HEARING

Shafi also brings a motion to suppress and for a *Franks* hearing regarding evidence derived from two search warrants granted per Special Agent Dial's affidavit. A court must conduct a *Franks* hearing to allow a defendant to challenge the sufficiency of an affidavit if he makes "a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *Stanert*, 762 F.2d at 780. Shafi argues that Dial recklessly omitted material information from her warrant affidavit and that, if the material was included, the affidavit would not support a finding of probable cause.

Shafi alleges that Dial recklessly omitted: (1) facts from an interview with Salama on September 4, 2014; (2) statements made by Niazi and information regarding his trip to Turkey; and (3) information regarding Yusuf's criminal past. As an initial response, the government contends that the search warrants in question did not yield any evidence to suppress, making Shafi's motion moot. Even if there was evidence recovered and the affidavits had included the omitted information, the government argues that the affidavits would still support a finding of probable cause. While there may be nothing to suppress as a result of these warrants, Shafi argues that the omissions from Dial's affidavit infect the other searches and evidence gathered in this case. I will address the alleged omissions below.

### A. Statements by Salama

Shafi argues that Dial omitted statements from a September 4, 2014 interview that provided context to Salama's statements made to the U.S. Embassy in Cairo and other statements that contained exculpatory information regarding Shafi's future plans. Salama also provided more information regarding Shafi's time in Turkey. The government counters that the facts contained in the affidavit had a similar exculpatory effect and included information regarding Shafi's time in Turkey.

I agree with the government. Dial's affidavit contained Shafi's own statements regarding his supposed purpose for traveling to Turkey (to help with the refugee crisis). Inclusion of his

11

father's statements further contextualizing Shafi's disappearance from his family vacation was not a material omission because they do not go to the foundation of the probable cause analysis. Dial was not reckless to exclude them.

### B. Information About Niazi

Shafi also argues that Dial omitted information related to Niazi. Shafi says that Dial left out the extent of Niazi's knowledge about his return ticket to Turkey. But this information became known after Dial had completed her affidavit. She could not have included it in her affidavit; it was not reckless to omit it.

Shafi also contends that Niazi expressed no intentions to travel to Syria and fight and even expressed disdain towards the leader of ISIL, accusing him of being a CIA operative. Shafi asserts that these statements were a direct condemnation of ISIL and materially change the probable cause calculus. The government responds that Niazi's statements were merely an expression of a conspiracy theory and suggest an "even greater susceptibility of recruitment than presented to the magistrate."

The government's argument is more persuasive. Niazi's statements are not an unequivocal condemnation of ISIL. And Dial's failure to include that Niazi did not explicitly express an intention to travel to Syria was not reckless. She included what Niazi said his travel plans were. She was not required to list all the places those explicit plans did not include. These omitted statements are not material and their omission was not reckless.

### C. Yusef's Credibility

In regards to Yusef's credibility, Shafi contends that Dial did not report that Yusef had been fired from his job, had recently been evicted, and had a history of domestic violence towards his immediate family and his ex-girlfriend. Shafi also argues that Dial recklessly failed to mention Yusef's criminal record and that Yusef thought that his brother had gone to Jordan rather than Turkey. Shafi asserts that the inclusion of Yusef's past would have undermined the reliability of the information he provided to the confidential informant.

The government correctly points out that nothing in Yusef's past as alleged by Shafi suggests a history of fraud or dishonesty that would undermine the veracity of his information.

1   The negative information about him is not material to whether probable cause to issue a warrant
2   exists.  Further, Shafi presented no evidence that suggests that the confidential informant should
3   not be believed.  Accordingly, it was not reckless for Dial to omit this information from her
4   affidavit.

### D. Probable Cause Determination

Shafi has not made "a substantial preliminary showing" that facts were recklessly omitted from Dial's affidavit.  *Stanert*, 762 F.2d at 780.  Even if such a showing could be made and the omitted facts were included in Dial's affidavit, the facts still support a probable cause determination.

Shafi disappeared without explanation while on vacation with his family in Egypt.  He traveled to Turkey, a common entry point into Syria, on a one-way ticket to meet Niazi.  His father contacted the U.S. Embassy in Egypt and expressed fear that he had been recruited by extremists.  Salama later retracted those statements, claiming that he wanted to get the Embassy's attention because he did not feel they were adequately concerned with Shafi's disappearance.  And Shafi returned to the U.S. with his family after informing them he had merely wanted to observe the Syrian refugee crisis.  But this justification for visiting Turkey did not match Niazi's reasons (to visit mosques).  Shortly after Shafi returned from Egypt, an anonymous tipster claiming to be Niazi's brother's friend provided more details regarding Shafi's trip to Turkey, significantly including that Niazi and Shafi had gone to Turkey to join ISIL.  Altogether, these facts are sufficient for a showing a probable cause supporting the issuance of a warrant.

A *Franks* hearing is inappropriate under these circumstances.  Shafi's motion is DENIED.

**CONCLUSION**

For the reasons above, I DENY: Shafi's motion to suppress, for a *Franks* hearing, and for disclosure of FISA orders, applications, and related materials; his motion for notice of and discovery about the use of surveillance pursuant to the FAA and Federal Executive Order 12333; and, his additional motion to suppress and for a *Franks* hearing related to the Dial affidavit.

**IT IS SO ORDERED.**

Dated: December 7, 2017

William H. Orrick
United States District Judge