ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JEFFREY SHIH (CABN 296945)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
jeffrey.shih@usdoj.gov; 415-436-7168
waqar.hasib@usdoj.gov; 415-436-7261

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:15-CR-582 WHO |
| Plaintiff, | |
| | UNITED STATES MOTION TO LIMIT EXPERT TESTIMONY OF DEFENSE EXPERT DR. MARC SAGEMAN [1] |
| v. | |
| ADAM SHAFI, | Hearing Date;    June 21, 2018 |
| Defendant. | Hearing Time:    1:30 p.m. |

The United States respectfully submits this motion to limit the testimony of the defendant's proposed expert witness on terrorism and political violence, Dr. Marc Sageman. For the reasons described below, some portions of Dr. Sageman's proposed testimony are probably appropriate grounds for an expert witness. Other portions, however, are plainly not, particularly Dr. Sageman's assessments of the defendant's mental state. Accordingly, this Court should issue an order limiting the testimony of Dr. Sageman. Similar limiting orders have been issued in other cases in which Dr. Sageman has testified. In the event this Court entertains allowing testimony from Dr. Sageman about the defendant's

---

[1]    Pursuant to this Court's standing order for criminal cases, time has properly been excluded from May 10, 2018, through the disposition of this motion under 18 U.S.C. § 3161(h)(1)(D). Docket No. 205. Therefore, with prior time exclusions, 70 days remain under § 3161.

US MOTION TO LIMIT EXPERT TESTIMONY            1

mental state, this Court should hold an evidentiary hearing first to determine whether such testimony is appropriate for grounds an expert witness.

## I. BACKGROUND

This matter is currently set for a jury trial to begin on August 27, 2018. In anticipation of that trial, this Court ordered the parties to submit expert disclosures to each other by March 8, 2018. The defendant proposed calling Dr. Marc Sageman as a witness to testify about numerous topics. A complete copy of the defendant's expert notice that was served on the government is attached as Exhibit 1 to this motion. However, in summary, the defendant proposed calling Dr. Sageman to:

- Rebut testimony of Evan Kohlmann, or any other expert, who may testify about the "profile of 'homegrown terrorists'";

- Testify about his "assessment of Mr. Shafi, his actions, and how they fit into the larger phenomenon of Islamic terrorism;

- Testify about background world events, including the popular uprising in Egypt and the civil war in Syria, and how such events shaped young western Muslim men, particularly those of Egyptian descent like Mr. Shafi;

- Testify about the differences amongst various terrorist organizations, including the Islamic State of Iraq and Syria and the Al-Nusra Front, and about how young western Muslims transitioned from political activism to unlawful political violence;

- Testify that, in his opinion, "Mr. Shafi was one of a large number of Muslims with genuine, conservative religious views," that Mr. Shafi "was enamored with the Arab Spring, but grew disillusioned over time," and that Mr. Shafi and his family conflicted over "Mr. Shafi's desire to live a pious religious life in a Muslim country."

*See* Exhibit 1. The Court further ordered any *Daubert*-related motions to be filed by May 24, 2018. Docket No. 198. Accordingly, the government files this motion to preclude Dr. Sageman from testifying about the defendant's mental state, and to limit him to only those topics that are appropriate grounds for expert testimony.

## I. APPLICABLE LAW

Experts may testify in the form of an opinion only if their testimony meets four specific criteria:

- a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
- b) The testimony is based on sufficient facts or data;
- c) The testimony is the product of reliable principles and methods; and
- d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. It is axiomatic that, under Rule 702, the Court must perform a gatekeeping function to ensure that proposed expert testimony is both relevant and reliable. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). The Ninth Circuit has enumerated certain aspects of expert testimony that a court can review in performing its gatekeeping function:

- Whether the opinion is based on scientific, technical, or other specialized knowledge;
- Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;
- Whether the expert has appropriate qualifications-i.e., some special knowledge, skill, experience, training or education on that subject matter;
- Whether the testimony is relevant and reliable;
- Whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury);
- Whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time.

*United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2003)(internal citations removed).

