ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JEFFREY SHIH (CABN 296945)
S. WAQAR HASIB (CABN 234818)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    jeffrey.shih@usdoj.gov; 415-436-7168
    waqar.hasib@usdoj.gov; 415-436-7261

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:15-CR-582 WHO |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. LORENZO VIDINO AND HOLD A DAUBERT HEARING |
| v. | |
| ADAM SHAFI, | Hearing Date;    June 21, 2018 |
| Defendant. | Hearing Time:    1:30 p.m. |

TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................... 1

II.     DR. VIDINO'S EXPERTISE AND ANTICIPATED TESTIMONY ............................ 1

        A.      Dr. Vidino's Expertise ..................................................................................... 1

        B.      Dr. Vidino's Anticipated Testimony ................................................................ 3

III.    LEGAL STANDARD .................................................................................................... 4

IV.     ARGUMENT ................................................................................................................. 5

        A.      The Government's Expert Disclosure Notice Was Sufficient ........................... 5

        B.      Dr. Vidino Has Specialized Knowledge About al-Nusrah ............................... 7

        C.      Dr. Vidino's Background in Terrorism and Radicalization in Italian and
                European Affairs Does Not Disqualify Him From Being an Expert on
                Terrorism in the United States ......................................................................... 8

        D.      Dr. Vidino's Proposed Testimony About ISIL Is Deeply Relevant to the
                Evidence in this Case ....................................................................................... 8

        E.      Dr. Vidino's Testimony About Prominent Individuals in ISIL, al-Nusrah, and
                Other Related Groups Is Based On the Evidence In This Case, and Therefore
                Relevant ........................................................................................................... 9

        F.      Dr. Vidino's Work Has Been Deemed Reliable By Numerous Courts and
                Other Institutions ........................................................................................... 10

        G.      Dr. Vidino's Work Is Admissible Under the *Kumho* Line of Cases ................ 10

        H.      The Government Is Not Offering Dr. Vidino To Testify About the Profile of a
                Terrorist ......................................................................................................... 11

        I.      The Fact that Dr. Vidino Has Not Met the Defendant Does Not Disqualify
                Him as an Expert ............................................................................................ 12

        J.      Dr. Vidino's Testimony Will Not Violate The Confrontation Clause .............. 13

        K.      Dr. Vidino's Testimony is Neither Unfairly Prejudicial, Nor Confusing, Nor
                of Low Probative Value .................................................................................. 13

        L.      A *Daubert* Hearing Is Not Warranted to Establish the Admissibility of Dr.
                Vidino's Testimony ........................................................................................ 15

V.      CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

## Federal Cases

*Cooper v. Brown*, 510 F.3d 870 (9th Cir. 2007) ............................................................... 4

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ............................... 4, 10, 15

*Kumho Tire v. Carmichael*, 526 U.S. 137 (1999) ................................................... 10, 11

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) ........................................................... 4

*United States v. Benkahla*, 530 F.3d 300 (4th Cir. 2008) ............................................ 14

*United States v. Duvall*, 272 F.3d 825 (7th Cir. 2001) ............................................... 5, 6

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011) ............................................... 14

*United States v. Felton*, 417 F.3d 97 (1st Cir. 2005) ................................................... 14

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) ................................... 4, 10, 14

*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) ............................................... 14

*United States v. Hayat*, 710 F.3d 875 (9th Cir. 2013) ................................................. 14

*United States v. Kareem*, 15-CR-0707 ............................................................... 2, 10, 12

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ..................................................... 4

*United States v. Vera*, 770 F.3d 1232 (9th Cir. 2014) ................................................. 13

*United States v. Williams*, 13-CR-764 .................................................................... 5, 10

## Federal Rules

Fed. R. Evid. 403 ......................................................................................................... 14

Fed. R. Evid. 702 ..................................................................................................... 4, 15

Fed. R. Evid. 703 ......................................................................................................... 13

1    **I.      INTRODUCTION**

2         The defendant has moved this Court to exclude the testimony of the government's proposed

3    terrorism expert, Dr. Lorenzo Vidino, Director of the Program on Extremism at George Washington

4    University.  To the contrary, for the reasons discussed below, Dr. Vidino's testimony is both reliable and

5    relevant to the facts at issue in this case, and clearly admissible.  Nor is a *Daubert* hearing necessary to

6    determine the admissibility of Dr. Vidino's testimony.  If anything, the defendant's motion highlights

7    the susceptibility of his own expert witness, Dr. Marc Sageman, to the same accusations he raises

8    against Dr. Vidino.  Accordingly, the defendant's motion should be denied.

