STEVEN G. KALAR
Federal Public Defender
Northern District of California
HANNI M. FAKHOURY
JEROME E. MATTHEWS
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:    (510) 637-3500
Facsimile:    (510) 637-3507
Email:        Hanni_Fakhoury@fd.org

Attorneys for Adam Shafi

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ADAM SHAFI,<br><br>Defendant. | **Case No.:** CR 15–00582 WHO<br><br>**DEFENDANT ADAM SHAFI'S PRETRIAL CONFERENCE STATEMENT**<br><br>**Court:**  Courtroom 2, 17th Floor<br>**Hearing Date:**  August 13, 2018<br>**Hearing Time:**  2:00 p.m. |

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.........................................................................................................................i

TABLE OF AUTHORITIES ...............................................................................................................ii

INTRODUCTION ...............................................................................................................................1

1.      Statements or Reports of Witnesses...................................................................... 1

2.      Grand Jury Testimony............................................................................................ 1

3.      Exculpatory or Other Favorable Evidence............................................................ 1

4.      Stipulations of Facts.............................................................................................. 1

5.      Court Appointed Interpreters. ............................................................................... 1

6.      Dismissal of Counts. ............................................................................................. 2

7.      Joinder and Severance........................................................................................... 2

8.      Informers, Identification Evidence and Evidence of Prior Convictions. ............. 2

9.      Witness Lists.......................................................................................................... 2

10.     Exhibit Lists. ......................................................................................................... 2

11.     Pretrial Resolution of Objections to Exhibits or Testimony................................. 2

        A.      Transcripts................................................................................................. 2

        B.      Summaries.................................................................................................. 3

                1.      Translation of Arabic Terms............................................................ 4

                2.      The Map........................................................................................... 5

                3.      The Timeline.................................................................................... 5

        C.      Self-Authentication................................................................................... 7

                1.      Alameda County and Santa Clara County Sheriff's Office ............ 7

                2.      AT&T............................................................................................... 8

                3.      TICTU.............................................................................................. 9

12.     Controverted Points of Law. ............................................................................... 10

13.     Scheduling of Trial and Witnesses. .................................................................... 10

14.     Questionnaires, Voir Dire, Peremptory and Cause Challenges, and Instructions. ......... 10

15.     Other Matters Tending to Promote a Fair and Expeditious Trial. ...................... 11

## TABLE OF AUTHORITIES

### Cases

*Aronson v. McDonald*, 248 F.2d 507 (9th Cir. 1957)..................................................................5

*Brady v. Maryland*, 373 U.S. 83 (1963) ....................................................................................1

*Martinez v. Am.'s Wholesale Lender*, 446 Fed. Appx 940 (9th Cir. 2011) ............................7

*Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984).........................................4

*United States v. Anekwu*, 695 F.3d 967 (9th Cir. 2012) ........................................................4, 5

*United States v. Barreiro*, 13-CR-00636-LHK, 2015 WL 7734139 (N.D. Cal. Dec. 1, 2015)..............8

*United States v. Childs*, 5 F.3d 1328 (9th Cir. 1993) ...............................................................10

*United States v. Lizarraga-Tirado*, 789 F.3d 1107 (9th Cir. 2015)...........................................5

*United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991)........................................................4

*United States v. Orellana-Blanco*, 294 F.3d 1143 (9th Cir. 2002)............................................7

*United States v. Orm Hieng*, 679 F.3d 1131 (9th Cir. 2012)....................................................4

*United States v. Perlmuter*, 693 F.2d 1290 (9th Cir. 1982).......................................................8

*United States v. Strother*, 49 F.3d 869 (2d Cir. 1995)...............................................................8

*United States v. Weiland*, 420 F.3d 1062 (9th Cir. 2005) ......................................................7, 9

*United States v. Wood*, 943 F.2d 1048 (9th Cir. 1991) .............................................................4

### Statutes

18 U.S.C. § 2339B.............................................................................................................1, 10, 11

### Federal Rules of Evidence ("Fed. R. Evid.")

Fed. R. Evid. 403 ........................................................................................................................6

Fed. R. Evid. 902 ...................................................................................................................7, 8, 9

Fed. R. Evid. 803 ................................................................................................................7, 8, 9, 10

Fed. R. Evid. 1006.....................................................................................................................3, 5

**INTRODUCTION**

Pursuant to the Court's Criminal Pretrial Order and Criminal Local Rule 17.1-1(b), Adam Shafi respectfully submits this Pretrial Conference Statement.

