MOEEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (510) 500-9994
Email: hanni@mlf-llp.com

Attorneys for Adam Shafi

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | Case No.: 3:15-CR-00582-WHO |
|---|---|
| Plaintiff, | **DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE** |
| v. | |
| ADAM SHAFI, | **Court:** Courtroom 2, 17th Floor |
| Defendant. | **Hearing Date:** August 25, 2022 |
| | **Hearing Time:** 1:30 p.m. |

TO: STEPHANIE M. HINDS, UNITED STATES ATTORNEY;
S. WAQAR HASIB, ASSISTANT UNITED STATES ATTORNEY; AND
CHRIS LOMAX, UNITED STATES PROBATION OFFICER.

PLEASE TAKE NOTICE that Adam Shafi hereby moves this Court for an order terminating his supervised release early. This motion is based upon this memorandum of points and authorities and accompanying exhibits, 18 U.S.C. § 3583(e)(1), and all other applicable constitutional, statutory, and case authority, and all evidence and argument that may be presented at the hearing of this motion, to be held on August 25, 2022, at 1:30 p.m. in Courtroom 2 on the 17th floor of the San Francisco Courthouse.

# INTRODUCTION

On October 4, 2018, this Court released Mr. Shafi after he had spent 40 months in pretrial detention. After hearing from the lawyers and admonishing his parents—who served as both sureties and custodians—the Court addressed Mr. Shafi directly and told him, "what happens for you in the future is really dependent on your ability to follow the law and the terms and conditions" of release. Dkt. 310 at 34:7-8. The Court continued "if there is any non-compliance, I will take you back into custody until the trial. But I don't expect that that's going to happen. And I expect that you are going to show—prove your parents right about your—about who you are. And that's my expectation." *Id.* at 34:11-15.

Mr. Shafi took this Court's words to heart. In the close to four years that have passed, he has complied with every single condition set upon him by the Court, attending school, making his counseling sessions without fail, passing two polygraph exams, and avoiding any problems with the law. Mr. Shafi's supervised release began on March 21, 2019 and is set to expire on March 21, 2024. As of this filing, he has completed 40 months of the 60-month term, approximately 2/3 of the supervised release term imposed by the Court. He is also getting ready to graduate San Jose State University ("SJSU") in December. As he writes in his letter to the Court, he hopes "to begin working in software development" and be a "positive influence for all those around me who helped me." Exh. A at 1.

The goals of supervised release—namely reintegrating Mr. Shafi back into society after the events of 2014 and 2015 landed him in jail for 40 months and equipping him with the tools to lead a successful and law-abiding life—have been accomplished. Continuing Mr. Shafi on supervised release for another 20 months is not only unnecessary but could potentially be an obstacle; the stringent computer monitoring requirements he must follow have hindered his efforts to obtain a job in the technology sector upon graduating college.

Mr. Shafi thus respectfully requests this Court terminate his supervised release early.

# STATEMENT OF FACTS

The Court is undoubtedly familiar with the facts leading to Mr. Shafi's arrest on July 3, 2015, when he attempted to fly from San Francisco to Istanbul on June 30, 2015. What follows is an

abbreviated statement of facts.

**A.    Court proceedings against Mr. Shafi.**

A criminal complaint was filed on July 3, 2015, charging Mr. Shafi with attempting to provide himself to a terrorist organization. Dkt. 1. Mr. Shafi remained in custody at the Glen Dyer Detention Facility for more than three years as his case was pending. Mr. Shafi's jury trial began on August 27, 2018 and lasted six days. Dkt. 271, 274, 275, 277, 283, 287, 288. The jury deliberated for seven days. Dkt. 290, 291, 292, 293, 296, 297, 299. On September 19, 2018, the Court declared a mistrial after jurors indicated they could not reach a unanimous verdict. Dkt. 299. Polling of the jurors indicated they were hung 8-4 in favor of acquittal. Dkt. 305-1 at 2, ¶ 7.