Importantly, expert witnesses in criminal cases are flatly precluded from opining on questions of intent. *See* Fed R. Evid. 704(b)("an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone"); *see also United States v. Campos*, 217 F.3d 707, 711 (9th Cir. 2000), quoting S. Rep. No. 98-225 at 230-31, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3412-13 ("the rationale for precluding ultimate opinion psychiatric testimony extends … *to any ultimate mental state of the defendant that is relevant to the legal conclusion sought to be proven*.')(emphasis added).

The Ninth Circuit has applied Rule 704(b) in the context of expert witnesses testifying in terrorism cases. *United States v. Hayat*, 710 F.3d 875, 900-03 (9th Cir. 2013). There, the government offered an expert who testified that the "kind of person" who carried with him the text of a particular prayer in Arabic was one "who perceives him or herself as being engaged in war for God against an enemy, and that such a person "'was completely ready' to commit 'an act of warfare against a perceived enemy.'" The majority commented that such testimony would likely constitute a violation of Rule 704(b), looking only at the plain language of the rule ("these and similar statements made by [the government's expert witness] could be held to violate Rule 704(b) were we considering the scope of that

rule *ab initio*.")  However, the majority allowed the testimony anyway, relying on Ninth Circuit precedent that interprets Rule 704 much more narrowly than the language of the rule itself might suggest.  *Hayat*, 875 F.3d at 901-02, *citing United States v. Younger*, 398 F.3d 1179, 1189 (9th Cir. 2005).  Specifically, the majority concluded that expert testimony is permissible "so long as the expert does not draw the ultimate inference or conclusion for the jury, and the ultimate inference or conclusion does not necessarily follow from the testimony."[2]  *Id., quoting United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997).  Further, expert witness testimony is permissible as long as the expert does not comment *directly* on the mental state of the defendant.  *Id., citing Younger,* 398 F.3d at 1190.

## II.    ARGUMENT

### A.    Some of Dr. Sageman's Proposed Testimony Is Probably Appropriate

At the outset, the government notes that under *Daubert*, *Kumho Tire*, and *Hayat*, at least some of Dr. Sageman's proposed testimony is probably appropriate.  Dr. Sageman has been qualified as an expert witness on terrorism and political violence, and has testified in that capacity in federal terrorism-related criminal trials.  *See*, *e.g.*, *United States v. Mohamud*, 10-CR-475-KI (D. Or.), Trial Transcript pgs. 2427-2507.   Thus, to the extent that he relies on his specialized knowledge to testify about background world events such as the Arab Spring and the civil war in Syria, the government would agree that such testimony is appropriate and admissible, assuming the defense lays proper foundation for it at trial.  So too would his proposed testimony about the differences between terrorist organizations operating in Syria during the Syrian civil war, and the role that the Internet played in that conflict.  The government may question how Dr. Sageman's extensive experience in Afghanistan makes him an expert to testify about events in Syria, but such questions are probably more appropriate material for cross-examination, not for a motion to preclude.

### B.    Some of Dr. Sageman's Proposed Testimony is Plainly Inappropriate

Dr. Sageman's proposed testimony becomes more problematic when he offers opinions about the defendant's mental state.  For example, the defendant states in his expert disclosure that "Dr. Sageman

---

[2] There was a dissenting opinion in *Hayat* that heavily criticized the majority.  The dissent would have found that the district court plainly erred by admitting the expert testimony, because the testimony violated Rule 704(b) and "usurped the jury's role as finder of fact."  *Hayat*, 710 F.3d at 905 (Tashima, J., dissenting).

US MOTION TO LIMIT EXPERT TESTIMONY          4

will testify that in his opinion, Mr. Shafi was one of a large number of Muslims with genuine conservative religious views….[and] that Mr. Shafi was enamored with the Arab Spring and the popular uprising in Egypt specifically, but grew disillusioned over time." The defendant also states that "Dr. Sageman will testify about Mr. Shafi's difficult family life and the tensions in his family over Mr. Shafi's desire to live a pious religious life in a Muslim country." Such testimony is plainly inappropriate for numerous reasons.

First and foremost, any proposed expert testimony from Dr. Sageman about the defendant's mental state would violate Rule 704(b) on its face. Testifying that Mr. Shafi simply wanted to live a pious religious life in a Muslim country is the equivalent of testifying that Mr. Shafi lacked intent to provide material support to a terrorist organization. That is an element of the crime charged. As Rule 704(b) instructs, such "matters are for the trier of fact *alone.*" Fed. R. Evid. 704(b)(emphasis added).