9    **II.     DR. VIDINO'S EXPERTISE AND ANTICIPATED TESTIMONY**

10        **A.      Dr. Vidino's Expertise**

11        As detailed in the government's expert notice, Dr. Vidino is currently the Director of the

12   Program on Extremism at George Washington University, and has been since 2015.  Def. Mot. to

13   Exclude Expert Testimony and Request *Daubert* Hearing at Exhibit A (herein "Def. Exhibit A"), at pg.

14   5 of 29.  The Program on Extremism's mission is to "provide[] analysis on issues related to violent and

15   non-violent extremism. The Program spearheads innovative and thoughtful academic inquiry, producing

16   empirical work that strengthens extremism research as a distinct field of study. The Program aims to

17   develop pragmatic policy solutions that resonate with policymakers, civic leaders, and the general

18   public....  The Program brings together a multidisciplinary team of experts from across the globe,

19   including government officials with experience in public safety and law enforcement, scholars, former

20   extremists, and counter-extremism practitioners providing first-hand assistance to families grappling

21   with radicalization."  See https://extremism.gwu.edu/about (last accessed June 7, 2018).  Recent

22   publications by the Program that Dr. Vidino authored or co-wrote include ISIS[1] in America – From

23   Retweets to Raqqa (2015) and Fear Thy Neighbor: Radicalization and Jihadist Attacks in the West

24   (2017).  Available at https://extremism.gwu.edu/reports (last accessed June 7, 2018).  Other

25   publications by the Program to which Dr. Vidino contributed include The Travelers: American Jihadists

26

27        _____

28        [1] Another common name for ISIS is the Islamic State of Iraq and the Levant, abbreviated "ISIL."
     It is also frequently referred to by its Arabic acronym, Daesh.  This motion refers to ISIL and ISIS
     interchangeably.

in Syria and Iraq (2018) and Not Just the Caliphate: Non-Islamic State-Related Jihadist Terrorism in America (2016).  *Id.*

Dr. Vidino is also currently the Head of the Radicalization and International Terrorism Program at the Institute for International Political Studies (ISPI) in Milan, which is partnered with Dr. Vidino's program at G.W. University.  ISPI's program "focuses on the empirical analysis of violent and non-violent extremism in Europe and the world, with a particular emphasis on jihadist ideology." https://www.ispionline.it/en/ricerca/radicalizzazione-e-terrorismo-internazionale (last accessed June 7, 2018).

Over the course of his career, Dr. Vidino has testified on terrorism related issues in several federal criminal trials involving material support to foreign terrorist organizations.  Def. Exhibit A at 16-29; *see, e.g., United States v. Kareem*, 15-CR-0707-SRB, Trial Trans. March 9, 2016, Docket No. 365 (-D. Ariz.); *United States v. Al Farekh*, 15-CR-00266-BMC, Trial Trans., September 20, 2017, Docket No. 168 (E.D.N.Y.); *United States v. Hendricks*, Trial Trans. March 9, 2018 (N.D.Ohio).  He has also testified on numerous occasions on terrorism-related issues before the U.S. Congress, as well as the Italian Parliament, the Danish Parliament, and the Canadian Parliament.  Def. Exhibit 1 at 12-13 of 29.

Prior to his current directorships at George Washington University and ISPI, Dr. Vidino held various research positions related to terrorism and radicalization at, among others, Harvard University's Kennedy School of Government, the RAND Corporation, and the U.S. Institute of Peace.  He was the Research Programs Manager at the Jebsen Center for Counterterrorism Studies at the Fletcher School of Law and Diplomacy at Tufts University, where he also obtained his Master's degree and Ph.D. focusing on homegrown jihadist networks in the West, and the process of radicalization and recruitment in the United States by foreign terrorist organizations.  Def. Exhibit A at pgs. 5-6 of 29; *see also United States v. Kareem*, 15-CR-0707-SRB, Trial Trans. March 9, 2016, at pg. 4, Docket No. 365 (D. Ariz.).  He has taught classes on terrorism and radicalization at Tufts University, the University of Maryland (National Consortium for the Study of Terrorism and Responses to Terrorism – START), and the National Defense University.  He also regularly provides commentary on terrorism and radicalization issues to diverse media outlets (including The New York Times, The Washington Post, The Wall Street Journal,

1  PBS, CNN, Fox News, MSNBC, BBC, Al Jazeera, and Al Arabiya, among others).  Def. Exhibit A at

2  pg. 6 of 29.

3      **B.      Dr. Vidino's Anticipated Testimony**

4      Dr. Vidino possesses knowledge, experience, training, and education that will undoubtedly assist

5  the jury in understanding the evidence in this case.  The government provided to the defendant on March

6  12, 2018, a detailed summary of Dr. Vidino's expected testimony.  It was attached to the defendant's

7  motion to exclude as Def. Exhibit A, so the government does not reattach it here.  However, in

8  summary, the government anticipates that Dr. Vidino's testimony will address the following general

9  areas:

10  - The rise of the al-Nusrah Front in conjunction with and in comparison to the rise of the Islamic State of Iraq and the Levant (ISIL);

11
12  - The use of the internet and social media by both groups to recruit and radicalize foreign fighters, and how such recruits travel to conflict zones as Syria;

13  - The paths of radicalization and travel for such individuals seeking to join al-Nusrah and ISIL in
14    conflict zones such as Syria;

15  - Whether particular evidence that Dr. Vidino has reviewed in this case relating to the defendant is consistent with such paths of radicalization and travel;

16  - The presence of al-Nusrah and ISIL in Syria and other countries, including, Egypt, Myanmar,
17    and elsewhere;

18  - Prominent figures involved in al-Nusrah, ISIL, and other affiliated groups such as al-Qaida in Iraq, including specific individuals relevant to the evidence in this case, including Abu Mohmmed al-Jolani, Anwar al-Awlaki, Ayman al-Zawahiri, and Abu Bakr al-Baghdadi;

19
20  - The goals and ideologies behind both al-Nusrah and ISIL, and the use of violence by both groups to achieve their objectives;

21  - Specific vocabulary (enumerated in more detail in the government's notice) that was used by the defendant in this case, and that is also used by individuals seeking to join al-Nusrah and/or ISIL.