**1.    Statements or Reports of Witnesses.**

This Court set a deadline of August 6, 2018, for government disclosure of exculpatory or other favorable evidence falling under *Brady v. Maryland*, 373 U.S. 83 (1963) and California Rule of Professional Conduct 5-110(d), as well as any other discoverable material.  Dkt. 219.  The government has indicated it plans to produce all *Jencks* Act materials by that day.  Dkt. 232 at 17.

**2.    Grand Jury Testimony.**

The government has not yet disclosed the grand jury testimony of any witnesses.  The government states the only witness who testified before the grand jury was an FBI agent who will not be called as a witness at trial.  It therefore does not intend to produce the grand jury transcript.  Dkt. 232 at 17.

**3.    Exculpatory or Other Favorable Evidence.**

This Court set a deadline of August 6, 2018, for government disclosure of exculpatory or other favorable evidence falling under *Brady v. Maryland*, 373 US 83 (1963) and California Rule of Professional Conduct 5-110(d), as well as any other discoverable material.  Dkt. 219. The government has not indicated whether required disclosure of exculpatory and other evidence favorable to the defendant on the issue of guilt or punishment is complete.

**4.    Stipulations of Facts.**

Mr. Shafi has offered to stipulate that al-Nusrah Front is a designated "foreign terrorist organization," which is a required element of 18 U.S.C. § 2339B.

**5.    Court Appointed Interpreters.**

Mr. Shafi does not expect that any interpreters will be required for live testimony.  The government has noticed it will call a linguist as an expert witness to testify to the meaning of Arabic words that appear in evidence.

**6.     Dismissal of Counts.**

The government has not indicated any intention to dismiss the one-count indictment.

**7.     Joinder and Severance.**

There appear to be no issues of joinder or severance.

**8.     Informers, Identification Evidence and Evidence of Prior Convictions.**

The government has not indicated any intention to present testimony by informers, lineup or identification evidence, or evidence of prior convictions by Mr. Shafi or any other witness.

**9.     Witness Lists.**

The government's witness list is due on August 6, 2018.  The government has noticed at least four expert witnesses it may call.  Dkt. 206, Exh. A.  Mr. Shafi has given notice of two expert witnesses he may call.  Dkt. 208, Exh. 1.  Consistent with his right to an effective defense, Mr. Shafi has advised the government he has not determined what non-expert witnesses, if any, he will call in his case-in-chief, should he choose to present one.

**10.    Exhibit Lists.**

The parties filed exhibit lists and exchanged exhibits on July 30, 2018.  Dkt. 229, 230.  Several of the government's exhibits are the subject of motions *in limine* filed by Mr. Shafi.  Consistent with his right to an effective defense, Mr. Shafi reserves the right to supplement the exhibits he chooses to use in his case-in-chief, should he chose to present one, in order to rebut evidence presented in the government's case-in-chief.

**11.    Pretrial Resolution of Objections to Exhibits or Testimony.**

The parties have filed extensive motions *in limine* and oppositions.  Dkt. 224, 225, 231, 232.  Mr. Shafi had not received the government's exhibit list at the time he filed his motions *in limine* and requested an opportunity to file additional motions *in limine* once he received the government's exhibits and had a chance to review them.  Dkt. 224 at 26.  Now that he has reviewed the exhibits, Mr. Shafi raises the following additional issues:

**A.     Transcripts**

Government Exhibits 17 through 32 are transcripts of intercepted audio calls (Exhibits 1 through 15) which the government intends to introduce into evidence and play to the jury.  The

DEFENDANT'S PRETRIAL CONFERENCE STATEMENT
*SHAFI*, CR 15–00582 WHO

government acknowledges the transcripts are an aid for the jury to use when listening to the audio recordings and the transcripts will not be admitted into evidence. Dkt. 232 at 13.