On October 4, 2018—after 40 months of pretrial detention—the Court ordered Mr. Shafi released pending retrial on a $1 million bond secured by his parents' house. Dkt. 308. It adopted stringent release conditions proposed by Pretrial Services, ordering Mr. Shafi, among other things, to surrender all travel documents and not reapply for a passport, not possess a firearm, remain in the custody of his parents at their home, undergo a psychiatric assessment and participate in mental health counseling, not use a computer or possess an Internet enabled cell phone, and be subject to 24/7 GPS monitoring and not leave his home except for legal, medical, treatment and court purposes. Dkt. 312. Mr. Shafi was released the following day. Dkt. 310-12.

The parties ultimately reached a plea agreement and on December 7, 2018, Mr. Shafi pleaded guilty to a one count superseding information charging him with bank fraud for depositing a $2,200 check he knew was fraudulent. Dkt. 348. Under the terms of the plea agreement, the government agreed to recommend a three-year term of supervised release. Dkt. 349 at 4, ¶ 8. The Court denied the government's request to have Mr. Shafi remanded into custody pending sentencing. Dkt. 348. Noting Mr. Shafi had complied with all the conditions of his pretrial release, the Court "disagree[d] that the risk of flight has increased with the guilty plea; to the contrary, it seems to have decreased since the initial order releasing Mr. Shafi two months ago." Dkt. 348. The Court "acknowledge[d] the support of Mr. Shafi's family and friends, congratulates Mr. Shafi on his compliance with all conditions of pretrial release and upon his positive efforts to better himself through education and mental health counseling." *Id.*

DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE
*United States v. Shafi*, 3:15-CR-00582-WHO
2

At the sentencing hearing on March 21, 2019, the Court sentenced Mr. Shafi to credit for time served and rejected the government's request that the terrorism enhancement under U.S. Sentencing Guideline ("U.S.S.G.") § 3A1.4 be applied. Dkt. 355. The time served sentence of approximately 40 months was nonetheless significantly higher than the 0-6 month Guideline range that otherwise applied. The Court also ordered Mr. Shafi to serve a five-year term of supervised release, with the first six months to be spent on house arrest enforced by electronic monitoring. *Id.* The government dismissed the original indictment at sentencing.

**B.     Mr. Shafi's Performance on Supervised Release.**

Having Mr. Shafi home these last four years has been a blessing for the whole family. So many of the letters to the Court express the family's gratitude and appreciation for the faith this Court placed in Mr. Shafi. His father, Salama Shafi writes that Mr. Shafi's release on October 6, 2018 "brought great joy, relief and unity to the family" and "was a day of celebration for family and friends." Exh. A at 2.

His mother Seham writes "My whole family is so appreciative and grateful for you and your understanding for giving Adam the chance to prove his good character that he has always had since he was a kid. The true impact of your honorable decision has been unimaginable on every single one in our family." *Id.* at 3.

His sister Nora—the teenager who left a handwritten note in Mr. Shafi's room in 2015 that said she "almost cried when I saw you so sad" who just recently graduated from the University of California, Riverside—writes "thank you for everything you have done for our family. Having Adam back home for the past few years has been incredibly refreshing for all of us." *Id.* at 6; *see also* Dkt. 352, Defendant's Sentencing Memorandum at 8. As his cousin Noah writes, "With your help Adam has been given an opportunity to have a normal life." Exh. A at 14.

The sentencing hearing provided much needed closure for Mr. Shafi and his family from the traumatic events of 2015. For the first time in almost four years, they could begin to make plans and prepare for the future with the stress of an active criminal case behind them.

Mr. Shafi enrolled in classes at SJSU close to his home. On September 26, 2019, he appeared before the Court for an in-person status conference. Dkt. 359. The probation office informed the

Court that Mr. Shafi had completed the house arrest portion of supervised release and was doing well on supervised release. Dkt. 359.

As the COVID-19 pandemic hit he began his own startup, Wonderme.io, where he "gained quite a comprehensive view of what a grandiose task creating and managing a business is." Exh. A at 1, Adam Shafi Letter. On September 10, 2020, Mr. Shafi appeared again before the Court for a status conference—this time over Zoom due to the pandemic—and the probation office again reported that Mr. Shafi was doing well on supervised release and was "attending counseling and making positive progress with his mental health and personal relationships." Dkt. 361. Mr. Shafi also did a live demonstration of Wonderme for the Court. *Id.*

In the 22 months since that last status conference, Mr. Shafi has continued to excel on supervised release. He has not missed a counseling session, made all his probation office appointments, and has passed two polygraph tests. He has had no law enforcement contact of any kind, and no Form 12 petitions have been filed with the Court. Because Mr. Shafi has been doing so well, his counselor recently approached the probation office about reducing the frequency of Mr. Shafi's therapy sessions from twice a month to once a month.