Expert testimony from Dr. Sageman about the defendant's mental state would run afoul even of the much narrower interpretation of Rule 704(b) set forth in *Hayat*. In *Hayat*, the majority reluctantly concluded that under Ninth Circuit precedent, expert testimony about intent was permissible, so long as the expert "does not draw the ultimate inference or conclusion for the jury, and the ultimate inference or conclusion does not necessarily follow from the testimony." *Hayat*, 710 F.3d at 901, *quoting Morales*, 108 F.3d at 1038. Further, under *Hayat*, expert testimony about intent is permissible so long as an expert does not directly comment on a defendant's mental state. *Id.*, *citing Younger*, 398 F.3d at 1190. Yet that is precisely what the defendant would have Dr. Sageman do: testify directly about what was going on inside the defendant's head, i.e., his love for the Arab Spring, his growing disillusionment over time with that movement, and his desire to live a pious life in a religious Muslim country. Thus, even under the narrow interpretation of Rule 704(b) set forth by the majority[3] in *Hayat*, Dr. Sageman's testimony about the defendant's mental state is inappropriate.

Expert testimony from Dr. Sageman about the defendant's mental state is also inappropriate because it would offer the defendant a backdoor to testify, without being subjected to cross-examination.

---

[3] Sageman's testimony would be even more out of bounds if it were up to the dissenting judge in *Hayat*, with whom the majority apparently agreed to some extent. *See, e.g.*, *Hayat*, 710 F.3d at 902 ([t]hus, while we might like to agree with Judge Tashima that the expert evidence in this case crossed the Rule 704(b) line, we are prevented from doing so by this Court's caselaw.")

There is no doubt that Dr. Sageman's opinions about the defendant's mental state are based primarily, if not entirely, on his personal interviews with the defendant. *See* Exhibit 1.  Allowing Dr. Sageman to testify as an "expert" as to what the defendant told him would be tantamount to allowing the defendant to use Dr. Sageman as a mouthpiece.  That is precisely what the hearsay rule forbids.  Fed. R. Evid. 801(c); *United States v. Fernandez*, 839 F.2d 639 (9th Cir. 1988).  As just one example, if the defendant wants to offer evidence that he and his family were at odds with each other about the manner in which he wanted to lead his life, he could do so by testifying himself.  He does not need the "specialized knowledge" of an expert witness to help explain that family dynamic to a jury.  Any juror with a family could conceivably relate.

It would also be inappropriate for Dr. Sageman to testify about the defendant's genuine, religious conservative views and his desire to live a pious religious life in a Muslim country, because such testimony is merely evidence of good conduct of the defendant.  Evidence of good conduct is generally not admissible to show that a defendant acted in conformity therewith on a particular occasion.  Fed. R. Evid. 404(a); *see*, *e.g.*, *United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989)(upholding trial court's decision under Rule 404(a) to bar evidence offered to show that defendant was a patriotic, pro-government individual unlikely to engage in acts of terrorism).  There is an exception to the general rule under Fed. R. Evid. 404(a)(2) where a defendant offers evidence of a "pertinent trait" of the crime charged.   However, the government fails to see how evidence of the defendant's genuine, religious conservative views or his desire to live a pious religious life in a Muslim country are pertinent to the charge of providing material support to a foreign terrorist organization.  And again, it is difficult to see why the defendant would need the specialized knowledge of an expert to explain to a jury that he had genuine, religious conservative views.  If the defendant wants the jury to hear that evidence, he can offer it through his own testimony.

The defendant in his expert disclosure also advised that he would call Dr. Sageman to rebut any government experts, including but not limited to Evan Kohlmann, who may testify about the profiles of homegrown terrorists.  It is hardly surprising that the defendant specifically mentioned Kohlmann. Sageman and Kohlmann have had a long-running, acerbic, and at times personal battle between them regarding the validity of each other's research.  *See*, *e.g.* Expert Report and Affidavit of Marc Sageman,

M.D., Ph.D., filed in *United States v. Babar Ahmad*, 2014 WL 11242176 (E.D.N.Y. 2014)(describing Kohlmann's work as "sloppy," "grossly one-sided," and "lacking integrity.")  The government is not calling Kohlmann as a witness, however.  Accordingly, the defendant's preemptive attempt to counter Kohlmann by calling Dr. Sageman is moot.