22  *See generally*, Def. Exhibit A.  Each of these general categories is directly related to specific topics

23  referenced by the defendant himself and his associates in intercepted communications and other evidence

24  that forms part of the proof of his guilt in this case. This testimony falls squarely within the parameters of

25  permissible expert testimony under Federal Rule of Evidence 702, as numerous courts have similarly found.

26  Accordingly, as discussed in further detail below, Dr. Vidino should be permitted to testify at trial.

27

28

1

2  **III.    LEGAL STANDARD**

3          Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or

4  otherwise" where:

5          (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

6               understand the evidence or to determine a fact in issue;

7          (b) the testimony is based on sufficient facts or data;

8          (c) the testimony is the product of reliable principles and methods; and

9          (d) the expert has reliably applied the principles and methods to the facts of the case.

10 Fed. R. Evid. 702.

11         Expert testimony is admissible under Rule 702 if it is both relevant and reliable. *See Daubert v.*

12 *Merrell Dow Pharm.*, Inc., 509 U.S. 579, 589 (1993). "[R]elevance means that the evidence will assist

13 the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir.

14 2007); see also *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).  With respect to when expert

15 testimony will assist the trier of fact, the advisory committee notes for Rule 702 "refer to the traditional

16 common law rule that expert testimony is called for when the 'untrained layman' would be unable

17 intelligently to determine 'the particular issue' in the absence of guidance from an expert." *United States*

18 *v. Mejia*, 545 F.3d 179, 189 (2d Cir. 2008); *see also* Fed. R. Evid. 702 advisory committee notes ("There is

19 no more certain test for determining when experts may be used than the common sense inquiry whether the

20 untrained layman would be qualified to determine intelligently and to the best possible degree the particular

21 issue without enlightenment from those having a specialized understanding of the subject involved in the

22 dispute.") (internal quotation marks omitted).

23         Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge

24 and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. To ensure reliability, the court must

25 "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication

26 in peer reviewed literature, and general acceptance." *Id.* These factors are "helpful, not definitive," and a

27 court has discretion to decide how to test reliability "based on the particular circumstances of the particular

28 case." *Id.* (internal quotation marks and footnotes omitted).   The Ninth Circuit has stated that "[t]he *Daubert*

1  factors . . . simply are not applicable" in cases where "reliability depends heavily on the knowledge and

2  experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d

3  1160, 1169 (9th Cir. 2000).  *See also United States v. Williams*, 13-CR-764-WHO, Order on

4  Government's Gang Expert Testimony, Docket No. 927, filed March 9, 2016 (N.D.Cal.).

5  **IV.   ARGUMENT**

6       Despite Dr. Vidino's qualifications, the defendant moves to exclude his testimony in its entirety.[2]

7  For the reasons discussed below, each of the defendant's objections to Dr. Vidino's testimony are

8  without merit.

9      **A.   The Government's Expert Disclosure Notice Was Sufficient**

10       The expert disclosure notice that the government provided to the defense on March 12, 2018,

11  regarding Dr. Vidino's anticipated testimony was sufficient and comported with Rule 16 of the Federal

12  Rules of Criminal Procedure.  It is a curious argument for the defendant to allege that the notice was

13  faulty for providing only a list of topics, not a summary of expected testimony, as the defendant's own

14  expert disclosure notice with respect to his proposed expert, Dr. Marc Sageman, was no more detailed

15  than the government's.  *Compare* Def. Exhibit A at pgs. 2-4 of 29 with United States' Motion to Limit

16  Testimony of Dr. Marc Sageman, Docket No. 208, Exhibit 1 (herein, Gov. Exhibit 1), at pgs. 2-4 of 27.

17  The defendant cannot on the one hand provide the expert disclosure notice that he did, and then turn

18  around and allege a Rule 16 violation on the part of the government.  Moreover, while the government

19  objects to some portions of Dr. Sageman's testimony on substantive grounds, the government did not

20  and does not object to the sufficiency of the defendant's expert disclosure notice.  Either both the Vidino

21  and Sageman disclosures were sufficient (as is the government's position) or they are both deficient.