Mr. Shafi raised several objections to the transcripts with government counsel. Specifically, many of the transcripts contained annotations in the text of the transcript. Most of the transcripts had translated the Arabic words used by the speakers in the recording into English. Additionally, almost all of the transcripts were produced by the FBI, and the transcripts contained a cover sheet with information about the linguists and FBI agents, as well as a one paragraph summary of the call. Mr. Shafi objected to these transcripts as they were not just a verbatim translation of the recording, which should include the spoken Arabic words and no extraneous information.

The government stated it would reproduce the exhibits to deal with these concerns. While Mr. Shafi anticipates his concerns will be resolved, he raises the issue here to flag it and reserve his right to raise additional objections to the newly produced transcripts should any arise.

**B.      Summaries**

The government has produced three summaries with its exhibits. Exhibit 33 is a list of Arabic terms and their English translations. *See* Exh. A. Exhibit 114 is a map of the Middle East with markings numbering 1-9. *See* Exh. B. According to a government produced index, the locations on the map correspond to places Mr. Shafi searched for (presumably online), as well as locations in Egypt—specifically Cairo and Sharm El Sheikh—that Mr. Shafi visited with his family. *See* Exh. C. Exhibit 118 is a 22-page "timeline" of the case, beginning with January 2014 Google searches and ending with Mr. Shafi's arrest on July 3, 2015. *See* Exh. D. The government has indicated it will seek to admit into evidence the Arabic terms, the map, and may seek to admit a revised version of the timeline depending on this Court's evidentiary rulings at the pretrial conference.

Under Rule 1006, "The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." "The proponent of a summary must establish a foundation that (1) the underlying materials upon which the summary is based are admissible in evidence; and (2) the underlying documents were made available to the opposing party for inspection." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984).

However, "charts or summaries of testimony or documents already admitted into evidence are merely pedagogical devices, and are not evidence themselves." *United States v. Anekwu*, 695 F.3d 967, 981 (9th Cir. 2012). The Ninth Circuit has "long held that such pedagogical devices should be used only as a testimonial aid, and should not be admitted into evidence or otherwise be used by the jury during deliberations." *United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991); *see also Anekwu*, 695 F.3d at 982 ("we do not approve of receiving summary exhibits of material already in evidence.") (quotation and citation omitted).

The summaries are pedagogical devices, do not summarize voluminous materials, and are unduly prejudicial. They should not be admitted into evidence.

### 1.      Translation of Arabic Terms

The English translations of Arabic terms are a pedagogical device drawn from items of evidence—intercepted conversations, text messages and search queries—that will be introduced into evidence.

Moreover, the translations are inadmissible hearsay. "A defendant and an interpreter are treated as identical for testimonial purposes if the interpreter acted as a 'mere language conduit' or agent of the defendant." *United States v. Orm Hieng*, 679 F.3d 1131, 1139 (9th Cir. 2012) (quoting *United States v. Nazemian*, 948 F.2d 522, 528 (9th Cir. 1991)). A district court must determine whether the interpreter is a "language conduit" on a case by case basis, considering factors "such as which party supplied the interpreter, whether the interpreter had any motive to mislead or distort, the interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with the statements as translated." *Orm Hieng*, 679 F.3d at 1139 (quoting *Nazemian*, 948 F.2d at 527).

Here, the translations were provided by a linguist employed by the FBI. Obviously the linguist was not Mr. Shafi's agent. While Mr. Shafi is unaware of any specific issues regarding her qualifications and language skill, an FBI employed interpreter will obviously have a motive to translate terms—especially the charged, subjective religious terms involved here—in a way favorable to the government. Because these translations are hearsay, they should not be admitted as evidence.

### 2.    The Map

The map should not be admitted into evidence.  To the extent the map is generated from Google search queries, the queries themselves are likely to be admitted into evidence and thus the map is a pedagogical device.  *See Anekwu*, 695 F.3d at 981.[1]  Because the map marks locations that were not the subject of search queries—such as Cairo and Sharm El Sheikh—the map is also not a summary of voluminous writings or recordings under Rule 1006.  Additionally, the annotations on the map are inadmissible hearsay.  The Ninth Circuit has explained a map with a "tack…placed manually and then labeled (with a name or GPS coordinates)" is "classic hearsay." *United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1109 (9th Cir. 2015) (citing *Aronson v. McDonald*, 248 F.2d 507, 508–09 (9th Cir. 1957) (holding hand-drawn additions of topography lines to a map were hearsay)). The map should be excluded.