C.  **Mr. Shafi's Post-Graduation Plans.**

Mr. Shafi's family and friends can see a positive change in Mr. Shafi. His father Salama writes that Mr. Shafi has impressed everyone "with his positive attitude, accomplishments and goals in life." Exh. A at 2. His aunt Becky writes "Adam has been dedicated to his self-improvement. He has gone above and beyond to get involved in his education, his community, and also his personal therapy sessions – not missing a single one!" *Id.* at 7. Another aunt and uncle write "Since Adam's probation began, he has made enormous progress" and his "behaviors can only be described as exemplary. He continues to attend and fully engage in his court mandated therapy, has acted as a mentor both professionally and personally for his family members and friends, has never violated any of the supervision conditions." *Id.* at 9.

Mr. Shafi's friend Muhammad Assaf writes "Whenever Adam and I are in the same environment, he brings a different type of energy and love, [and] is highly respected by his peers. He always has a smile on his face." *Id.* at 10. Close friend Osama Badr writes he has "seen nothing but

amazing character and positive growth from him," explaining how he was inspired by watching Mr. Shafi "practically restart his life and chase his dreams/passions even with all the limitations placed on him." *Id.* at 11. A fellow classmate at SJSU writes Mr. Shafi "has always displayed compassion, care, and thoughtfulness in all our time together. It has been a blessing to have an individual like Adam as a friend over the last few years. Whether it was meeting up for lunch or playing board games on the weekends, his warm hugs and wide smiles always brighten my day. Being around him as a student, I was constantly motivated by his work ethic and passion for learning." *Id.* at 12.

Mr. Shafi's loved ones also worry that being on supervised release and the restrictions that come with it are an obstacle to Mr. Shafi's future success. Mr. Shafi already has challenges ahead by virtue of being a convicted felon generally, and due to the attention paid to his case in the media specifically.

Having the probation office monitor Mr. Shafi's electronic communications and vet his employers has made it challenging for Mr. Shafi to find a job in the technology industry. Mr. Shafi explains "My probation officers require me to notify employers of my probation conditions and arrange a meeting between the officers and the employer before employment. I hoped to mitigate this by running my own business with my own equipment, which would still give me experience that would be valued by potential employers in the future if my entrepreneurial venture failed to provide me with a livelihood." *Id.* at 1. But now that it appears that his startup will not be Mr. Shafi's primary source of income, he will necessarily have to look for a job at an established company. His brother Ismail, who works in the technology industry, writes "I have been working in tech for a few years now, and seeing Adams expertise in software engineering gives me great confidence that he can play a big role in tech. I would love to see him pursue as many opportunities as possible and I feel probation may be hindering his options." *Id.* at 4.

Supervised release has also put a strain on Mr. Shafi's ability to participate in family activities. His sister Nora writes "Having Adam excluded from certain family events due to the constraints of probation has been difficult. It has also made it tough for him to excel in his career and pursue certain jobs in technology." *Id.* at 6. Ismail recounts how "Recently, our grandmother in Egypt passed away, and we wanted to go as a family to see her on her final days, but with the circumstances, we were not

able to make that happen. Our grandfather is approaching similar conditions and I truly believe family trips to see him could make a big difference in his condition." *Id.* at 4.

So terminating supervised release is the last step for Mr. Shafi and his family to truly put behind them the difficult days leading to Mr. Shafi's prosecution. As his cousin Jacob Shafi writes, "It would mean the world to me and my family if his probation was terminated and we leave this all behind us. It's a troubling time that we are all trying to move on from." *Id.* at 13. Nora writes "An early termination would open up many more opportunities for Adam and allow for him to reach his full potential." *Id.* at 6.

Most importantly, Mr. Shafi has demonstrated by his actions that he is ready for that next and final step in this odyssey. "I believe that Adam is ready for the next step in this process" his aunt and uncle write. *Id.* at 9. As Mr. Shafi himself explains to the Court, he wants to be a "positive influence for all those around me who have helped me." *Id.* at 1.