The defendant's wariness of profile testimony, however, is well-founded.  The government does not anticipate asking its expert witness, Dr. Lorenzo Vidino, whether the defendant fits any particular profile of a homegrown terrorist.  By the same token, though, the defendant should be precluded from asking Dr. Sageman the same question.  In this regard, the order issued by the district court in the "Christmas Tree bomber" case in Portland, in which Dr. Sageman testified, is instructive.  There, the district court limited the testimony of Dr. Sageman (and Evan Kohlmann, whom the government called in that case):

> I am concerned, however, about an expert labeling defendant as a homegrown terrorist, a contemporary violent extremeist, or on the flip side, a person who had not turned to violence or traversed the staircase to terrorism prior to government contact.  These labels are code words for predisposition.  Thus, I prohibit testimony on this ultimate mental state. The experts may explain the factors and indicators derived from their research; may explain whether people demonstrating these factors and indicators are violent or not, in the experts' experience; and may explain how well defendant fit the factors and indicators.  But the experts may not testify on the ultimate label they would affix to defendant.

*United States v. Mohamud*, 10-CR_00475-KI, Order filed Jan. 4, 2013 (Docket No. 355).   A similar order was issued in another case in which Dr. Sageman and Kohlmann both testified.  See *United States v. Mehanna*, 09-CR-10017-GAO, Transcript of Hearing, Oct. 26, 2011 (Docket No. 385)(noting that to the extent an expert says "in my opinion he is a homegrown terrorist," or, in the alternative, that he is not a homegrown terrorist, both statements would be inappropriate grounds for expert opinions).  This Court should issue a similar order, precluding testimony on the defendant's mental state.

It should be noted that although Dr. Sageman personally interviewed the defendant and is a trained psychiatrist and sociologist, the defendant has not invoked Rule 12.2 of the Federal Rules of Criminal Procedure to have him testify about a mental disease, defect or other mental condition.  Thus, to the extent the defendant hopes to elicit testimony from Dr. Sageman about any depression or any other mental condition the defendant may have been suffering from, such testimony should be barred

US MOTION TO LIMIT EXPERT TESTIMONY          7

unless the defendant invokes and complies with Rule 12.2. Even then, it is instructive that under Rule 12.2, statements made by a defendant in the course of any examination are inadmissible in any criminal proceeding except on an issue regarding mental condition. Fed. R. Crim. P. 12.2(c)(4). Thus, even if the defendant were to invoke Rule 12.2, testimony that the defendant was enamored with the Arab Spring and disillusioned by the war in Syria, or statements that he simply wanted to lead a pious life in a Muslim country, would likely be inadmissible at trial.

### C. If the Court Entertains Allowing Testimony About the Defendant's Mental State, Then It Should Hold an Evidentiary Hearing First

Any testimony by Dr. Sageman about the defendant's mental state, including his feelings about the Arab Spring or the Syrian civil war, or his desire to lead a pious religious life in a Muslim country, would be inappropriate, for all of the reasons discussed above. This Court can and should limit such testimony. In the event the Court entertains allowing it, then such testimony at the very least merits further exploration at a pretrial evidentiary hearing. Specifically, the defendant's expert notice fails to identify explain how such testimony is based on any scientific, technical, or other specialized knowledge, other than Dr. Sageman's interviews with the defendant. Moreover, the defendant's expert notice fails to identify how any such testimony is the product of reliable principles and methods.

## IV. CONCLUSION

Some portions of Dr. Sageman's proposed testimony are probably appropriate grounds for expert testimony. Other portions, however, are plainly not, particularly Dr. Sageman's assessments of the defendant's mental state. Accordingly, this Court should issue an order limiting the testimony of Dr. Sageman. Similar orders have been issued in other cases in which Dr. Sageman has testified. In the event the Court entertains allowing testimony about the defendant's mental state, then it should hold an evidentiary hearing to determine whether such testimony is appropriate for an expert witness.

Respectfully submitted,

ALEX G. TSE
Acting United States Attorney

DATED: May 24, 2018

_____/s/_____
JEFFREY SHIH
S. WAQAR HASIB
Assistant United States Attorneys

US MOTION TO LIMIT EXPERT TESTIMONY          8