22  The defendant cannot have it both ways.

23

24     [2] The government notes that the defendant's proposed expert, Dr. Marc Sageman, has equally
impressive, albeit somewhat unique, qualifications, given Dr. Sageman's background as both a
25  psychologist and a former intelligence officer.  Accordingly, though the government filed a motion to
exclude some of Dr. Sageman's proposed testimony, the government conceded that Dr. Sageman could
26  probably testify as an expert.  *See* United States Motion to Limit Expert Testimony of Dr. Marc
Sageman, Docket No. 208.  The government is thus somewhat surprised that the defendant now seeks to
27  exclude Dr. Vidino's testimony *in its entirety*, based on several arguments to which his own expert, Dr.
Sageman, is equally if not moreso susceptible.  What's good for the goose is good for the gander: if the
28  Court allows Dr. Sageman to testify, the Court should also allow Dr. Vidino to testify accordingly.

To support his position that the government's disclosure was deficient, the defendant relies on a Seventh Circuit opinion, *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001), which of course is not binding on this Court.  Regardless, *Duvall* is distinguishable.  In *Duvall*, the Seventh Circuit found that the government's three-sentence description of a law enforcement drug trafficking expert witness was insufficient.  See *Duvall*, 272 F.3d at 828, and fn. 1.  In contrast, the government's expert disclosure here is far more detailed.  Specifically, as described above and as described in further detail in the notice itself, the government anticipates that Dr. Vidino will testify about:

- The rise of the al-Nusrah Front in conjunction with and in comparison to the rise of the Islamic State of Iraq and the Levant (ISIL);

- The use of the internet and social media by both groups to recruit and radicalize foreign fighters, and how such recruits travel to conflict zones as Syria;

- The paths of radicalization and travel for such individuals seeking to join al-Nusrah and ISIL in conflict zones such as Syria;

- Whether particular evidence that Dr. Vidino has reviewed in this case relating to the defendant is consistent with such paths of radicalization and travel;

- The presence of al-Nusrah and ISIL in Syria and other countries, including, Egypt, Myanmar, and elsewhere;

- Prominent figures involved in al-Nusrah, ISIL, and other affiliated groups such as al-Qaida in Iraq, including specific individuals relevant to the evidence in this case, including Abu Mohmmed al-Jolani, Anwar al-Awlaki, Ayman al-Zawahiri, and Abu Bakr al-Baghdadi;

- The goals and ideologies behind both al-Nusrah and ISIL, and the use of violence by both groups to achieve their objectives;

- Specific vocabulary (enumerated in more detail in the government's notice) that was used by the defendant in this case, and that is also used by individuals seeking to join al-Nusrah and/or ISIL

*See generally* Def. Exhibit A at pgs. 2-4 of 29.  In short, *Duvall* is distinguishable.

The defendant nonetheless claims that the government's notice was so lacking that he does not know the rough boundaries of Dr. Vidino's opinion, and cannot adequately prepare for trial.  Yet the government's disclosure was clear: Dr. Vidino will testify about the paths of radicalization and travel for individuals seeking to join al-Nusrah and/or ISIL in Syria, and opine on whether particular evidence in this case is consistent with such paths of radicalization and travel.  *See* Def. Exhibit A at pg. 2 of 29.  In any event, the defendant articulates the rough boundaries of Dr. Vidino's anticipated opinion testimony

1  himself in his motion.  Def. Mot. at pg. 4, fn. 3.  Thus, the defendant defeats his own argument that he is

2  unable to adequately prepare for trial.

3        **B.**     **Dr. Vidino Has Specialized Knowledge About al-Nusrah**

4        The defendant also argues that Dr. Vidino should be precluded from testifying because he lacks

5  specialized knowledge about al-Nusrah, the foreign terrorist organization named in the indictment.  Here

6  too, the defendant defeats his own argument.  In his motion he lists several instances where Dr. Vidino

7  specifically discusses al-Nusrah in publications.  Def. Mot. at pgs. 6-7.  Nor does the defendant's list

8  constitute "the extent of Vidino's written work on al-Nusrah."  *See*, *e.g.*, "Beyond Iraq and Syria: ISIS's

9  Global Reach," Written Testimony of Lorenzo Vidino, June 8th, 2017, submitted to U.S. Senate Foreign

10  Relations Committee (noting that "Jabhat Fateh al Sham (previously known as Jabhat al Nusra), has

11  quietly but surely carved out a de-facto mini state in parts of Syria.")  In addition, Dr. Vidino's Program

12  on Extremism has published several reports that discuss al-Nusrah in further detail; Dr. Vidino is

13  specifically cited as contributing to these reports that were published under his leadership of the

14  Program on Extremism, if not under his name.  *See*, *e.g*, The Travelers: American Jihadists in Syria and

15  Iraq."  Available at https://extremism.gwu.edu/reports (last accessed June 7, 2018)

16        One factor to bear in mind as the Court considers the defendant's objection is that al-Nusrah is a

17  relatively new player in the Syrian crisis – according to Stanford University's "Mapping Militants"

18  website that defendant cites to in his motion, al-Nusrah has only been in existence since late 2011, when

19  the leader of al-Qaeda in Iraq, Abu Bakr al-Baghdadi sent his operative, Abu Mohammed al-Jolani, to

20  Syria to organize regional jihadist cells.  See http://web.stanford.edu/group/mappingmilitants/cgi-

21  bin/maps/view/Syria (last accessed on June 7, 2018).  This is in contrast to ISIL, which according to the

22  same Stanford website can trace its origins back to the early 2000s and the U.S. invasion and subsequent

23  occupation of Iraq.  See http://web.stanford.edu/group/mappingmilitants/cgi-bin/maps/view/Iraq (last

24  accessed on June 7, 2018).  Yet despite al-Nusrah's relatively short history, Dr. Vidino has nevertheless

25  been able to incorporate the group's existence and significance into his works, as even the defendant

26  acknowledges.