### 3.    The Timeline

The timeline is an extremely prejudicial pedagogical device that should be excluded.  It is not a summary of "voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Fed. R. Evid. 1006.    The timeline is a list of several different items of evidence, including intercepted phone calls, text messages extracted from mobile devices or received from telephone companies, Google and YouTube search queries, and physical world events like Mr. Shafi's arrest that will be admitted into evidence. Again, "summaries of testimony or documents already admitted into evidence are merely pedagogical devices, and are not evidence themselves." *Anekwu*, 695 F.3d at 981.

Moreover, the timeline is not a summary under Rule 1006 as it does not summarize "voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006.  Some of the items are not "writings, recordings, or photographs" at all.  That includes things like "DOS designates al Nusrah Front as FTO in Syria," "Goes to Hagia Sofia (Blue Mosque)," "arrives in Istanbul met by friend A.N." "visits A.H. in Santa Clara Country [sic]

---

[1] Although the government has not indicated it will introduce the index associated with the map into evidence, the index should also not be admitted.  Like the map itself, the index is a pedagogical device and not a summary.

DEFENDANT'S PRETRIAL CONFERENCE STATEMENT
*SHAFI*, CR 15–00582 WHO

Detention Facility," to name just a few. *See* Exh. D (Exhibit 118-001, 003, 008). Nor is the list summarizing "voluminous" items. The government is seeking to admit fifteen audio recordings and the timeline contains all fifteen of them. That is neither voluminous or a summary.

Moreover, admitting the timeline into evidence would be unduly prejudicial to Mr. Shafi and should be excluded under Rule 403. The timeline is essentially a roadmap of the government's entire case. It includes the government's subjective interpretation of the content of phone calls, rather than merely summarizing the content of the calls themselves. For example, the entry for June 30, 2015 states, "Calls brother I.S. - I.S. tells Shafi he could commit act of domestic terrorism instead if he can't leave US, or Shafi should wait and try again in October." *See* Exh. D (Exhibit 118-021). That hyperbolic assessment of the conversation is inaccurate, inflammatory and unsupported by anything said in the actual conversation. The timeline is also argumentative. As explained in Mr. Shafi's motions *in limine*, all the Google records can demonstrate is that someone logged into a device as reflexatron@gmail.com accessed a particular video or conducted a search query. Dkt. 224 at 15, 19. This timeline argues that Mr. Shafi is the one who did the searches or accessed a video.

Moreover, the timeline provides an avenue for the government to introduce evidence it previously said it would not admit. For example, Mr. Shafi moved to exclude a YouTube video depicting bullet holes in the Star of David. Dkt. 224 at 20-21. In its opposition to Mr. Shafi's motions *in limine*, the government explained it would not introduce the videos accessed on YouTube, "including the video depicting bullet holes in the Star of David." Dkt. 232 at 13. Yet, the timeline specifically states Mr. Shafi accessed a video of "anti-Jewish images (including burning Star of David with bullet holes) x2." *See* Exh. D (Exhibit 118-020). The timeline thus puts before the jury evidence the government claimed it would exclude.

The timeline may be appropriate as an aid to refresh a witness' recollection. The government can assemble a timeline as a demonstrative to show the jury during closing argument. But the jury should not be allowed to receive a copy of the timeline into evidence which it can review during deliberations. The timeline should not be admitted into evidence.

DEFENDANT'S PRETRIAL CONFERENCE STATEMENT
*SHAFI*, CR 15–00582 WHO

## C.     Self-Authentication

The government asserted it would seek to self-authenticate several exhibits under Rule 902. Dkt. 225 at 7-8.  Mr. Shafi argued the government needed to comply with the notice and certification requirements under Rule 902 before it could self-authenticate any items, and that any ruling on self-authentication should be deferred until trial.  Dkt. 231 at 8-9.  Since these filings, the government produced some certifications with its exhibit list (Exhibits 37, 38, 45, 68, 89, 100, 101, 126) and has provided additional certifications that have yet to be marked.  Mr. Shafi raises objections to the following certifications:

### 1.     Alameda County and Santa Clara County Sheriff's Office

The government attempts to certify records from the Alameda County Sheriff's Office via a certification identical to the one used to certify business records.  *See* Exh. E.  The certification for the Alameda County Sheriff's Office specifically references Federal Rule of Evidence 902(11), which governs "domestic records of a regularly conducted activity," and Federal Rule of Evidence 803(6), which exempts "records of a regularly conducted activity" from the prohibition against hearsay.  The certification is identical in form to those issued by the government for domestic business records.