## ARGUMENT

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000) (citing 18 U.S.C. § 3553(a)(2)(D)). Under 18 U.S.C. § 3583(e)(1), a "court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)…terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). Because Mr. Shafi has completed more than one year of supervised release, he is eligible to seek early termination.

The Ninth Circuit has elaborated that § 3583(e)(1) directs district courts "to exercise discretion in light of a broad range of factors." *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014). The Supreme Court recently noted that a Court's sentencing discretion—including at sentencing modification hearings—requires a judge to "consider[] the whole person before him or her 'as an individual'" and to "consider[] the defendant on that day, not on the date of his offense or the date of

his conviction." *Concepcion v. United States*, ___ U.S. ___, 2022 WL 2295029, at *4 (Jun. 27, 2022) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). Given this broad discretion, the Ninth Circuit has made clear that "[t]he text of § 3583(e) does not support a legal standard that categorically requires a petitioner to demonstrate undue hardship" to have his supervised release terminated early. *Emmett*, 749 F.3d at 819. Nor does it require a defendant demonstrate "exceptional behavior." *United States v. Ponce*, 22 F.4th 1045, 1047 (9th Cir. 2022).

Considering the selected § 3553(a) factors this Court must consider under § 3583(e)(1), Mr. Shafi's conduct on supervised release, and the interests of justice, his supervised release should be terminated early.

A. **3553(a)(1) –Circumstances of the Offense and Mr. Shafi's History and Characteristics**

A constellation of facts—Mr. Shafi's immaturity, the situation in Syria, his unwillingness to address his mental health difficulties and his misguided frustration with his parents—resulted in his poor and impulsive decision to knowingly cash a fraudulent check before he attempted to run away from home. But the offense took place seven years ago, in 2015, when Mr. Shafi was just 21 years old. Mr. Shafi is a wiser person today, who has worked hard to overcome this ordeal and create a meaningful life for himself.

B. **3553(a)(2)(B), (C) – Deterrence and Protecting the Public**

This Court has already recognized that Mr. Shafi is no threat to the public, as demonstrated by its decision on three separate occasions to keep Mr. Shafi out of custody: (1) when releasing him after the mistrial in October 2018; (2) in denying the government's request for remand after Mr. Shafi pleaded guilty in December 2018; and (3) in imposing a time served sentence in March 2019. As it noted in October 2018 when it released Mr. Shafi following the mistrial, this Court reached that conclusion, in part, because of its belief that "the influences that are on Mr. Shafi today are different than the ones that were there" in 2015. Dkt. 310 at 23:10-11. That is even more true today, as demonstrated by the letters attached to this motion, attesting to Mr. Shafi's maturity, hard work and joyous demeanor. Today, Mr. Shafi is older and wiser and focused on finding a job and truly putting his immature and misguided actions when he was only 21 years old behind him for good.

Moreover, Mr. Shafi has certainly been deterred. He spent 40 months in pretrial custody and

endured the harrowing experience of sitting through a lengthy jury trial. After his release in October 2018, he spent another 12 months on house arrest enforced by GPS monitoring. He has been under some form of court ordered supervision—first by Pretrial Services then by Probation—for almost four years without a single violation. Further supervised release is thus unnecessary to deter Mr. Shafi from engaging in criminal activity.

**C.      3553(a)(2)(D) – Training and Treatment**

Mr. Shafi has been in continuous mental health counseling since his release from custody in October 2018 and has never missed an appointment. The treatment has been beneficial, equipping Mr. Shafi to deal with his frustrations more thoughtfully, and successful as demonstrated by his therapist's belief that Mr. Shafi does not need counseling as frequently as he has been these last four years. Thus continuing Mr. Shafi on supervised release is unnecessary to ensure he receives treatment, and he can continue treatment on his own after termination if he feels it is necessary.

**D.      3553(a)(4), (5) – U.S. Sentencing Guidelines and Policy Statements**

Sentencing Guidelines commentary states "[t]he court has authority to terminate or extend a term of supervised release" and the "court is *encouraged* to exercise this authority in appropriate cases." U.S.S.G. § 5D1.2 app. n. 5 (emphasis added). Mr. Shafi is precisely the sort of "appropriate" case where early termination is encouraged.