27        On top of this, once again the defendant's own expert, Dr. Sageman, is even more susceptible to

28  the same accusation that he levels against Dr. Vidino.  See Gov. Exhibit 1 at pg. 3 of 27 ("Dr. Sageman

will testify about the differences amongst various terrorist organizations operating in Syria, particularly

the Islamic State of Syria ("ISIS") and al-Nusra Front."). The government has given at least a cursory

review to all of Dr. Sageman's works published after the 2011 founding of al-Nusra, and has yet to find

*even one* mention of the group (though the government concedes that Dr. Sageman's works, like Dr.

Vidino's, are voluminous, and will happily stand corrected on this front). The defendant warns in his

motion that Dr. Vidino cannot "simply learn about al-Nusrah to testify in this case." Def. Mot. at 11.

Dr. Sageman should heed the same warning.

C.     **Dr. Vidino's Background in Terrorism and Radicalization in Italian and European Affairs Does Not Disqualify Him From Being an Expert on Terrorism in the United States**

The defendant makes a half-hearted attempt to suggest that because Dr. Vidino did his

undergraduate studies in Italy, he cannot be qualified to discuss radicalization issue in the United States.

Def. Mot. at pg. 7. This xenophobic argument must fail. For one thing, the defendant overlooks the fact

that after studying in Italy, Dr. Vidino subsequently obtained his Masters' degree and Ph.D. from a

university in the United States, currently serves as the director of a program on extremism at another

university in the United States, and has conducted research and served as a fellow at several well-

regarded universities and research institutions in the United States. Moreover, Dr. Vidino's works

include publications entitled "ISIS *in America*: From Retweets to Raqqa," "Countering Violent

Extremism *in America*," "Explaining the Lack of an *American* Domestic Counter-radicalization

Strategy," and "Homegrown jihadist terrorism *in the United States*: a New and Occasional

Phenomenon" Def. Exhibit A at pgs. 8,13 of 29 (emphasis added). Similarly, the Program on

Extremism under Dr. Vidino's directorship published a report entitled "The Travelers: *American*

Jihadists in Syria and Iraq." Available at https://extremism.gwu.edu/reports (last accessed June 7,

2018). In short, the notion that Dr. Vidino cannot be an expert on issues involving the United States

because he studied in Italy is of no merit.

D.     **Dr. Vidino's Proposed Testimony About ISIL Is Deeply Relevant to the Evidence in this Case**

Contrary to the defendant's suggestion, Dr. Vidino's proposed expert testimony regarding ISIL is

deeply relevant to this case. True, the government readily admits that the defendant is charged with

1  joining not ISIL but al-Nusrah.  However, the evidence in this case will demonstrate the defendant's

2  consumption and consideration of materials of other foreign terrorist organizations, such as ISIL and al-

3  Qaeda, contributed to his becoming enamored with, and his attempt to provide material support to, al-

4  Nusrah.  One need look no further than the telephone calls described in the criminal complaint affidavit

5  in this case, in which the defendant is alleged to have spoken at length about the differences between

6  ISIL and al-Nusrah, and how as a result of these differences he becomes enamored with the leader of al-

7  Nusrah.  *See*, *e.g.*, Affidavit in Support of Criminal Complaint, Docket No. 1 (herein "Complaint

8  Affidavit), at pg. 9-10, paragraph 28 ("Adam echoed the criticism of the JN [i.e., Jabhat al-Nusrah] amir

9  saying the "Daulat" [i.e. "the State," meaning ISIL] took killing too easily.  The "Daulat" sanctioned the

10  blowing up of markets, which Adam described as "not the right way," and practiced *takfir*.   Adam

11  explained that he thought this was very wrong.  He described how JN had tried to join hands with the

12  "Daulat," but they had responded by killing and beheading the JN amir as well as crucifying and cutting

13  off the hands of JN supporters.  Adam was so impressed with JN that he commented "If the 'Daulat'

14  kills them I want to die with them.")  In other words, if the jury is to determine the defendant's intent in

15  attempting to join al-Nusrah, they must understand why he was so critical of ISIL.  Dr. Vidino's

16  testimony regarding ISIL is thus critical to the government's theory of how the defendant became

17  enamored with al-Nusrah.  Moreover, the government notes that the defendant disclosed that he

18  expected his own expert, Dr. Sageman, to discuss ISIL.  If ISIL is relevant for Dr. Sageman, then it must

19  also be relevant for Dr. Vidino.