This certification is inadequate.  Rule 902(4) details the requirements for self-authentication of public records.  *See United States v. Weiland*, 420 F.3d 1062, 1072 (9th Cir. 2005) ("a party may not circumvent the requirements for the authentication of public records outlined in Rule 902(4) by invoking Rule 902(11).  Rule 902(4), not Rule 902(11), describes the manner for establishing the authenticity of public records."); *see also United States v. Orellana-Blanco*, 294 F.3d 1143, 1149 (9th Cir. 2002) ("When public records are used against a defendant in a criminal prosecution, the public records exception is the *exclusive* applicable hearsay exception.") (emphasis added).

Under Rule 902(4), self-authenticating a public record requires not only a certification by an authorized custodian as is sufficient under 902(11), but also a certification that "the copy is…correct."  *See* Fed. R. Evid. 902(4); *see also Martinez v. Am.'s Wholesale Lender*, 446 Fed. Appx 940, 944 (9th Cir. 2011) ("Federal Rule of Evidence 902(4), which governs 'certified copies of public records,' requires the custodian or other authorized person to certify that the copies are correct.")

(quoting Fed. R. Evid. 902(4)).  These certifications do not include a certification that "the copy is…correct" as required by Rule 902(4) and thus cannot be self-authenticating.

The government has also indicated it expects to produce a certificate of authenticity for records obtained from the Santa Clara County Sheriff's Office by Monday August 6, 2018.  To the extent the certificate it purports to use is identical to the certificate it obtained from Alameda County, it too will be deficient for the reasons stated above.

### 2.     AT&T

The government has provided a certification for records it obtained from AT&T that clearly fails to satisfy the requirements of Rule 902(11).  *See* Exh. F.

Under Rule 902(11), "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court," may be self authenticated.  Rule 803(6), in turn, exempts from the hearsay bar "A record of an act, event, condition, opinion, or diagnosis" if the record (1) "was made at or near the time by—or from information transmitted by— someone with knowledge;" (2) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;" and (3) "making the record was a regular practice of that activity."  Fed. R. Evid. 803(6).  "[T]he proffered record must meet *all* of the requirements of the exception" in order to satisfy the business records exception.  *United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995).  The Ninth Circuit "requires strict compliance with the authenticity rules."  *United States v. Perlmuter*, 693 F.2d 1290, 1292 (9th Cir. 1982).

The AT&T certification fails to satisfy the requirements of 902(11).  Specifically, the certification is missing any assertion that the record "was made at or near the time by…someone with knowledge," that "the record was kept in the course of a regularly conducted activity," and "making the record was a regular practice of that activity."  Fed. R. Evid. 803(6); *see United States v. Barreiro*, 13-CR-00636-LHK, 2015 WL 7734139, at *3, n. 2 (N.D. Cal. Dec. 1, 2015) (Rule 902(11) certification "must show" all requirements of 803(6) met).  This certification is deficient and the AT&T records are not self-authenticated.

### 3.    TICTU

Exhibit 126 is a certification signed by an FBI agent with the Telecommunications Intercept & Collection Technology Unit ("TICTU"), certifying the authenticity of intercepted phone calls. *See* Exh. G. The intention of the affidavit is to "satisfy Federal Rules of Evidence 902(11) and 902(14)." *See* Exh. G (Exhibit 126 at ¶ 2). It fails to do so.