The Judicial Conference has also spoken about early termination of supervised release. In 2005, "the Conference approved creating a presumption in favor of early termination for non-career and non-violent offenders who 1) have been under supervision for at least 18 months, present no identified risk to the public or victims, and are free from any moderate- or high-severity violations."[1] A study by Federal Probation found "that offenders granted early termination…pose no greater danger to the community than offenders who serve a full term of supervision," a finding that "reaffirm[s] the notion that early termination policies allow officers to make responsible decisions about which offenders to recommend for an early termination of their supervision term."[2]

---

[1] Baber, et al., "Early Termination of Supervision: No Compromise to Community Safety," *Federal Probation,* Sept. 2013, p. 17 *available at* https://www.uscourts.gov/sites/default/files/77_2_2_0.pdf.
[2] *Id.* at 20.

Citing a U.S. Sentencing Commission report, the Pew Research Institute noted "that most rearrests, both for new offenses and technical violations, occur within two years of an inmate re-entering the community," data which "align with a substantial body of existing research showing that supervision resources should be 'front-loaded' on offenders who have recently left prison."[3] In other words, "reducing supervision terms for some offenders can improve outcomes" by freeing up resources to be used for other people who are at a higher risk of recidivism, or have been released from custody more recently.[4]

Mr. Shafi fits precisely within the Judicial Conference's parameters for early termination and has been on court ordered supervision for four years—through both Pretrial Services and Probation—without a single technical violation or new offense. Terminating his supervision early not only poses no threat to the community, but it will allow Probation to focus its attention and resources on people recently released from prison who need services more than Mr. Shafi.

**E.   3553(a)(7) – Restitution.**

Although Mr. Shafi pleaded was convicted of bank fraud, no restitution was sought by the bank or government, or ordered by the Court because there was no loss to the bank. PSR ¶ 15. Mr. Shafi paid the $100 special assessment on the day of sentencing, March 31, 2019. Dkt. 357.

**F.   3583(e)(1) – Mr. Shafi's Conduct and Interests of Justice.**

Finally, Mr. Shafi's conduct and the interests of justice support early termination of supervised release. The Ninth Circuit has made clear that neither "exceptional behavior" nor "undue hardship" are required to terminate a defendant's supervised release early. *Ponce*, 22 F.4th at 1047; *Emmett*, 749 F.3d at 819. But regardless, both conditions are met here.

Mr. Shafi has performed exemplary on both pretrial and supervised release, fulfilling all the conditions imposed upon him without a problem or single violation. His family sees a marked change in him for good, and Mr. Shafi is on his way to graduating from college and beginning his career. But

---

[3] "Number of Offenders on Federal Supervised Release Hits All Time High," The Pew Charitable Trusts, Jan. 2017, at 3, *available at* https://www.pewtrusts.org/~/media/assets/2017/01/number_of_offenders_on_federal_supervised_release_hits_alltime_high.pdf.

[4] *Id.*

now that he is on the verge of graduating and will pursue a career in the technology industry, supervised release has also become an "undue hardship." With the probation office's employment and computer use restrictions, it will be impossible for him to find work at a technology company. Thus, the interests of justice support terminating Mr. Shafi's supervised release early.

## CONCLUSION

This Court gave Mr. Shafi an opportunity to "prove your parents right about…who you are." Dkt. 310 at 34:14. Mr. Shafi has taken full advantage of that opportunity and over six months of pretrial release and forty months of supervised release, has complied with every restriction placed upon him without complaint.

Mr. Shafi and his family is grateful to this Court for the faith it has placed in him, for listening to them, and for giving Mr. Shafi an opportunity to make a meaningful life for himself. It is now time to allow Mr. Shafi to close the door on this chapter of his life so he can start a new chapter, one where he can pursue a career and eventually start his own family without the stigma of being on supervised release.

Mr. Shafi respectfully requests this Court terminate his supervised release early.

Dated: July 21, 2022

Respectfully submitted,

MOEEL LAH FAKHOURY LLP

Hanni M. Fakhoury
Attorneys for Adam Shafi