20
21
### E.   Dr. Vidino's Testimony About Prominent Individuals in ISIL, al-Nusrah, and Other Related Groups Is Based On the Evidence In This Case, and Therefore Relevant

22  The government advised in its expert disclosure notice that it anticipated Dr. Vidino would

23  testify about specific prominent individuals in al-Nusrah, ISIL, and other related terrorist organizations,

24  specifically naming Abu Mohammad al-Jolani, Anwar al-Awlaki, Ayman al-Zawahiri, and Abu Bakr al-

25  Baghdadi.  Contrary to the defendant's suggestion, the government did not randomly pick these names

26  out of a hat.  Rather, they are all names of individuals whom the defendant mentioned in one way or

27  another, either in intercepted telephone calls, in emails, or in web searches.  *See*, *e.g.*, Complaint

28  Affidavit at pgs. 9-10 (describing defendant's review of interview with al-Jolani, spelled "Jaulani" in

US OPP. TO DEF. MOT. TO EXCLUDE EXPERT TESTIMONY

9

affidavit).  Again, if the jury is to determine the defendant's intent to provide support to al-Nusrah, they will need to understand who these individuals are, and why the defendant was interested finding out more about in them.  Dr. Vidino's testimony will be invaluable in this regard.

### F.    Dr. Vidino's Work Has Been Deemed Reliable By Numerous Courts and Other Institutions

The defendant broadly attacks Dr. Vidino's work as unreliable, and therefore impermissible as expert testimony.  Def. Mot. at pgs. 9-12.  Notably absent from the defendant's attack is the fact that district courts around the country have repeatedly permitted Dr. Vidino to testify in criminal jury trials as an expert on the very topics he will testify about here.  See, e.g., *United States v. Kareem*, 15-CR-0707-SRB, Trial Trans. March 9, 2016, Docket No. 365 (D. Ariz.); *United States v. Al Farekh*, 15-CR-00266-BMC, Trial Trans., September 20, 2017, Docket No. 168 (E.D.N.Y.); *United States v. Hendricks*, Trial Trans. March 9, 2018 (N.D.Ohio).  Also absent from the defendant's motion is the fact that Dr. Vidino has testified as an expert on terrorism and radicalization to the U.S. Senate Foreign Relations Committee, the U.S. House International Relations Committee, the Italian Parliament, the Danish Parliament, and the Canadian Parliament.  There is a good reason why the defendant omitted any mention of these appearances in his motion: he cannot credibly claim that all of these courts and legislative houses were wrong in assessing Dr. Vidino's reliability.

### G.    Dr. Vidino's Work Is Admissible Under the *Kumho* Line of Cases

The defendant broadly attacks Dr. Vidino's work for being too descriptive and theoretical, and for being based on statistically insignificant sample sizes, arguing that "*Daubert* limits expert testimony to opinions derived from rigorous, testable science and social science that carry the traditional indicia of reliability, such as acceptance by peer-review and measurably low error rates."  Def. Mot. at pg. 11.  Yet *Daubert* does no such thing.  To the contrary, in *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court concluded that the factors mentioned in *Daubert* can neither necessarily nor exclusively be applied to all experts or in every case.  *Kumho Tire*, 526 U.S. at 141.  This Court has held as much, reasoning that the *Daubert* factors are "simply not applicable" in cases where the proposed expert testimony "depends heavily on the knowledge and experience of the expert, rather than the methodology or the theory behind it."  *United States v. Williams*, 13-CR-764-WHO, Order on Government's Gang

1   Expert Testimony, Docket No. 927, filed March 9, 2016 (N.D.Cal.), quoting *United States v. Hankey*,

2   203 F.3d 1160, 1169 (9th Cir. 2000).  Rather, *Kumho Tire* "heavily emphasizes that judges are entitled

3   to broad discretion when discharging their gatekeeping function… Indeed, not only must the trial court

4   be given broad discretion to decide whether to admit expert testimony, it 'must have the same kind of

5   latitude in deciding *how* to test an expert's reliability.'" *Hankey*, 203 F.3d at 1168, quoting *Kumho Tire*,

6   119 S.Ct. at 1175-75 (emphasis in original).

7          In any event, the defendant's complaints about Dr. Vidino's work are unfounded.  A recent

8   publication produced Dr. Vidino's Program on Extremism entitled The Travelers is illustrative.  The

9   report was written by Dr. Vidino's deputy director and research director, as well as a research fellow, all

10  of whom work under Dr. Vidino.  Dr. Vidino, in his capacity as Director of the program, wrote an

11  introductory note to the report.  "Our latest report, *The Travelers: American Jihadists in Syria and Iraq*,

12  provides a uniquely comprehensive analysis of the phenomenon of American foreign fighters in Syria

13  and Iraq.  Drawing on thousands of pages of documents and dozens of exclusive-access interviews

14  (including with returning foreign fighters), the report describes a phenomenon that is bound to have

15  enormous implications on the security environment for the coming years.  As the nature of the threat

16  evolves, the Program on Extremism is committed to continuing its effort to produce evidence-based and

17  non-partisan analysis to support sound policymaking and public debate."  *See* The Travelers: American

18  Jihadists in Syria and Iraq at pg. vii, "A Note from the Director.  Available at

19  https://extremism.gwu.edu/reports (last accessed June 7, 2018).