To understand why, it is necessary to understand the procedure by which phone calls are intercepted. According to the affidavit, "the provider performs the authorized intercept while providing the communication to law enforcement for collection." *See* Exh. G (Exhibit 126 at ¶ 3). That is, the telephone company intercepts the phone call and then sends the recording and data about the call to the FBI. *Id.* at ¶ 4. Once the FBI receives the call (and its data), the FBI assigns a unique hash value and unique digital signature to the data to "maintain the authenticity and integrity of the collected data." *Id.* at ¶ 5. It is clear the FBI, not the phone company, assigns the hash value and signature, not the telephone company. *See id.* ("The digital signature is an additional step employed by the telephony collection system…"); *see also id.* at ¶ 4 (collected data is "received within the FBI's telephony collection system which is run and managed by the TICTU"). The agent certifies he reviewed the exhibits (the intercepted phone calls) with the original data, compared the hash values and signatures and found they matched. *Id.* at ¶ 6.

Ultimately, this certification indicates there are in fact two separate records at issue. The first is the original recording (and its data) collected by the phone company; the second is the copy of the recording with the hash value and digital signature created by the FBI. To the extent the government wants to rely on the rules governing business records—902(11) and 803(6)—to authenticate what is actually a public record, it cannot do so for the reasons stated earlier in connection with the records from the Alameda County Sheriff's Office. *See Weiland*, 420 F.3d at 1072 ("Rule 902(4), not Rule 902(11), describes the manner for establishing the authenticity of public records.").

The government may argue that the certification satisfies Rule 902(4) because it certifies that "the copy is…correct." *See* Fed. R. Evid. 902(4). But that would only be true with respect to the data containing the hash value and digital signature generated by the FBI. In order to self-authenticate the original underlying recording, the government must satisfy the requirements of

902(11) and 803(6), *in addition* to the requirements of 903(4). "[E]xhibits can be admitted as business records of an entity, even when that entity was not the maker of those records, so long as the other requirements of Rule 803(6) are met and the circumstances indicate the records are trustworthy." *United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993).

The certification here fails to satisfy the requirements of 803(6) because it does not indicate that the record "was made at or near the time by…someone with knowledge," that "the record was kept in the course of a regularly conducted activity," and "making the record was a regular practice of that activity." Fed. R. Evid. 803(6). The TICTU certification is thus deficient and cannot self-authenticate the intercepted phone calls.

**12.   Controverted Points of Law.**

There are several outstanding motions *in limine* that will be addressed at the pretrial conference. In addition, Mr. Shafi anticipates that there will be disputes about jury instructions related to the elements of 18 U.S.C. § 2339B and the application of the First Amendment.

**13.   Scheduling of Trial and Witnesses.**

Jury selection is scheduled to being on August 27, 2018. The parties anticipate the trial will last approximately three weeks.

**14.   Questionnaires, Voir Dire, Peremptory and Cause Challenges, and Instructions.**

The parties have met and conferred regarding a jury questionnaire. Consistent with the Court's criminal pretrial order, the parties have submitted a joint questionnaire containing questions the parties agree should be given to the venire before jury selection.

Mr. Shafi, however, has serious concerns of potential bias in the venire given the charge filed against him and his ethnicity and religion. Mr. Shafi has therefore also separately filed additional questions he would like included on the questionnaire, or alternatively, used during voir dire. He also requests more than 15 minutes for attorney conducted voir dire.

The parties have also met and conferred regarding jury instructions. Consistent with the Court's criminal pretrial order, the parties have submitted a joint set of proposed jury instructions containing jury instructions—taken from the Ninth Circuit Model Manual of Criminal Jury Instructions—that the parties agree on. The joint submission also indicates several disputed

DEFENDANT'S PRETRIAL CONFERENCE STATEMENT
*SHAFI*, CR 15–00582 WHO

10

instructions that the parties do not agree on.  The crux of the legal dispute on jury instructions centers on the elements of 18 U.S.C. § 2339B and the application of the First Amendment.

15.    **Other Matters Tending to Promote a Fair and Expeditious Trial.**

Other than the matters outlined in Mr. Shafi's motions *in limine* and proposed jury questionnaire and instructions, as well as the additional issues raised here concerning the government's exhibits, Mr. Shafi is unaware of any other matters needing to be resolved by the Court at this time.

Dated:     August 6, 2018                          Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S/
HANNI M. FAKHOURY
JEROME MATTHEWS
Assistant Federal Public Defenders

DEFENDANT'S PRETRIAL CONFERENCE STATEMENT
*SHAFI*, CR 15–00582 WHO

11