20
21          **H.      The Government Is Not Offering Dr. Vidino To Testify About the Profile of a Terrorist**

22          The defendant repeatedly tries to characterize Dr. Vidino's testimony as impermissible "profile"

23  testimony.  *See*, *e.g.*, Def. Mot. at pgs. 12-13.  It is not.  Indeed, as the defendant points out in his

24  motion, Dr. Vidino has on numerous occasions stated that there is no real profile of a terrorist.  For

25  example, in a recent trial in the District of Arizona where a defendant was charged with attempting to

26  provide material support to ISIL, Dr. Vidino testified on direct examination for the government that

27  "there's no such thing as a common profile of ISIS support or ISIS sympathizers in the U.S.  It really

28  runs the gamut.  You have teenage girls and 40-year-old-men.  You have all kinds of socioeconomic

US OPP. TO DEF. MOT. TO EXCLUDE EXPERT TESTIMONY

1  backgrounds, all kinds of educational backgrounds, different patterns of radicalization, different

2  recruiting patterns, so absolute diversity in profiles." *United States v. Kareem*, 15-CR-0707-SRB, Trial

3  Trans. Pg. 8, March 9, 2016, Docket No. 365 (D. Ariz.).  The government was well aware of these

4  statements when it selected Dr. Vidino to be its expert, and fully expects Dr. Vidino to testify similarly

5  at this trial.

6          Nothing about this testimony precludes Dr. Vidino from testifying at the defendant's trial.

7  Indeed, as described above, Dr. Vidino testified in Arizona that there is no standard profile of a terrorist,

8  then went on to analyze particular evidence that was at issue in that case, much as the government

9  expects him to do here.  *Id* at pgs 10-27.  If anything, the defendant's "profile" argument leads to an

10  impossible conundrum – he would object if Dr. Vidino were to testify that there is a standard profile of a

11  terrorist, but now he also objects knowing that Dr. Vidino will likely testify that there is no profile of a

12  terrorist.  He cannot have it both ways.

13          Particularly problematic is the defendant's argument that Dr. Vidino's testimony constitutes

14  impermissible character evidence.  Def. Mot. at pgs. 12-13. This argument is based entirely on the

15  mistaken assumption that Dr. Vidino would offer testimony about the profile of a terrorist, and that the

16  defendant fits that profile.  As discussed above, Dr. Vidino will offer no such profile testimony.  Thus

17  the defendant's argument about character evidence is meritless.

18
19  I.      **The Fact that Dr. Vidino Has Not Met the Defendant Does Not Disqualify Him as an Expert**

20          The defendant raises a curious argument that Dr. Vidino's testimony is inadmissible because he

21  has never met the defendant or spoken to him.  The defendant cites no law standing for the proposition

22  that an expert must interview the defendant before testifying in a criminal trial, and for good reason –

23  there isn't any.  In any event, if this were really a reason to preclude Dr. Vidino from testifying at trial,

24  then there would be an obvious remedy – the Court could order the defendant to be interviewed by Dr.

25  Vidino.

26          This argument, however, highlights one of the more problematic issues with the defendant's

27  proposed expert, Dr. Sageman, who *has* met the defendant, and whose opinions of the defendant appear

28  to be in large part based on self-serving exculpatory hearsay statements the defendant made to him.  The

government addresses this problem with Dr. Sageman elsewhere, in its motion to limit his testimony. *See* United States' Motion to Limit Testimony of Dr. Marc Sageman, Docket No. 208. at pgs. 5-6.

**J.      Dr. Vidino's Testimony Will Not Violate The Confrontation Clause**

Without providing any specific areas of complaint, the defendant alleges that Dr. Vidino's testimony would violation the Confrontation Clause because it consists of "repackaged testimonial hearsay" Experts, of course, may rely on inadmissible hearsay, as well as any other form of inadmissible evidence, if "experts in the particular filed would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014), *quoting* Fed. R. Evid. 703.  Here, the defendant generally objects to Dr. Vidino relying on "legal documents – complaints, indictments, affidavits" to base his opinions.  The question, then, is whether experts in Dr. Vidino's field would also reasonably rely on such materials.  Dr. Sageman, the defendant's proposed expert, in his book "Understanding Terror Networks," explained that when gathering information his sources included "the documents and transcripts of legal proceedings… In decreasing degrees of reliability, I favored transcripts of court proceedings subject to cross-examination, followed by reports of court proceedings, then corroborated information from people with direct access to the information provided, uncorroborated statements from people with that access, and finally statements from people who had heard the information secondhand."  Understanding Terror Networks, pg. 65 (2004).  In other words, the defendant's proposed expert relies at least in part, if somewhat suspiciously, on the same kinds of documents that the defendant says should preclude Dr. Vidino from testifying at all.  This Court should not entertain such a double standard.

**K.      Dr. Vidino's Testimony is Neither Unfairly Prejudicial, Nor Confusing, Nor of Low Probative Value**

Lastly, the defendant suggests that Dr. Vidino's testimony will unfairly prejudice, mislead, and confuse the jury because any testimony about ISIL is irrelevant, will evoke "fear and horror" among the jury, and will cause the jury to conflate ISIL with al-Nusrah.  For the reasons discussed above, however, testimony about ISIL is critical to the government's theory of the case.  That, if anything, makes it imperative for the jury to hear from an expert such as Dr. Vidino, who has knowledge of and can explain the nuances separating the two groups.

US OPP. TO DEF. MOT. TO EXCLUDE EXPERT TESTIMONY

1      More importantly, it is the defendant's conduct here that has forced the issue of ISIL and al-

2   Nusrah into the center of this case.  See, e.g., *United States v. Felton,* 417 F.3d 97, 103 (1st Cir.

3   2005)(finding that the government's use of the term "terrorist" to describe defendants and their actions

4   was appropriate because, while the term is "highly pejorative," it was "a function of the acts defendants

5   engaged in, not the government's inaccurate description of those acts.") The defendant here consumed

6   and considered materials of several foreign terrorist organizations, including ISIL and al-Nusrah.  He

7   cannot now complain that the government is offering expert witness who will testify about those

8   organizations.  Simply put, the defendant, in essence, chose the evidence, and his actions require a

9   discussion of both ISIL and al-Nusrah.  The mere fact that evidence is probative and inculpatory does

10  not render it prejudicial, let alone unduly so.

11      Numerous courts have concluded that expert testimony in terrorism cases is not only relevant and

12  admissible, but essential. See *United States v. Hassan*, 742 F.3d 104, 130 - 31 (4th Cir. 2014) (expert

13  testimony about complex evidence necessary in terrorism case given terminology and concepts likely

14  unfamiliar to jurors); *United States v. Benkahla*, 530 F.3d 300, 309 -10 (4th Cir. 2008) (lengthy expert

15  testimony about various aspects of radical Islam appropriate and indeed necessary in light of

16  complicated evidence touching on wider variety of terms, ideas, people and organizations connected to

17  radical Islam); *United States v. Farhane*, 634 F.3d 127, 158 - 60 (2d Cir. 2011) (upholding admission of

18  expert testimony regarding al-Qaeda's origins, history, structure, leadership, instructional methods,

19  operational logistics, acts of terrorism, and radical Islamic ideology); *see also United States v. Hayat*,

20  710 F.3d 875 (9th Cir. 2013) (in terrorism prosecution, district court admitted testimony of expert on

21  extremist groups and expert in Islamic studies).

22      Exclusion of relevant evidence is appropriate only if its probative value is "substantially

23  outweighed" by the danger of "unfair prejudice."  Fed. R. Evid. 403 (emphasis added). Here, given the

24  charges, the evidence, and the proof required, the probative value of Dr. Vidino's testimony is

25  considerable and any prejudice is not unfair.  In *Hassan*, the court ruled that evidence linking defendants

26  to extremist jihadist organizations was undoubtedly prejudicial, but not unfairly so. 742 F.3d at 132.

27  "Indeed, the charges that were lodged against the appellants meant that the prosecution would

28  necessarily seek to establish that link." *Id.*; *see also Hankey*, 203 F.3d at 1172 (relevant evidence is

US OPP. TO DEF. MOT. TO EXCLUDE EXPERT TESTIMONY

1    inherently prejudicial and major function of Rule 403 is limited to excluding matter of scant or

2    cumulative probative force) (citation omitted).    Given the complexities of this case, Dr. Vidino's

3    testimony will provide an invaluable aid to the jury in properly and fairly evaluating and understanding

4    the relevancy of the government's evidence, and will advance the truth-seeking and fact-finding process.

5
6    **L.    A *Daubert* Hearing Is Not Warranted to Establish the Admissibility of Dr. Vidino's Testimony**

7    A review of the case law after *Daubert* shows that the rejection of expert testimony is the

8    exception, rather than the rule.  *See* Advisory Committee Notes to Fed. R. Evid. 702.  Specific to the

9    type of testimony at issue here, courts have repeatedly approved the admission of expert testimony

10   regarding terrorist organizations and terrorist activities.  Nor is the trial court's role as gatekeeper

11   intended to serve as a replacement for the adversary system.  As *Daubert* clarified, "[v]igorous cross-

12   examination, presentation of contrary evidence, and careful instruction on the burden of proof are the

13   traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. 596.

14   Thus, any challenge to the testimony of Dr. Vidino are better suited to cross-examination at trial and

15   closing argument.

16   **V.    CONCLUSION**

17   For all of the reasons discussed above, Dr. Vidino's testimony is both reliable and relevant to the

18   facts at issue in this case, and clearly admissible.  Nor is a *Daubert* hearing necessary to determine the

19   admissibility of Dr. Vidino's testimony.  Accordingly, the defendant's motion should be denied.

20                                                   Respectfully submitted,

21                                                   ALEX G. TSE
                                                     Acting United States Attorney
22
23   DATED: June 7, 2018                             _____/s/_____
                                                     JEFFREY SHIH
24                                                   S. WAQAR HASIB
                                                     Assistant United States Attorneys
25
26
27
28